# EXHIBIT A

## Proposed Interim Order

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| True Religion Apparel, Inc., *et al.*,[1] | ) | Case No. 17-11460 (___) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## INTERIM ORDER (I) AUTHORIZING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion, dated July 5, 2017 (the "DIP Motion") of True Religion Apparel, Inc. ("True Religion" or the "Borrower") and TRLG Intermediate Holdings, LLC, Guru Denim Inc., True Religion Sales, LLC, and TRLGGC Services, LLC (collectively, the "Guarantors"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Interim Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *inter alia*:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: TRLG Intermediate Holdings, LLC (3150); True Religion Apparel, Inc. (2633); Guru Denim Inc. (1785); True Religion Sales, LLC (3441); and TRLGGC Services, LLC (8453). The Debtors' headquarters is located at 1888 Rosecrans Avenue, Manhattan Beach, CA 90266.

(i)        authorizing the Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority revolving credit facility in the aggregate principal amount of up to $60,000,000 (the "DIP Facility," and the loans under the DIP Revolving Credit Facility, the "DIP Loans") pursuant to the terms and conditions of that certain Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement, (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Agreement"), by and among the Borrower, the Guarantors, Citizens Bank, N.A., as administrative agent and collateral agent (in such capacities, the "DIP Agent"), for and on behalf of itself and the other lenders party thereto and the other Secured Parties from time to time (collectively, including the DIP Agent, the "DIP Lenders"), substantially in the form of Exhibit B, attached to the DIP Motion;

(ii)        authorizing the Debtors to execute and deliver the DIP Agreement, the other Loan Documents (as defined in the DIP Agreement) and any other agreements and documents related thereto (collectively with the DIP Agreement and the Loan Documents, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)        authorizing the Debtors, as replacement credit support for any and all issued and undrawn Letters of Credit (as defined in the Prepetition ABL Agreement (defined below)) as of the Petition Date (together with any and all related obligations as set forth therein or in the Prepetition ABL Agreement, collectively, the "Existing L/Cs") issued by the Issuing Lenders (as defined in the Prepetition ABL Agreement) under the Prepetition ABL Agreement (the "ABL Issuing Lender"), to request and cause to be issued by the DIP Agent under the DIP Facility a backstop letter of credit (a "Backstop L/C") to the ABL Issuing Lender, in the form reasonably

satisfactory to the ABL Issuing Lender and the Prepetition ABL Agent, in an amount equal to 103% of the Existing L/Cs, and to perform all such other and further acts as may be required by the ABL Issuing Lender and the Prepetition ABL Agent in connection with the foregoing, including the payment of fees and expenses in connection therewith;

(iv)     granting the DIP Facility and all obligations owing thereunder and under the DIP Documents to the DIP Agent and DIP Lenders and all other "Obligations" as described in the DIP Agreement (collectively, the "<u>DIP Obligations</u>") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein);

(v)     granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(vi)     authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, letter of credit fees (including issuance and other related charges), continuing commitment fees, closing fees, audit fees, appraisal fees, monitoring fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisors, accountants and other consultants, all as provided in, and in accordance with, the DIP Documents;

(vii)     authorizing the Debtors to use the proceeds of the DIP Facility in accordance with the Budget (as defined below), including to repay in full the Prepetition ABL Obligations upon entry of the Interim Order and the closing of the DIP Facility;

(viii)    authorizing the Debtors to use the Prepetition Collateral, including the Cash Collateral (each as defined below) of the Prepetition Secured Parties under the Prepetition Secured Debt Documents (each as defined herein), and providing adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

(ix)    authorizing the Debtors to waive and be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Parties or the Prepetition Secured Parties upon the DIP Collateral or the Prepetition Collateral (as applicable);

(x)    authorizing not subjecting the DIP Parties or the Prepetition Secured Parties to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral or the Prepetition Collateral (as applicable); and authorizing the Prepetition Secured Parties to be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and for the "equities of the case" exception under section 552(b) to not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral;

(xi)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(xii)    scheduling a final hearing (the "Final Hearing") to consider entry of an order granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the Declarations of Dalibor Snyder and Harry J. Wilson, the DIP Documents, and the evidence submitted and argument made at the interim hearing held on July _____, 2017 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]**

A.    **Petition Date**.  On July 5, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**. This Court has jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    **Committee Formation**. As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Creditors' Committee").

E.    **Notice**. Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F.    **Debtors' Stipulations**. After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 43 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xiv) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)    *Prepetition ABL Facility*. The Prepetition ABL Lenders (as defined below) extended a $60,000,000 first priority senior secured asset-based revolving credit facility (the "Prepetition ABL Facility"), including a $25,000,000 sub-facility for Letters of

Credit (as defined in the Prepetition ABL Credit Agreement (as defined below)), pursuant to that certain ABL Credit Agreement, dated as of July 30, 2013 (as amended, restated, amended and restated, waived, supplemented, or otherwise modified from time to time, the "Prepetition ABL Credit Agreement," and together with the Prepetition ABL Security Agreement (as defined below) and the other Credit Documents (as defined in the Prepetition ABL Credit Agreement), the "Prepetition ABL Credit Documents"), among True Religion, as borrower, Deutsche Bank AG New York Branch, as administrative and collateral agent (the "Prepetition ABL Agent"), and the lenders party thereto from time to time (the "Prepetition ABL Lenders," and, together with the Prepetition ABL Agent and the other Secured Creditors (as defined in the Prepetition ABL Credit Documents), the "Prepetition ABL Secured Parties").  As of the Petition Date, the Debtors party to the Prepetition ABL Credit Documents are unconditionally jointly and severally indebted to the Prepetition ABL Secured Parties pursuant to the Prepetition ABL Credit Documents, without objection, defense, counterclaim, or offset of any kind, in respect of loans in the aggregate outstanding principal amount of $12,000,000 and Existing L/Cs in an aggregate face amount of $5,051,858 *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), premiums (if any), reimbursement obligations, indemnification obligations, contingent obligations, and all other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition ABL Credit Agreement) owing under or in connection with the Prepetition ABL Credit Documents (including, without limitation, any obligations under the Existing L/Cs (as defined above), collectively, the "Prepetition ABL Obligations").

        (ii)    *Prepetition ABL Collateral.*  In connection with the Prepetition

ABL Credit Agreement, the Debtors entered into that certain Security Agreement, dated as of July 30, 2013 (as amended, restated, amended and restated, waived, supplemented, or otherwise modified from time to time, the "Prepetition ABL Security Agreement"), by and between the Debtors, as grantors, and the Prepetition ABL Agent, as collateral agent for the Prepetition ABL Lenders and the other Prepetition ABL Secured Parties. Pursuant to the Prepetition ABL Security Agreement and the other Prepetition ABL Credit Documents, the Prepetition ABL Obligations are secured by valid, binding, perfected and enforceable (x) first priority liens on, and security interests in, the ABL Facility Priority Collateral (as defined in the Intercreditor Agreement (as defined below)) (the "Prepetition ABL Collateral First Liens") that are senior to the Prepetition ABL Collateral Second Liens and the Prepetition ABL Collateral Third Liens (each as defined below) and (y) third priority liens on, and security interests in, the Term Loan Priority Collateral (as defined in the Intercreditor Agreement) that are junior and subordinate to the Prepetition Term Collateral First Liens and the Prepetition Term Collateral Second Liens (each as defined below) (the "Prepetition Term Collateral Third Liens" and, together with the Prepetition ABL Collateral First Liens, the "Prepetition ABL Secured Party Liens"), in each case, subject to certain exclusions as set forth in the Prepetition ABL Credit Documents.

(iii)     *Prepetition ABL Guarantee.*  Pursuant to the Prepetition ABL Credit Documents, each of the Guarantors (as defined in the Prepetition ABL Credit Agreement) has delivered to the Prepetition ABL Agent an unconditional joint and several guaranty of the Prepetition ABL Obligations, which guaranty is secured by the Prepetition ABL Secured Party Liens.

(iv)     *First Lien Facility.*  The First Lien Lenders (as defined below) extended a $400,000,000 first priority, senior secured term loan facility of which $386,000,000

in aggregate principal amount remains outstanding (the "First Lien Facility") pursuant to that certain First Lien Credit Agreement, dated as of July 30, 2013 (as amended, restated, amended and restated, waived, supplemented, or otherwise modified from time to time, the "First Lien Credit Agreement," and together with the First Lien Security Agreement (defined below) and the other Credit Documents (as defined in the First Lien Credit Agreement), the "First Lien Credit Documents"), among True Religion, as borrower, Delaware Trust Company (as successor to Deutsche Bank AG New York Branch), as administrative and collateral agent (the "First Lien Agent"), and the lenders party thereto from time to time (the "First Lien Lenders," and, together with the First Lien Agent and the other Secured Creditors (as defined in the First Lien Credit Documents), the "Prepetition First Lien Secured Parties").  As of the Petition Date, the Debtors party to the First Lien Credit Documents are unconditionally jointly and severally indebted to the Prepetition First Lien Secured Parties pursuant to the First Lien Credit Documents, without objection, defense, counterclaim, or offset of any kind, in respect of loans in the aggregate outstanding principal amount of $386,000,000 *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), premiums (if any), reimbursement obligations, indemnification obligations, contingent obligations, and all other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the First Lien Credit Agreement) owing under or in connection with the First Lien Credit Documents (collectively, the "Prepetition First Lien Obligations").

> (v)     *First Lien Collateral.*  In connection with the First Lien Credit Agreement, the Debtors entered into that certain Security Agreement, dated as of July 30, 2013 (as amended, restated, amended and restated, waived, supplemented, or otherwise modified from

time to time, the "First Lien Security Agreement"), by and between the Debtors, as grantors, and the First Lien Agent, as collateral agent for the First Lien Lenders and the other Prepetition First Lien Secured Parties. Pursuant to the First Lien Security Agreement and the other First Lien Credit Documents, the Prepetition First Lien Obligations are secured by valid, binding, perfected and enforceable (x) first priority liens on, and security interests in, the Term Loan Priority Collateral (the "Prepetition Term Collateral First Liens") that are senior to the Prepetition Term Collateral Second Liens and the Prepetition Term Collateral Third Liens and (y) second priority liens on, and security interests in, the ABL Facility Priority Collateral that are junior and subordinate to the Prepetition ABL Collateral First Liens and senior to the Prepetition ABL Collateral Third Liens (the "Prepetition ABL Collateral Second Liens" and, together with the Prepetition Term Collateral First Liens, the "Prepetition First Lien Secured Party Liens"), in each case, subject to certain exclusions as set forth in the First Lien Credit Documents.

(vi) *Prepetition First Lien Guarantee.* Pursuant to the First Lien Credit Documents, each of the Guarantors (as defined in the First Lien Credit Agreement) has delivered to the First Lien Agent an unconditional joint and several guaranty of the Prepetition First Lien Obligations, which guaranty is secured by the Prepetition First Lien Secured Party Liens.

(vii) *Second Lien Facility.* The Second Lien Lenders (as defined below) extended a $85,000,000 second priority senior secured term loan facility (the "Second Lien Facility") pursuant to that certain Second Lien Credit Agreement, dated as of July 30, 2013 (as amended, restated, amended and restated, waived, supplemented, or otherwise modified from time to time, the "Second Lien Credit Agreement," and together with the Second Lien Security Agreement (as defined below) and the other Credit Documents (as defined in the Second Lien Credit Agreement), the "Second Lien Credit Documents"), among True Religion, as borrower,

Wilmington Trust, National Association (as successor to Deutsche Bank AG New York Branch), as administrative and collateral agent(the "Second Lien Agent"), and the lenders party thereto from time to time (the "Second Lien Lenders," and, together with the Second Lien Agent and the other Secured Creditors (as defined in the Second Lien Credit Documents), the "Prepetition Second Lien Secured Parties"). As of the Petition Date, the Debtors are unconditionally jointly and severally indebted to the Prepetition Second Lien Secured Parties pursuant to the Second Lien Credit Documents, without objection, defense, counterclaim, or offset of any kind, in respect of loans in the aggregate outstanding principal amount of $85,000,000 *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), premiums (if any), reimbursement obligations, indemnification obligations, contingent obligations, and all other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Second Lien Credit Agreement) owing under or in connection with the Second Lien Credit Documents (collectively, the "Prepetition Second Lien Obligations" and together with the Prepetition ABL Obligations and the Prepetition First Lien Obligations, the "Prepetition Secured Obligations"). For purposes of this Interim Order: "Prepetition Agents" means, collectively, the Prepetition ABL Agent, the First Lien Agent, and the Second Lien Agent; "Prepetition Secured Parties" means, collectively, the Prepetition ABL Secured Parties, the Prepetition First Lien Secured Parties, and the Prepetition Second Lien Secured Parties; and "Prepetition Secured Debt Documents" means, collectively, the Prepetition ABL Credit Documents, the First Lien Credit Documents, and the Second Lien Credit Documents.

(viii)     *Second Lien Collateral.*     In connection with the Second Lien Credit Agreement, the Debtors entered into that certain Security Agreement, dated as of July 30, 2013 (as amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time, the "Second Lien Security Agreement"), by and between the Debtors, as grantors, and the Second Lien Agent, as collateral agent for the Second Lien Lenders and the other Prepetition Second Lien Secured Parties.  Pursuant to the Second Lien Security Agreement and the other Second Lien Credit Documents, the Prepetition Second Lien Obligations are secured by valid, binding, perfected and enforceable (x) second priority liens on, and security interests in, the Term Loan Priority Collateral (the "Prepetition Term Collateral Second Liens") that are junior and subordinate to the Prepetition Term Collateral First Liens and senior to the Prepetition Term Collateral Third Liens, and (y) third priority liens on, and security interests in, the ABL Facility Priority Collateral that are junior and subordinate to the Prepetition ABL Collateral First Liens and the Prepetition ABL Collateral Second Liens (the "Prepetition ABL Collateral Third Liens" and, together with the Prepetition Term Collateral Second Liens, the "Prepetition Second Lien Secured Party Liens" and, together with the Prepetition ABL Secured Party Liens and the Prepetition First Lien Secured Party Liens, the "Prepetition Liens"), in each case, subject to certain exclusions as set forth in the Second Lien Credit Documents.

(ix)     *Prepetition Second Lien Guarantee.*     Pursuant to the Second Lien Credit Documents, each of the Guarantors (as defined in the Second Lien Credit Agreement) has delivered to the Second Lien Agent an unconditional joint and several guaranty of the Prepetition Second Lien Obligations, which guaranty is secured by the Prepetition Second Lien Secured Party Liens.

(x)     *Prepetition Intercreditor Agreement.*     The Prepetition Agents and

each of the Debtors are parties to that certain Intercreditor Agreement, dated as of July 30, 2013 (as amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"). The Intercreditor Agreement, among other things, provides for the relative priority of the respective prepetition liens and security interests of the Prepetition Agents in and to the ABL Facility Priority Collateral and the Term Loan Priority Collateral (collectively, the "Prepetition Collateral"), pursuant to the terms set forth therein. As among the Prepetition Secured Parties, except as expressly provided herein, nothing in this Interim Order shall be construed to impair, modify or otherwise affect the Intercreditor Agreement, which is enforceable to the fullest extent provided by section 510(a) of the Bankruptcy Code and applicable law. The Intercreditor Agreement is solely applicable to the relationship among the Prepetition Secured Parties, and the Intercreditor Agreement and the terms thereof shall not apply as among the Prepetition Secured Parties, on the one hand, and the DIP Agent and the DIP Lenders, on the other hand.

(xi) *Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Obligations.* Subject to the challenge rights of parties in interest as set forth in paragraph 43 below, each of the Debtors acknowledges, represents, admits, stipulates and agrees that: (a) as of the Petition Date, the Prepetition Liens were legal, valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) as of the Petition Date, subject to the priorities set forth herein and in the Intercreditor Agreement, and except as expressly permitted under the Prepetition Secured Debt Documents, the Prepetition Liens were senior in priority over any and all other liens on, and security interests in, the ABL Facility Priority Collateral and the Term Loan Priority Collateral; (c) the Prepetition Secured Obligations constitute legal, valid, binding, enforceable

and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), counterclaims, or cross-claims, pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (e) the Debtors and their estates have no (and to the Debtors' knowledge, no other party or entity has any) claims, objections, challenges, causes of actions, and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Secured Debt Documents, the Prepetition Secured Obligations, or the Prepetition Liens. As of the Petition Date, the Debtors are not aware of any liens or security interests over the Prepetition Collateral having priority over the Prepetition Liens, except as expressly permitted under the Prepetition Secured Debt Documents (the "Prepetition Permitted Prior Liens," and together with the DIP Permitted Prior Liens (as defined below), the "Permitted Prior Liens").[3] As used in this Interim Order, "DIP Permitted Prior Liens" means any

---

[3] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Secured

lien that is senior, valid and prior to the DIP Liens by operation of law and as permitted under the DIP Documents, but specifically excludes the Prepetition Liens; *provided*, *however*, for the avoidance of doubt, the Prepetition Term Loan Collateral First Liens and the Prepetition Term Collateral Second Liens are senior and prior to the DIP Liens with respect to the DIP Secondary Collateral. The Prepetition Liens were granted to or for the benefit of the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby. The right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject and subordinate to the Prepetition Liens and DIP Liens (as defined herein).

    (xii) *Indemnity*. The Prepetition Agents, the other Prepetition Secured Parties, the DIP Agent and the DIP Lenders have acted in good faith, and without negligence, misconduct or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, and any of the other rights, remedies, privileges, benefits and protections granted hereunder, any challenges or objections to the DIP Facility or the use of Prepetition Collateral (including Cash Collateral), and all documents related to and all transactions contemplated by the foregoing, or hereunder. Accordingly, the Prepetition Agents, the other Prepetition Secured Parties, the DIP Agent and the DIP Lenders shall be and hereby are indemnified and held harmless by the Debtors in respect of

---

Parties, or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests.

any claim or liability incurred in respect thereof or in any way related thereto, other than a claim or liability incurred as a result of gross negligence, actual fraud or willful misconduct. No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this paragraph F(xii), in the Prepetition Secured Debt Documents or in the DIP Documents, to indemnify and/or hold harmless the Prepetition Agents, the DIP Agent, or any other Prepetition Secured Party or DIP Lenders, as the case may be, and any such defenses are hereby waived.

(xiii) *No Control.* None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facility, the DIP Documents and/or the Prepetition Secured Debt Documents.

(xiv) *Release.* The Debtors, on behalf of themselves and their respective estates, forever and irrevocably release, discharge and acquit the DIP Agent, all former, current and future DIP Lenders and Prepetition Secured Parties, and each of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest and assigns (each, a "Releasee" and collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent,

pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the this Interim Order, DIP Facility, the DIP Documents, the Prepetition ABL Facility, the First Lien Facility, the Second Lien Facility, the Prepetition Secured Debt Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination or recharacterization claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code or applicable non-bankruptcy law, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Agents, the other Prepetition Secured Parties, the DIP Agent and/or the DIP Lenders; *provided, however,* the foregoing release shall not apply with respect to any act or omission of a Releasee that constitutes gross negligence, actual fraud or willful misconduct. The Debtors further waive and release any defense, right of counterclaim, right of set-off, right of recoupment or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors may have now or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to this Court entering this Interim Order.

   G. **Cash Collateral**.  Any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral existing as of the Petition Date, and the proceeds of any of the foregoing, is the Prepetition Secured Parties' cash collateral within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral").

H.   **Findings Regarding Corporate Authority.**  Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

I.   **Findings Regarding Postpetition Financing**

   (i)   *Request for Postpetition Financing.*  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.   At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the DIP Agent and the Prepetition Secured Parties.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

   (ii)   *Priming of the Prepetition Liens.*  The priming of the Prepetition First Lien Secured Party Liens and the Prepetition Second Lien Secured Party Liens (in each case with respect to the DIP Primary Collateral), and, upon the Payoff Date (as defined below), the Prepetition ABL Secured Party Liens, by the DIP Liens under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and this Interim Order, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors.  The Prepetition First Lien Secured Parties, the Prepetition Second Lien Secured Parties and, upon the Payoff Date, the Prepetition ABL Secured Parties consent to such priming liens and are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in value ("Diminution in Value") of each of their respective interests in the Prepetition Collateral

(including Cash Collateral).

(iii) *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors have an immediate and critical need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, enable the orderly continuation of their operations and to administer and preserve the value of their estates. The ability of the Debtors to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv) *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent (for the benefit of itself and the DIP Lenders) the DIP

Liens, the DIP Superpriority Claim and other protections on the terms set forth herein.

(v)     *Use of Proceeds of the DIP Facility.* As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of this Interim Order and the DIP Documents and subject to such variances as permitted in the DIP Agreement, and as set forth in paragraph 20 hereof, the "Budget"),[4] solely for: (a) working capital and letters of credit, (b) other general corporate purposes of the Borrower (as defined in the DIP Agreement); (c) permitted payment of costs of administration of the Cases; (d) repayment of the Prepetition ABL Obligations on the "Closing Date" (as defined in the DIP Documents) of the DIP Facility; (e) payment of the Adequate Protection Fees; and (f) payment of such other prepetition obligations as the DIP Agent shall agree or the Court shall approve.

(vi)     *Application of Proceeds of Collateral.* As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Interim Order.

J.     **Adequate Protection**. The Prepetition Secured Parties have negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral)

---

[4] A copy of the initial Budget is attached hereto as **Exhibit 1**.

to fund the administration of the Debtors' estates and continued operation of their businesses, in accordance with the terms hereof. The Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms and conditions set forth herein, including the protections afforded parties acting in "good faith" under Section 363(m) of the Bankruptcy Code. The Prepetition Secured Parties are entitled to the adequate protection as and to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral. Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent to the use of the Prepetition Collateral (including Cash Collateral); provided, that nothing in this Interim Order or the other DIP Loan Documents shall (x) be construed as a consent or admission by any Prepetition Secured Party that it would be adequately protected in the event debtor in possession financing is provided by a third party (i.e., other than the DIP Lenders) or a consent to the terms of any other such financing, including the consent to any lien encumbering the Prepetition Collateral (whether senior or junior) or to the use of Cash Collateral (except under the terms hereof), or (y) prejudice, limit or otherwise impair the rights of the Ad Hoc Group or any Prepetition Agent (for the benefit of the Prepetition Secured Parties) to seek new, different or additional adequate protection under any circumstances. Pursuant to sections 361, 363, 364 and 507(b) of the Bankruptcy Code, as adequate protection the Prepetition Secured Parties, as applicable, will receive adequate protection liens and superpriority claims, as more fully set forth in paragraphs 11 – 17 herein.

K.    **Sections 506(c) and 552(b).**    In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims, as applicable, to the Carve Out; and (ii) the Prepetition Secured Parties' agreement that their liens shall be subordinate to the Carve Out, the DIP Liens (to the extent provided herein) and the DIP Superpriority Claims (as defined below), subject to entry of a Final Order, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are each entitled to (a) a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.    **Good Faith of the DIP Agent and DIP Lenders.**

(i)    *Willingness to Provide Financing.*    The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Financing is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties,

and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Agent and the DIP Lenders, with the assistance and counsel of their respective advisors. Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent and the DIP Lenders within the meaning of section 364(e) of the Bankruptcy Code.

M. **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

N. **Interim Hearing**. Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee, (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis, (iii) counsel to each of the Prepetition Agents; (iv) counsel to the DIP Agent; and (v) all other parties entitled to notice under the Local Rules. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. <u>Interim Financing Approved</u>. The DIP Motion is granted, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

All objections to this Interim Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled.

**DIP Facility Authorization**

2.      Authorization of the DIP Financing.   The Interim Financing is hereby approved.  The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Interim Order and the DIP Documents, including, without limitation, each Guarantor providing its joint and several unconditional guarantee of all of the DIP Obligations.  The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, expenses and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused facility fees, continuing commitment fees, servicing fees, audit fees, appraisal fees, monitoring fees, liquidator fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the DIP Documents.  All collections and proceeds, whether from ordinary

course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3. <u>Authorization to Borrow</u>. In order to prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Declaration (as defined below), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request extensions of credit (in the form of loans and letters of credit) up to an aggregate outstanding principal amount of not greater than $35,000,000 at any one time outstanding under the DIP Facility (collectively, the "<u>Interim Financing</u>").

4. <u>DIP Obligations</u>. The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). Upon entry of this Interim Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations, Product Obligations (as defined in the DIP Agreement), and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders, under the DIP

Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses, disbursements and all other amounts under the DIP Documents and all "Obligations" (as defined in the DIP Agreement). The Debtors shall be jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date (as defined herein), except as expressly provided in paragraph 30 herein. No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined below), and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.    DIP Liens. In order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtors, including without limitation, the "DIP Primary

Collateral," as set forth on Schedule I hereto and the "DIP Secondary Collateral," as set forth on Schedule II hereto (collectively, the "DIP Collateral"). Notwithstanding the foregoing, DIP Collateral shall not include the Debtors' real property leases but shall include all proceeds of such leases, which proceeds shall constitute DIP Primary Collateral.

      6.     <u>DIP Lien Priority</u>.

      (a)     *DIP Liens*. The DIP Liens are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to the Prepetition ABL Secured Party Liens (until the Payoff Date) and: (a) as to the DIP Primary Collateral, (i) the Carve Out; and (ii) the DIP Permitted Prior Liens; and (b) as to the DIP Secondary Collateral, (i) the Carve Out; (ii) the DIP Permitted Prior Liens; (iii) the Prepetition First Lien Secured Party Liens; (iv) the Prepetition First Lien Facility Adequate Protection Liens; (v) the Prepetition Second Lien Secured Party Liens (together with the Prepetition First Lien Secured Party Liens, the "<u>Prepetition Facilities Liens</u>"); and (vi) the Prepetition Second Lien Facility Adequate Protection Liens. Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens. For the avoidance of doubt, any DIP Lien on the DIP

Primary Collateral securing any DIP Obligations now or hereafter held by or on behalf of the DIP Agent or any DIP Lender, regardless of how acquired, whether by grant, possession, statute, operation of law, subrogation or otherwise, shall be senior in all respects and prior to any lien on the DIP Primary Collateral securing any Prepetition Secured Obligations; *provided, however*, that until the Payoff Date, the DIP Liens shall be junior to the Prepetition ABL Secured Party Liens.

(b)     *Prepetition ABL Secured Party Liens.*  Until the Payoff Date, the Prepetition ABL Secured Party Liens shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the ABL Facility Priority Collateral, including the DIP Liens, the DIP Permitted Prior Liens, the Carve Out and the Prepetition Facilities Liens.  Upon the occurrence of the Payoff Date, (i) all Prepetition ABL Secured Party Liens shall be automatically and permanently released and discharged, without further action of the Debtors, the Prepetition ABL Agent or any other party and (ii) the Prepetition ABL Credit Documents shall be terminated and discharged (except for those expense and indemnification provisions thereof (if any) as shall survive the repayment thereunder pursuant to the terms thereof).  In addition, the Prepetition ABL Agent is directed to file, or to authorize the Debtors or the DIP Agent, or each of their agents, to file, releases, terminations, and discharges of all and any liens, security interests and other encumbrances against the Debtors in favor of the Prepetition ABL Agent.

(c)     *Prepetition First Lien Secured Party Liens.*  The Prepetition First Lien Secured Party Liens shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the Prepetition First Lien Secured Party Liens shall be junior to: (i) as to the DIP Primary Collateral, (A) the Carve Out;

(B) the Permitted Prior Liens; (C) the DIP Liens; and (D) the Prepetition First Lien Facility Adequate Protection Liens; and (ii) as to the DIP Secondary Collateral, (A) the Carve Out; (B) the Prepetition Permitted Prior Liens; and (C) the Prepetition First Lien Facility Adequate Protection Liens. Notwithstanding the foregoing, until the Payoff Date, the Prepetition First Lien Secured Party Liens shall be junior to the Prepetition ABL Secured Party Liens on the ABL Facility Priority Collateral.

(d)     *Prepetition Second Lien Secured Party Liens*.  The Prepetition Second Lien Secured Party Liens shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the Prepetition Second Lien Secured Party Liens shall be junior to: (i) as to the DIP Primary Collateral, (A) the Carve Out; (B) the Permitted Prior Liens; (C) the DIP Liens; (D) the Prepetition First Lien Secured Party Liens; (E) the Prepetition First Lien Facility Adequate Protection Liens; and (F) the Prepetition Second Lien Facility Adequate Protection Liens; and (ii) as to the DIP Secondary Collateral, (A) the Carve Out; (B) the Prepetition Permitted Prior Liens; (C) the Prepetition First Lien Secured Party Liens; (D) the Prepetition First Lien Facility Adequate Protection Liens; and (E) the Prepetition Second Lien Facility Adequate Protection Liens.  Notwithstanding the foregoing, until the Payoff Date, the Second Lien Facility Liens shall be junior to the Prepetition ABL Secured Party Liens on the ABL Facility Priority Collateral.

7.     <u>DIP Superpriority Claims</u>.  Upon entry of this Interim Order, the DIP Agent and DIP Lenders are hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "<u>DIP Superpriority Claims</u>") for all DIP Obligations: (a)

except as set forth herein, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; *provided*, that the DIP Superpriority Claims shall not be payable from the proceeds of Avoidance Actions pending entry of the Final Order.

8. <u>No Obligation to Extend Credit</u>. The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal or extension of such letter of credit or bankers' acceptance under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agent, in its sole discretion, and in accordance with the terms of the DIP Agreement. In the event that the conditions precedent to the making of any extension of credit or the issuance, amendment, renewal or extension of any letter of credit or bankers' acceptance under the DIP Documents and this Interim Order have not been satisfied, the DIP Agent and the DIP Lenders may, in their sole and absolute discretion, continue to fund loans, arrange for the issuance of letters of credit or grant any other accommodation to or for the benefit of the Debtors and any such extensions of credit or other accommodations shall constitute DIP Obligations.

9.    Use of Proceeds of DIP Facility. From and after the Petition Date, the

Debtors shall use advances of credit under the DIP Facility, in accordance with the Budget, only

for the purposes specifically set forth in this Interim Order and the DIP Documents, and in

compliance with the terms and conditions in this Interim Order and the DIP Documents, unless

otherwise ordered by the Court. Immediately upon the Closing Date, the Debtors are authorized

and directed to draw the Interim Financing under the DIP Facility to pay the Prepetition ABL

Obligations in the amount set forth in the Payoff Letter. The repayment of the Prepetition ABL

Obligations shall be subject to the reservation of rights of parties in interest set forth in paragraph

43 of this Interim Order, and upon expiration, without a challenge being brought, of the

Challenge Period (as defined in paragraph 43 hereof) or the final resolution of a challenge

brought in compliance with the provisions of this Interim Order and applicable law within the

Challenge Period (where such challenge did not have the effect of successfully impairing any of

the Prepetition ABL Obligations), the Debtors' repayment of the Prepetition ABL Obligations

shall be deemed to be indefeasible, final and not subject to challenge or disgorgement. The

Prepetition ABL Obligations shall be repaid with the proceeds of the DIP Facility on the Closing

Date of the DIP Facility, which repayment in full shall include (i) the payment of all principal,

interest, fees and expenses due and chargeable under the Prepetition ABL through the date of

such repayment (the "Payoff Amount"), and (ii) the delivery to the Prepetition ABL Agent of a

Backstop L/C (in form and substance satisfactory to the Prepetition ABL Agent) in the face

amount of not less than 103% of the face amount of the Existing L/Cs (the date of the

satisfaction of the foregoing items, the "Payoff Date"). The Prepetition ABL Agent shall deliver

to the Debtors and the DIP Agent, not later than one (1) Business Day before the contemplated

repayment date, a letter (the "Payoff Letter") which shall set forth the calculation of the Payoff

Amount and contain details as to the Existing Letters of Credit and information as to wire instructions for payment of the Payoff Amount. Following the Payoff Date, the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties shall be deemed to have first priority liens and second priority liens, respectively, on the ABL Facility Priority Collateral, subject in all respects to the postpetition priming of such liens on the ABL Facility Priority Collateral by the DIP Liens, as provided by the DIP Documents and the Interim Order, as consented to by the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties. For the avoidance of doubt, nothing herein shall affect the primacy of the DIP Liens on the DIP Primary Collateral.

**Authorization to Use Cash Collateral**

10.  <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order, the DIP Facility and the DIP Documents and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the DIP Termination Date (as defined herein); *provided, however*, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral solely to meet payroll obligations and to pay expenses necessary to avoid immediate and irreparable harm to the Debtors' estates in accordance with the Budget and as otherwise agreed by the DIP Agent in its sole discretion. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Budget.

11. <u>Adequate Protection Liens</u>.

(a) *Prepetition ABL Adequate Protection Liens.* Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, until the Payoff Date, as adequate protection of the interests of the Prepetition ABL Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured Parties, additional and replacement, continuing, valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition ABL Adequate Protection Liens</u>").

(b) *Prepetition First Lien Facility Adequate Protection Liens.* Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition First Lien Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the First Lien Agent, for the benefit of itself and the Prepetition First Lien Secured Parties, additional and replacement, continuing, valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition First Lien Facility Adequate Protection Liens</u>").

(c) *Prepetition Second Lien Facility Adequate Protection Liens.* Pursuant to Sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Second Lien Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Second Lien Agent, for the benefit of itself and the Prepetition Second Lien Secured Parties, additional and replacement, continuing, valid, binding, enforceable and perfected

postpetition security interests in and liens on the DIP Collateral (the "Prepetition Second Lien Facility Adequate Protection Liens," and together with the Prepetition First Lien Facility Adequate Protection Liens and the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens").

12.    Priority of Adequate Protection Liens.

(a)    The Prepetition ABL Adequate Protection Liens shall be junior only to the Carve Out, the Permitted Prior Liens and: (i) with respect to the DIP Primary Collateral (but subject to paragraph 12(d) below), after the Payoff Date, the DIP Liens; and (ii) with respect to the DIP Secondary Collateral (A) the Prepetition Facilities Liens; (B) the Prepetition First Lien Facility Adequate Protection Liens; (C) the Prepetition Second Lien Facility Adequate Protection Liens; and (D) the DIP Liens.    Until the Payoff Date, the Prepetition ABL Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

(b)    The Prepetition First Lien Facility Adequate Protection Liens shall be junior only to the Carve Out, and (i) solely with respect to the DIP Primary Collateral, (A) the Prepetition ABL Secured Party Liens (but subject to Paragraph 12(d) below); (B) the DIP Liens; (C) the Permitted Prior Liens; and (D) the Prepetition ABL Adequate Protection Liens (but subject to paragraph 12(d) below) and (ii) with respect to the DIP Secondary Collateral, the Prepetition Permitted Prior Liens.    The Prepetition First Lien Facility Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

(c)    The Prepetition Second Lien Facility Adequate Protection Liens shall be junior only to the Carve Out, and: (i) solely with respect to the DIP Primary Collateral

(A) the Prepetition ABL Secured Party Liens (but subject to Paragraph 12(d) below); (B) the DIP Liens; (C) the Permitted Prior Liens; (D) the Prepetition First Lien Secured Party Liens; (E) the Prepetition ABL Adequate Protection Liens (but subject to Paragraph 12(d) below); and (F) the Prepetition First Lien Facility Adequate Protection Liens; and (ii) with respect to the DIP Secondary Collateral (A) the Prepetition First Lien Secured Party Liens; (B) the Prepetition First Lien Facility Adequate Protection Liens; and (C) the Prepetition Permitted Prior Liens. The Prepetition Second Lien Facility Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets.

(d)    (i) The Adequate Protection Liens on DIP Primary Collateral that is not ABL Facility Priority Collateral or Term Loan Priority Collateral shall be *pari passu* with all other Adequate Protection Liens; and (ii) the Prepetition ABL Secured Party Liens are not secured by DIP Primary Collateral that is not ABL Facility Priority Collateral.

(e)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

13.    Adequate Protection Superpriority Claims.

(a)    *Prepetition ABL Superpriority Claim.*    As further adequate protection of the interests of the Prepetition ABL Secured Parties in the Prepetition Collateral

against any Diminution in Value of such interests in the Prepetition Collateral, until the Payoff Date, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Secured Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition ABL Superpriority Claim"); *provided*, that such superpriority claim shall not be payable from the proceeds of Avoidance Actions pending entry of the Final Order.

(b)     *Prepetition First Lien Facility Superpriority Claim.*  As further adequate protection of the interests of the Prepetition First Lien Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the First Lien Agent, on behalf of itself and the other Prepetition First Lien Secured Parties, is hereby granted as and to the extent provided by section 507(b) or the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition First Lien Facility Superpriority Claim"); *provided*, that such superpriority claim shall not be payable from the proceeds of Avoidance Actions pending entry of the Final Order.

(c)     *Prepetition Second Lien Facility Superpriority Claim.*  As further adequate protection of the interests of the Prepetition Second Lien Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Second Lien Agent, on behalf of itself and the other Prepetition Second Lien Secured Parties, is hereby granted as and to the extent provided by section 507(b) or the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Prepetition Second Lien Facility Superpriority Claim," and together with the Prepetition First Lien Facility Superpriority Claim and the Prepetition ABL

Superpriority Claim, the "Adequate Protection Superpriority Claims"); *provided*, that such superpriority claim shall not be payable from the proceeds of Avoidance Actions pending entry of the Final Order; *provided, further*, that the Prepetition Second Lien Facility Superpriority Claim shall be junior and subordinated to the Prepetition First Lien Facility Superpriority Claim and the DIP Superpriority Claim.

14. Priority of the Adequate Protection Superpriority Claims. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; *provided, however*, that the Adequate Protection Superpriority Claims shall be (a) subject to the lien priorities as set forth in paragraph 12 herein and (b) junior to the Carve Out and the DIP Superpriority Claims.

15. Adequate Protection Fees and Expenses. The Debtors are authorized and directed to pay, without further order of the Court, the reasonable and documented fees and expenses (the "Adequate Protection Fees"), whether incurred before or after the Petition Date, of (a) the unaffiliated ad hoc group of certain First Lien Lenders and Second Lien Lenders (the "Ad Hoc Group"), including, without limitation, the fees and expenses of (i) Akin Gump Strauss Hauer & Feld LLP, (ii) Ashby & Geddes, and (iii) Moelis and Company LP, (b) the First Lien Agent, including the fees and expenses of Ropes & Gray LLP, as primary counsel, and one local counsel, for the First Lien Agent, (c) the Second Lien Agent, including the fees and expenses of Clifford Chance US LLP, as primary counsel, and one local counsel, for the Second Lien Agent,

and (d) until the Payoff Date, the Prepetition ABL Agent and the other Prepetition ABL Secured Parties incurred in connection with the administration and monitoring of the Prepetition ABL Credit Documents, including, without, limitation, the reasonable documented postpetition fees and expenses of legal professionals (including, without limitation, White & Case LLP and any local or foreign counsel and any replacement or addition thereto. The foregoing professionals shall not be required to comply with the U.S. Trustee fee guidelines or obtain Court approval of their fees; *provided, however*, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Creditors' Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors. Any objections raised by the Debtors, the U.S. Trustee or the Creditors' Committee (if appointed) with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. If no objection is raised within such ten (10) day period, such invoice shall be paid promptly by the Debtors without further order of the Court. No attorney or advisor to the Ad Hoc Group, the First Lien Agent, the Second Lien Agent or the Prepetition ABL Agent shall be required to file an application seeking compensation for services for reimbursement of expenses with the Court.

16. <u>Additional Adequate Protection</u>.  As additional adequate protection against any Diminution in Value of the Prepetition ABL Secured Parties' and the Prepetition First Lien Secured Parties' interests in the Prepetition Collateral (including Cash Collateral), (a) until payment of the Prepetition ABL Obligations in the amount set forth in the Payoff Letter, the Prepetition ABL Obligations shall continue to accrue interest at the applicable non-default rate set forth in the Prepetition ABL Credit Documents, (b) the Prepetition First Lien Obligations shall continue to accrue interest at the applicable non-default rate set forth in the First Lien Credit Documents and (c) the Ad Hoc Group shall receive the reports, other information and access as set forth in paragraphs 20, 24(b)(v) and 39 hereof.

17. <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed a finding by the Court or an admission by the Prepetition Secured Parties that the interests of the Prepetition Secured Parties are adequately protected.

**Provisions Common to DIP Financing
and Use of Cash Collateral**

18. <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto without further order of the Court if the amendment, modification or supplement is (a) non-material and (b) in accordance with the DIP Documents.  In the case of a material amendment, modification or supplement to the DIP Documents, the Debtors shall provide notice (which may be provided through electronic

mail or facsimile) to counsel to the Ad Hoc Group, the Creditors' Committee (if appointed) and the U.S. Trustee (collectively, the "Notice Parties") promptly upon the execution of such amendment, modification or supplement; *provided however*, that approval of the Court (which may be sought within 48 hours, and, as to which timeframe no party shall be permitted to object) will be necessary to effectuate any such amendment, modification or supplement; and *provided further* that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard.

19. Budget Maintenance. The use of borrowings and letters of credit under the DIP Facility and the use of Cash Collateral shall be in accordance with the Budget, subject in all respects to the variances set forth in the DIP Agreement. The Budget shall depict, on a weekly basis, cash revenues, receipts, expenses, professional fees and disbursements, net cash flows, inventory receipts and other items set forth therein (which shall include a breakdown of retail stores being closed or proposed to be closed, which information with respect to such stores shall be limited to cash receipts received by the Debtors during the relevant period which correspond to cash receipts described in the line item contained in the Budget under the heading "Receipts from Closing Stores", as determined in a manner consistent with the Budget), for the period from the Closing Date through the Maturity Date (each as defined in the DIP Agreement) and such initial Budget shall be approved by, and be in form and substance satisfactory to, the DIP Agent, the "Required Lenders" (as used in this paragraph 19, as defined in the DIP Agreement) and the Ad Hoc Group, each in their sole discretion. The Budget shall be updated, modified or supplemented by the Borrower from time to time with the written consent of the DIP Agent, the Required Lenders and the Ad Hoc Group and upon the request of the DIP Agent, the Required Lenders or the Ad Hoc Group (which request may, without limitation, be made in

connection with any transaction), but in any event the Approved Budget shall be updated by the Borrower not less than one time in each four (4) consecutive week period), and each such updated, modified or supplemented budget shall be approved in writing by, and shall be in form and substance satisfactory to, the DIP Agent, the Required Lenders and the Ad Hoc Group, each in their sole discretion and no such updated, modified or supplemented budget shall be effective until so approved and once so approved shall be deemed the "Budget"; *provided, however*, that in the event the DIP Agent, the Required Lenders and the Ad Hoc Group, on the one hand, and the Debtors, on the other hand, cannot agree as to an updated, modified or supplemented budget, such disagreement shall give rise to an Event of Default once the period covered by the prior Budget has terminated. Each Budget delivered to the DIP Agent, the Required Lenders and the Ad Hoc Group shall be accompanied by such supporting documentation as reasonably requested by the DIP Agent, the Required Lenders and/or the Ad Hoc Group. Each Budget shall be prepared in good faith based upon assumptions which the Debtors believe to be reasonable. In addition, every two (2) weeks after the entry of the Interim Order, to the extent the Debtors are not providing an updated Budget during such week, the Debtors shall provide the DIP Agent, the DIP Lenders and the Ad Hoc Group with updated weekly cash flow reports (the "Updated Cash Flow Reports"). A copy of any Budget (or updated Budget) and the Updated Cash Flow Reports shall be delivered to counsel for the Creditors' Committee (if appointed) and the U.S. Trustee after (or if) it has been approved by the DIP Agent and the Ad Hoc Group.

20. Budget Compliance. The Debtors shall at all times comply with the Budget, subject to the variances set forth in the DIP Documents. The Debtors shall provide the DIP Agent and the DIP Lenders all reports and other information as required in the DIP Documents (subject to the grace periods provided therein), and upon such provision, as

additional adequate protection, the Debtors shall at the same time provide such reports and other information to the Ad Hoc Group (which may be provided to the advisors of the Ad Hoc Group). The Debtors' failure to comply with the Budget (including the variances set forth in the DIP Documents) or to provide the reports and other information required in the DIP Documents or this Interim Order shall constitute an Event of Default (as defined herein), following the expiration of any applicable grace period set forth in the DIP Documents.

21. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, DIP Lenders, or the Prepetition Agents each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, the DIP Lenders and the Prepetition Secured Parties under the DIP Documents, the DIP Facility and this Interim Order; and (d) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

22. <u>Perfection of DIP Liens and Adequate Protection Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into

any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent and the Prepetition Agents each are authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, or the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent and the Prepetition Agents all such financing statements, mortgages, notices and other documents as the DIP Agent or the Prepetition Agents may reasonably request. The DIP Agent and the Prepetition Agents, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument. The Prepetition Agents shall serve as agents for the DIP Agent for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Interim Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23.  <u>Application of Proceeds of Collateral</u>. As a condition to the entry of the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash

Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of DIP Collateral that is sold in the ordinary course or liquidated as follows: (a) with respect to DIP Primary Collateral (i) *first*, as provided in the DIP Agreement; and (ii) *second*, after indefeasible repayment in full in cash of the DIP Obligations (including provision for contingent obligations) and the termination of the DIP Facility, to reduce the Prepetition Secured Obligations in accordance with the Prepetition Secured Debt Documents and the Intercreditor Agreement; and (b) with respect to DIP Secondary Collateral, (i) *first*, to reduce the Prepetition First Lien Obligations in accordance with the First Lien Credit Documents; (ii) *second,* after indefeasible repayment in full in cash of the Prepetition First Lien Obligations, to reduce the Prepetition Second Lien Obligations in accordance with the Second Lien Credit Documents and (iii) *third,* after indefeasible repayment in full in cash of the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations (including provision for contingent obligations), to reduce the DIP Obligations. The reduction of the Prepetition Secured Obligations is subject to the preservation of rights provided in paragraph 43 herein.

24.     Protections of Rights of DIP Agent, the DIP Lenders and the Prepetition Secured Parties.

(a)     Unless the DIP Agent shall have provided its prior written consent, or all DIP Obligations have been indefeasibly paid in full in cash, the DIP Facility is terminated and the Ad Hoc Group provides its prior consent, there shall not be entered in any of these Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or

any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, the Adequate Protection Liens or the Prepetition Liens except as expressly set forth in this Interim Order; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order, (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise, or (iv) any modification of any of the DIP Agent's or the DIP Lenders' rights under this Interim Order or the DIP Documents with respect to any DIP Obligations. Notwithstanding anything to the contrary contained in this Interim Order, the DIP Agent and the DIP Lenders are hereby permitted to deem all collections and payments deposited in any deposit account (other than Term Loan Priority Accounts), lockbox, securities accounts, commodity accounts, cash collateral accounts or any concentration account to be proceeds of DIP Primary Collateral and no such funds credited to any such account shall be subject to disgorgement or be deemed to be held in trust by the DIP Agent or any DIP Lender for the benefit of any Prepetition Secured Party. It shall not be a violation of this paragraph 24(a), and the consent of the DIP Agent or the DIP Lenders shall not be required, if the order(s) described above expressly provides for (x) (1) a provision for termination of the Commitments (as defined in the DIP Agreement) and the indefeasible repayment in full in cash of all of the DIP Obligations, (2) a full release in favor of the DIP Agent and the DIP Lenders and their respective affiliates and (3) that the initial drawing under any financing are actually used contemporaneously for the purposes described in clause

(1) or (y) credit or indebtedness that is secured by a first priority priming lien on the Term Loan Priority Collateral only (subject to any debt incurrence limitations as may be set forth in the DIP Documents), which shall only require the consent of the Prepetition First Lien Secured Parties.

(b)     The Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not the DIP Obligations have been indefeasibly paid in full in cash, (i) maintain books, records, and accounts to the extent and as required by the DIP Documents, (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the DIP Lenders and their advisors all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by any of the DIP Agent or the DIP Lenders) to provide under the DIP Documents or the provisions of this Interim Order, (iii) upon reasonable advance notice, permit consultants, advisors and other representatives (including third party representatives) of the DIP Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents, (iv) permit the DIP Agent, and its respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, and (v) permit the DIP Agent to conduct, in its reasonable discretion and at the Debtors' reasonable cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral (provided that copies of any of the foregoing

shall be promptly delivered to the Ad Hoc Group (or its advisors) subject to reasonable confidentiality provisions).

(c)     Subject to entry of the Final Order, no Debtor shall object to the DIP Agent credit bidding up to the full amount of the applicable outstanding DIP Obligations, including any accrued interest and expenses, in any sale of any DIP Collateral, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise, subject in each case to the provision of consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to the credit bid including, for the avoidance of doubt, the Prepetition Facilities Liens, the Prepetition First Lien Facility Adequate Protection Liens and the Prepetition Second Lien Facility Adequate Protection Liens on the DIP Secondary Collateral.

(d)     Subject to entry of the Final Order, no Debtor shall object to any Prepetition First Lien Secured Parties credit bidding up to the full amount of the applicable outstanding Prepetition First Lien Obligations, including any accrued interest and expenses, in any sale of any DIP Collateral, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a Chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise, subject in each case to the provision of consideration sufficient to indefeasibly pay in full in cash the DIP Obligations and any senior liens on the collateral that is subject to the credit bid including, for the avoidance of doubt, the DIP Liens on the DIP Primary Collateral.

(e)     Notwithstanding anything to the contrary herein, the Intercreditor Agreement is solely applicable to the relationship among the Prepetition Secured Parties, and the Intercreditor Agreement and the terms thereof shall not apply as among the Prepetition Secured Parties, on the one hand, and the DIP Agent and the DIP Lenders, on the other hand.

25.     Proceeds of Subsequent Financing.     If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) or in violation of the DIP Documents or this Interim Order at any time prior to the indefeasible repayment in full of all DIP Obligations, and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the DIP Documents.     Notwithstanding anything to the contrary herein, and for the avoidance of doubt, it shall not be a violation of the DIP Documents (subject to any debt incurrence limitations as may be set forth in the DIP Credit Agreement) or this Interim Order if the Debtors obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) that expressly provides for (x) (1) a provision for termination of the Commitments (as defined in the DIP Agreement) and the indefeasible repayment in full in cash of all of the DIP Obligations contemporaneously with the incurrence of such debt, (2) a full release in favor of the DIP Agent and the DIP Lenders and their respective affiliates and (3) that the initial drawing under such financing are actually used for the purposes described in clause (1 or (y) if such credit or debt is secured by a first priority priming lien on the Term Loan Priority Collateral only (subject to any debt incurrence limitations as may be set forth in the DIP Documents), which shall only require the consent of the Prepetition First Lien Secured Parties

26.     Cash Collection.     From and after the date of the entry of this Interim Order, and subject to the terms of the DIP Documents, all collections and proceeds of any DIP

Primary Collateral or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in lock-box and/or deposit accounts designated by the DIP Agent from time to time once such accounts are created and utilized by the Debtors consistent with the timeline contemplated in the DIP Documents (collectively, the "Cash Collection Accounts"), which accounts shall be subject to the sole dominion and control of the DIP Agent. All proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP Agent for application in accordance with the DIP Documents and this Interim Order. Unless otherwise agreed to in writing by the DIP Agent, the Debtors shall maintain no accounts except those identified in the Cash Management Order (the "Cash Management Order"). The Debtors and the financial institutions where the Debtors' Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP Agent. From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Secondary Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the Term Loan Priority Accounts into which the collections and proceeds of the DIP Secondary Collateral were deposited under the Prepetition Secured Debt Documents (or in such other accounts as are designated by the First Lien Agent from time to time), which accounts shall be in the name of the First Lien Agent and subject to the sole dominion and control of the First Lien Agent and otherwise to the lien priorities set forth in this Interim Order.

27. <u>Maintenance of DIP Collateral</u>. Until the indefeasible payment in full of

all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain a cash management system acceptable to the DIP Agent in its sole discretion.

28.     Disposition of DIP Collateral.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Primary Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or the DIP Lenders, or from any order of this Court), except as otherwise provided for in the DIP Documents or otherwise ordered by the Court.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Secondary Collateral other than in the ordinary course of business without the prior written consent of the Prepetition First Lien Secured Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition First Lien Secured Parties, or from any order of this Court), except as otherwise ordered by the Court and subject to the access rights in paragraph 29 herein.

29.     Collateral Use and Access Rights.  Upon the occurrence of an Event of Default and subject to the expiration of the Remedies Notice Period, the DIP Agent, the DIP Lenders, and any agent or representative thereof (including any liquidator or other professional) has, at no cost or expense to the DIP Agent, the DIP Lenders or any of their agents or representatives, an irrevocable royalty free, rent free license and lease (which will be binding on any successor or assignee of the DIP Secondary Collateral) to use, access, license and sublicense any and all of the DIP Collateral (including the DIP Secondary Collateral) to the extent necessary or reasonably required (as determined by the DIP Agent in its discretion) for the

collection of all Accounts and Credit Card Receivables of the Debtors, the sale or other disposition of the Inventory of the Debtors, the sale or other disposition of any other DIP Primary Collateral, in connection with any enforcement of its rights and remedies under the DIP Documents or this Interim Order, including in order for the DIP Agent or the Debtors (or their designees) to liquidate, dispose or sell (by public auction, private sale or a "store closing", "going out of business" or similar sale, whether in bulk, in lots or to customers in the ordinary course of business or otherwise and which sale may include augmented inventory) the DIP Primary Collateral or to otherwise exercise all remedies against or realize upon or sell the DIP Primary Collateral, including pursuant to any Court approved sale process. Any purchaser or transferee of, or any successor in interest to, any of the DIP Secondary Collateral who acquires such DIP Secondary Collateral, as the case may be, upon a liquidation, disposition or sale thereof shall be bound by this paragraph 29.

30. _DIP Termination Date_. On the applicable DIP Termination Date (as defined herein), (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable DIP Facility will terminate, other than as required in paragraph 40 with respect to the Carve Out, all Product Obligations (as defined in the DIP Agreement), treasury management and bank product obligations shall be cash collateralized, and all letters of credit and bankers' acceptances outstanding shall be cash collateralized in an amount equal to 103% of the face amount thereof, and such cash collateral shall not be subject to or subordinate to the Carve Out, and (b) all authority to use Cash Collateral shall cease, _provided_, _however_, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses necessary to avoid immediate and irreparable harm to the Debtors' estates in accordance with the Budget, and as

otherwise agreed by the DIP Agent in its sole discretion. For the purposes of this Interim Order, the "DIP Termination Date" shall mean the "Maturity Date" as defined in the DIP Agreement.

31. Events of Default. The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (collectively, the "Events of Default"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order, or (b) the occurrence of an "Event of Default" under the DIP Agreement.

32. Milestones. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the Required Milestones (as defined in, and set forth on Schedule 9.1.19 of, the DIP Agreement). The failure of the Debtors to comply with any of the Required Milestones (as such may be amended, waived, modified or otherwise extended), if not amended, waived, modified or otherwise extended, (a) shall constitute an Event of Default under the DIP Agreement, and hereunder, (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order, and (c) permit the DIP Agent, subject to paragraph 33 and 34, to exercise the rights and remedies provided for in this Interim Order and the DIP Documents.

33. Rights and Remedies Upon Event of Default.

(a) Immediately upon the occurrence and during the continuation of an Event of Default under the DIP Documents or this Interim Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to paragraph 34 of this Interim Order, without

any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order (a) the DIP Agent may declare (any such declaration shall be referred to herein as a "Termination Declaration," and the date which is the earliest to occur of any such Termination Declaration and the Maturity Date shall be referred to herein as the "Termination Declaration Date") (1) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (2) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (3) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (4) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Borrower; and (b) the DIP Agent may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "Termination Date").

(b)     If (i) the Debtors fail to pay, on a timely basis, the Adequate Protection Fees, (ii) the Debtors do not obtain the consent of the Ad Hoc Group with respect to a Budget, as required by Paragraph 19 hereof (and the period covered by the prior Budget has terminated) or (iii) any Challenge to any part of the Prepetition Liens or Prepetition Secured Obligations is successful, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order (including any applicable grace periods), the Prepetition First Lien Secured Parties may withdraw their consent, subject to paragraph 29 herein, to the use of the Prepetition Collateral constituting Term Loan Priority Collateral (and Cash Collateral arising

from the Term Loan Priority Collateral) and seek termination of the Debtors' right to use Term Loan Priority Collateral for failure to provide adequate protection for use of the Term Loan Priority Collateral.

(c)     Any Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Ad Hoc Group, counsel to the First Lien Agent, counsel to the Second Lien Agent, counsel to the Prepetition ABL Agent, counsel to a Creditors' Committee (if appointed), and the U.S. Trustee.  The automatic stay in the Cases otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"), but subject to paragraph 34 hereof, the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Interim Order and shall be permitted to satisfy the DIP Obligations, DIP Superpriority Claim and DIP Liens.  During the Remedies Notice Period, the Debtors and/or a Creditors' Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court solely to contest whether an Event of Default has occurred and/or is continuing, and the Debtors hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under Section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders. Unless the Court orders otherwise, the automatic stay, as to the DIP Agent and the DIP Lenders, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Agent and the DIP Lenders shall be permitted to exercise all remedies set forth herein, in the DIP Documents and as otherwise available at law without further order of or application or motion to the Court and

paragraph 29 of this Interim Order. If the Event of Default is a Specified Sale Process Default under the DIP Documents, the DIP Agent may direct the Debtors to commence a process for a full-chain liquidation (the "Agreed Full-Chain Sale Process"), at which time (1) within one business day after the Remedies Notice Period, the Debtors must obtain entry of an order from the Court, in form and substance approved by the DIP Agent, designating a liquidating stalking horse bidder and approving sales procedures with respect to a full-chain liquidation, (2) within three business days after the Remedies Notice Period, complete an auction for the full-chain liquidation and declare a "successful bidder" for the liquidation on terms and conditions consented to by the DIP Agent, and (3) within five business days after the Remedies Notice Period, obtain entry of an order from the Court, in form and substance approved by the DIP Agent, approving the store liquidation and commence a full-chain liquidation pursuant to the approved liquidation agreement and the applicable Court sale orders. Notwithstanding anything to the contrary in any Prepetition Secured Debt Document or any DIP Document, no Prepetition Secured Party may raise any objection to, or oppose, and each Prepetition Secured Party shall be deemed to have consented to the release of any Debtor from its obligations under any Prepetition Secured Debt Document with respect to the DIP Primary Collateral or to any private or public sale of all or any portion of the DIP Primary Collateral free and clear of any liens and other claims at any time after the occurrence and during the continuance of an Event of Default under the DIP Documents or this Interim Order if the DIP Agent has consented to such release or sale including, without limitation, under section 363 of the Bankruptcy Code (or other similar provision of any applicable law) or pursuant to any Agreed Full-Chain Sale Process, and in connection with the foregoing, each Prepetition Secured Party hereby irrevocably authorizes the DIP Agent to release any Lien on any of the DIP Primary Collateral. Notwithstanding the

foregoing, during the Remedies Notice Period, nothing shall prevent the Prepetition First Lien Secured Parties from refinancing in full in Cash the DIP Loans then outstanding during the Remedies Notice Period.

34.     Intercreditor Provisions.

(a)     The DIP Agent shall have the exclusive right to take Enforcement Actions with respect to the DIP Primary Collateral with notice to, but without any consultation with or the consent of the Debtors, the Prepetition First Lien Secured Parties and the Prepetition Second Lien Secured Parties.  In connection with any such Enforcement Action, the DIP Agent may enforce the provisions of the DIP Documents and exercise remedies thereunder, all in such order and in such manner as it may determine in the exercise of their sole discretion.  Until the indefeasible payment in full in cash of the DIP Obligations, the Prepetition First Lien Secured Parties or the Prepetition Second Lien Secured Parties will not exercise or seek to exercise any rights or remedies with respect to the ABL Priority Collateral or the DIP Primary Collateral (including taking any Enforcement Action (as defined below)).

(b)     Except as set forth herein, including paragraph 29 herein, the Prepetition First Lien Secured Parties shall have the exclusive right to take Enforcement Actions with respect to the Term Loan Priority Collateral and DIP Secondary Collateral with notice to, but without any consultation with or the consent of the Debtors, the DIP Agent or any DIP Lender.  Subject to the terms herein, including paragraph 29 herein, in connection with any such Enforcement Action, the Prepetition First Lien Secured Parties may enforce the provisions of the First Lien Credit Documents and exercise remedies thereunder, all in such order and in such manner as they may determine in the exercise of their sole discretion.  Except as set forth herein, including paragraph 29 herein, until the indefeasible payment in full in cash of the Prepetition

First Lien Obligations, the DIP Agent and the DIP Lenders will not exercise or seek to exercise any rights or remedies with respect to the Term Loan Priority Collateral or DIP Secondary Collateral (including taking any Enforcement Action (as defined below)).

(c)     "Enforcement Action" means, with respect to the DIP Obligations or the Prepetition Secured Obligations, the exercise of any rights and remedies with respect to the DIP Collateral and/or Prepetition Collateral securing such obligations or the commencement or prosecution of enforcement of any of the rights and remedies under, as applicable, the DIP Documents, the Prepetition Secured Debt Documents, or applicable law, including, without limitation the exercise of any rights of set-off or recoupment, and the exercise of any rights or remedies of a secured creditor under the Uniform Commercial Code of any applicable jurisdiction or under this Interim Order.

35.     Good Faith Under Section 363(m) and 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.  The DIP Agent, the DIP Lenders and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by sections 363(m) and 364(e) of the Bankruptcy Code, as applicable.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with sections 363(m) and 364(e) of the Bankruptcy Code, as applicable, in the event any or all of the provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code, as applicable, to the maximum extent set forth therein.

36.     DIP and Other Expenses.  The Debtors are authorized and directed to pay

all reasonable and documented prepetition and postpetition fees and expenses of the DIP Agent and DIP Lenders in connection with the DIP Facility, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Agent and DIP Lenders shall not be required to comply with the U.S. Trustee fee guidelines or to obtain Court approval of their fees and expenses; however, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Creditors' Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors. Any objections raised by the Debtors, the U.S. Trustee or the Creditors' Committee (if appointed) with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date all reasonable and documented fees, costs and out-of-pocket expenses of the DIP Agent and the DIP Lenders incurred on or prior to such date without the need for any professional engaged by the DIP Agent or the DIP Lenders to first deliver a copy of its invoice as

58

provided for herein. No attorney or advisor to the DIP Agent or any DIP Lenders shall be required to file an application seeking compensation for services for reimbursement of expenses with the Court. Any and all fees, costs and expenses paid prior to the Petition Date by any of the Debtors to the DIP Agent or DIP Lenders in connection with or with respect to the DIP Facility are hereby approved in full.

37. <u>Indemnification</u>. The Debtors shall indemnify and hold harmless the DIP Agent and the DIP Lenders in accordance with the terms and conditions of the DIP Documents. Upon the earlier of (a) payment in full in cash of the DIP Obligations or (b) conclusion of the Remedies Notice Period, the Debtors shall pay $500,000 from proceeds of the DIP Collateral into an indemnity accounts (the "<u>DIP Indemnity Account</u>") subject to first priority liens of the DIP Agent, for the benefit of the DIP Lenders. The DIP Indemnity Account shall be released and the funds applied in accordance with paragraph 21 of this Interim Order upon the indefeasible payment in full in cash of the DIP Obligations and the receipt by the DIP Agent and each of the DIP Lenders of releases from the Debtors and their estates, with respect to any claims arising out of or related to the DIP Documents, acceptable to the DIP Agent, it its sole discretion. Notwithstanding the foregoing, the Debtors shall not be required to fund the DIP Indemnity Account upon consummation of a plan of reorganization which provides for (i) a provision for termination of the Commitments (as defined in the DIP Agreement) and the indefeasible repayment in full in cash of all of the DIP Obligations and (ii) full releases, acceptable to the DIP Agent in its reasonable discretion, in favor of the DIP Agent and the DIP Lenders and their respective affiliates.

38. <u>Proofs of Claim</u>. The DIP Agent, the DIP Lenders and the Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor

Cases in respect of any of the DIP Obligations or the Prepetition Secured Obligations. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, each of the Prepetition Agents on behalf of itself and its respective Prepetition Secured Parties, (i) is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a single, master consolidated proof of claim in respect of the applicable Prepetition Secured Obligations (including, without limitation, in respect of all guarantees by the Debtors of such Prepetition Secured Obligations) in Lead Case No. [_____], which shall be deemed a valid proof of claim against each Debtor in its Case or its Successor Case and (ii) shall not be required to file any agreements, documents, or other instruments evidencing such Prepetition Secured Obligations with such single, master consolidated proof of claim. Any proof of claim filed by the Prepetition Agents shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties, respectively. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties.

39.     <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Agent and the Ad Hoc Group under the DIP Documents and this Interim Order, as applicable, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and the Ad Hoc Group reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and this Interim Order, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers

and consultants, to cooperate, consult with, and provide to the DIP Agent and the Ad Hoc Group all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Borrower or Guarantors (as defined in the DIP Documents).

40. Carve Out.

(a) As used in this Interim Order, the "Carve Out" means, subject, in each case, to application of any retainers that may be held by the applicable professionals, without duplication: (i) the payment of all unpaid professional fees and disbursements incurred by the Debtors and any statutory committees appointed in the Cases pursuant to sections 327 and 1103 of the Bankruptcy Code (the "Case Professionals") at any time prior to the delivery of the Carve Out Trigger Notice (as defined below) to the extent allowed by this Court (the "Allowed Professional Fees"), but solely to the extent the same are reflected as estimated professional fees and disbursements in the most recent borrowing base report delivered to the DIP Agent by the Debtors prior to the delivery of a Carve Out Trigger Notice (which estimated professional fees and disbursements shall not be less than the amounts set forth in the Budget for such Case Professionals); (ii) after delivery of a notice by the DIP Agent to the Borrower that an Event of Default has occurred and is continuing and the DIP Agent has delivered notice to the Debtors to the effect that the application of the Carve Out has occurred (the "Carve Out Trigger Notice"), the payment of allowed and unpaid professional fees and disbursements incurred by the Case Professionals following the delivery of the Carve Out Trigger Notice in an aggregate amount not in excess of $500,000 (the "Wind-Down Carve Out Amount"), plus (iii) the payment of fees pursuant to 28 U.S.C. § 1930(a). Notwithstanding the foregoing, so long as no Carve Out Trigger Notice has been issued by the DIP Agent, the Debtors shall be permitted to pay

compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code but solely to the extent the same are reflected as estimated professional fees and disbursements in the most recent borrowing base report delivered to the DIP Agent by the Borrower prior to the delivery of a Carve Out Trigger Notice, as the same may be due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve Out Amount. Further, prior to the delivery of a Carve-Out Trigger Notice, the Debtors are authorized to fund, on a weekly basis, a trust account held by the Debtors' counsel (the "Trust Account") up to the amounts set forth in the Budget for the sole purpose of paying the fees and expenses of the Case Professionals. To the extent that the Trust Account is actually funded, the Carve Out shall be reduced by such funded amount. The Carve Out shall not be deemed increased if actual fees of Case Professionals are higher in fact than the estimates provided on a borrowing base report. The DIP Agent shall at all times be entitled to maintain, as part of the Reserves (as defined in the DIP Agreement), a reserve in an amount equal to the amount of (w) the Wind-Down Carve Out Amount, (x) all accrued and unpaid professional fees and disbursements as set forth in the most recent borrowing base report delivered to the DIP Agent, (y) the fees pursuant to 28 U.S.C. § 1930(a) for allowed administrative expenses, and (z) the professional fees set forth in the Budget for the then current week and the one week succeeding such current week.

(b)    *No Direct Obligation to Pay Professional Fees.* The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP

Lenders or the Prepetition Secured Parties, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c) *Payment of Carve Out After Carve Out Trigger Notice.* Any payment or reimbursement made on or after the delivery of the Carve Out Trigger Notice in respect of any Allowed Professional Fees shall permanently reduce the Wind-Down Carve Out Amount on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code and applicable law.

41. <u>Limitations on Use of DIP Proceeds, Cash Collateral and Carve Out</u>. The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agent's or the DIP Lenders' enforcement or realization upon any of the DIP Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the DIP Agent; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (d) incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Agent and the Prepetition Secured Parties, except to the extent permitted under the DIP Agreement or this Interim Order; (e) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order, the DIP Documents, or the Prepetition Secured Debt Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Adequate Protection

Liens, Adequate Protection Superpriority Claims, Prepetition Liens, Prepetition Secured Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral (including Cash Collateral), or any other claims or liens, held by or on behalf of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Prepetition Liens, Prepetition Secured Obligations or any other rights or interests of any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $25,000 in the aggregate, incurred solely by a Creditors' Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens or Prepetition Secured Obligations within sixty (60) days following the selection of counsel to the Creditors' Committee (if any) (the "Limited Amount"). Notwithstanding anything to the contrary, any fees, expenses or costs incurred by Committee Professionals in excess of the Limited Amount or in excess of the amount budgeted for Committee Professionals set forth in the Budget shall not

constitute an allowable administrative expense claim, including for purposes of section 1129(a)(9)(A) of the Bankruptcy Code.

42. <u>Payment of Compensation</u>. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect the right of the DIP Agent or the DIP Lenders to object to the allowance and payment of such fees and expenses. So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Budget provided by the Debtors to the DIP Agent.

43. <u>Effect of Stipulations on Third Parties</u>.

(a) *Generally*. The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, a Creditors' Committee (if any) and any other official committee that may be appointed in these Cases, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the validity, priority, perfection, extent or enforceability of the Prepetition Liens, Prepetition Secured

Obligations or any other Prepetition Lien and Claim Matters, or asserting or prosecuting any claims, counterclaims, causes of action, objections, contests or defenses against the Prepetition Secured Parties (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (x) with respect to the Creditors' Committee (if appointed), sixty (60) calendar days from the selection of counsel to the Creditors' Committee, or (y) with respect to other parties in interest with requisite standing other than the Debtors or the Creditors' Committee, seventy-five (75) days from the date of entry of the Interim Order (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Secured Parties, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

       (b)    *Binding Effect.*  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, (i) the Prepetition Secured Obligations shall constitute allowed claims, not subject to any Challenge (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise), or other Challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law) and (ii) the stipulations, agreements, releases, and waivers with respect to Prepetition Liens, the

Prepetition Secured Obligations, the Prepetition Secured Parties and any other Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding or Challenge is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is specifically and expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment, and only as to plaintiffs or movants that have complied with the terms hereof and any Challenge not brought in such proceeding or Challenge shall be forever barred; *provided* that if and to the extent any Challenges to any Prepetition Lien and Claim Matters are withdrawn, denied or overruled by a final non-appealable order, such Prepetition Lien and Claim Matters also shall be binding on the Debtors' estates and all parties in interest.

44.     No Third Party Rights.   Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

45.     Section 506(c) Claims.   Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, DIP Lenders or the Prepetition Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or

506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Agent, DIP Lenders or Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

46. No Marshaling/Applications of Proceeds. Subject to entry of a Final Order, the DIP Agent, DIP Lenders, and Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

47. Section 552(b). Subject to entry of a Final Order, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders or the Prepetition Agents, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

48. Access to DIP Collateral. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Lenders, contained in this Interim Order, the DIP Documents or otherwise available at law or in equity, and subject to the terms of the DIP Documents and this Interim Order, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing and subject to the expiration of the Remedies Notice Period, the DIP Agent may, subject to the applicable notice provisions, if any, in this Interim Order and any separate applicable agreement by and between such landlord and the DIP

Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, *provided* that the DIP Agent shall be obligated only to pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded in this paragraph. For the avoidance of doubt, subject to (and without waiver of) the rights of the DIP Agent and/or DIP Lenders under applicable nonbankruptcy law, the DIP Agent and/or DIP Lenders can only enter upon any leased premises after an Event of Default and expiration of the Remedies Notice Period in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or (ii) upon entry of an order of this Court obtained by motion of the DIP Agent and/or DIP Lenders on such notice to the landlord as shall be required by this Court.

49. <u>Limits on Lender Liability</u>. Subject to entry of a Final Order, nothing in this Interim Order, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases. The DIP Agent and the DIP Lenders shall not, solely by reason of having made loans under the DIP Facility be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et*

*seq.*, as amended, or any similar federal or state statute). Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

50. <u>Agency Transition</u>. In connection with the resignation of Deutsche Bank AG New York Branch ("<u>DB</u>") and the appointment and succession of Delaware Trust Company ("<u>Delaware Trust</u>") as the First Lien Agent under the First Lien Credit Documents and Wilmington Trust, National Association ("<u>Wilmington</u>") as the Second Lien Agent under the Second Lien Credit Documents (in each case, the "<u>Agency Succession</u>"), the Debtors are hereby authorized to (i) enter into and perform their obligations under any agreements (including, without limitation, any fee letters), assignments, and amendments with respect to the First Lien Credit Documents and the Second Lien Credit Documents as may be required by DB, Delaware Trust or Wilmington to effectuate the Agency Succession (collectively, the "<u>Agency Succession Documents</u>"), (ii) pay all prepetition and postpetition fees and expenses and incur all other obligations as set forth in the Agency Succession Documents, and (iii) take any other action as may be required by DB, Delaware Trust or Wilmington to effectuate the Agency Succession. For the avoidance of doubt, (x) the Agency Succession (including, without limitation, the assignment of liens and security interests and the transfer of collateral from DB to Delaware Trust and Wilmington in their respective capacities as the resigning and successor First Lien Agent and Second Lien Agent, respectively) shall not affect the validity, enforceability, perfection, priority, or extent of the liens and security interests granted by the Debtors under the First Lien Credit Documents and the Second Lien Credit Documents, and (y) the liens and security interests of Delaware Trust as the successor First Lien Agent and Wilmington as the

successor Second Lien Agent shall have the same validity, enforceability, perfection, priority, and extent as the liens and security interests of DB as the resigning First Lien Agent and the resigning Second Lien Agent, respectively. For the avoidance of doubt, Delaware Trust and Wilmington, as successor First Lien Agent and Second Lien Agent, respectively, shall be entitled to all of the rights, benefits and protections afforded to the First Lien Agent and Second Lien Agent under this Interim Order and under the First Lien Credit Documents and Second Lien Credit Documents, respectively, all of which are reaffirmed and ratified pursuant to this Interim Order. Notwithstanding anything to the contrary herein, this paragraph shall become effective on a final basis.

51.   Agent Consent. In any instance in this Interim Order where the First Lien Agent or Second Lien Agent is indicated as having given its consent, agreement, or authorization (to the extent such consent, agreement, or authorization is required), the First Lien Agent and Second Lien Agent each shall be deemed to have given its consent, agreement, or authorization at the instruction of the Required Lenders (as defined in the First Lien Credit Agreement and the Second Lien Credit Agreement, respectively) and the Required Lenders shall be deemed to have given such instruction to the First Lien Agent and Second Lien Agent, respectively, it being understood that the Ad Hoc Group constitutes the Required Lenders, can instruct the First Lien Agent and the Second Lien Agent in taking actions in connection with the First Lien Credit Agreement and the Second Lien Credit Agreement, respectively, and has also given its consent, agreement, or authorization in such instance. Nothing in this Interim Order shall be construed to limit or affect the First Lien Agent's or Second Lien Agent's right to request instructions from the Required Lenders in accordance with Section 11 of the First Lien Credit Agreement and Section 11 of the Second Lien Credit Agreement, respectively.

52. <u>Insurance Proceeds and Policies</u>. Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

53. <u>Joint and Several Liability</u>. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Borrower and Guarantors (as defined in the DIP Agreement) shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

54. <u>No Superior Rights of Reclamation</u>. The rights of a seller to reclaim or return goods are not Permitted Prior Liens and in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the Prepetition Liens or the DIP Liens.

55. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's, the DIP Lenders' and the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, the DIP Lenders and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject

to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Creditors' Committee's (if appointed) or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order. Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Debtors' Chapter 11 cases.

56. <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties' to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee (if appointed) or any party in interest.

57. <u>Binding Effect of Interim Order</u>. Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, all other creditors of any of the Debtors, any Creditors' Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

58.     No Modification of Interim Order.  Until and unless the DIP Obligations

have been indefeasibly paid in full in cash, and all letters of credit under the DIP Facility shall

have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such

payment being without prejudice to any terms or provisions contained in the DIP Facility which

survive such discharge by their terms), and all commitments to extend credit under the DIP

Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek

or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent and

the Ad Hoc Group, (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii)

a priority claim for any administrative expense or unsecured claim against the Debtors (now

existing or hereafter arising of any kind or nature whatsoever, including, without limitation any

administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the

Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP

Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP

Agent for any order allowing use of Cash Collateral (other than as permitted during the

Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the

prior written consent of the DIP Agent, any lien on any of the DIP Collateral with priority equal

or superior to the DIP Liens, except as specifically provided in the DIP Documents or this

Interim Order; or (d) without the prior written consent of the Ad Hoc Group, any lien on any of

the DIP Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection

Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or

extension of this Interim Order without the prior written consent, as provided in the foregoing, of

the DIP Agent, and no such consent shall be implied by any other action, inaction or

acquiescence of the DIP Agent.

59.     Interim Order Controls.   In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

60.     Discharge.   The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Agent and each of the Prepetition Agents, as applicable, has otherwise agreed in writing.   None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the written consent of the DIP Agent and the DIP Lenders.   For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

61.     Survival.   The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.   The terms and provisions of this Interim Order, including the claims, liens, security interests and other

protections granted to the DIP Agent, DIP Lenders and Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash and all letters of credit under the DIP Facility shall have been cancelled or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions concerning the indemnification of the DIP Agent and DIP Lenders shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations. In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Secured Parties notwithstanding the repayment in full of or termination of the DIP Obligations.

62.     Final Hearing. The Final Hearing to consider entry of the Final Order and final, approval of the DIP Facility is scheduled for [_____], 2017, at [_____] (EST) before the Honorable [_____], United States Bankruptcy Judge, in Courtroom [____] at the United States Bankruptcy Court for the District of Delaware. On or before July ____, 2017, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a

Creditors' Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on **[_____], 2017, at [_____] (EST)**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones (ljones@pszjlaw.com); (ii) counsel to the DIP Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA, 02110-1726, Attn: Julia Frost-Davies (julia.frost-davies@morganlewis.com) and Christopher L. Carter (christopher.carter@morganlewis.com), and Reed Smith LLP, 1201 Market Street, Suite 1500, Wilmington, DE, 19801, Attn: Kurt F. Gwynne (kgynne@reedsmith.com); (iii) the Office of the United States Trustee; and (iv) counsel to a Creditors' Committee (if appointed).

63. _Nunc Pro Tunc Effect of this Interim Order_. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

64. Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Interim Order.

SO ORDERED by the Court this ___ day of July, 2017.

_____
UNITED STATES BANKRUPTCY JUDGE

**Schedule I**

**DIP Primary Collateral**

"DIP Primary Collateral" shall mean all interests of each Loan Party[5] in the following Collateral, in each case whether now owned or existing or hereafter acquired or arising and wherever located, including (1) all rights of each Loan Party to receive moneys due and to become due under or pursuant to the following, (2) all rights of each Loan Party to receive return of any premiums for or proceeds of any insurance, indemnity, warranty or guaranty with respect to the following or to receive condemnation proceeds with respect to the following, (3) all claims of each Loan Party for damages arising out of or for breach of or default under any of the following, and (4) all rights of each Loan Party to terminate, amend, supplement, modify or waive performance under any of the following to perform thereunder and to compel performance and otherwise exercise all remedies thereunder:

(i)     all Accounts and payment intangibles constituting credit card receivables, but for purposes of this clause (i) excluding rights to payment for any property which specifically constitutes DIP Secondary Collateral which has been or is to be sold, leased, licensed, assigned or otherwise disposed of; provided, however, that all rights to payment arising from any sale of Inventory shall constitute DIP Primary Collateral;

(ii)     all Chattel Paper;

(iii)     all Deposit Accounts and all other demand, deposit, time, savings, cash management, passbook and similar accounts maintained with any bank or other financial institution and all monies, securities, Instruments and other investments deposited or required to be deposited in any of the foregoing (in each case, other than a deposit account holding only identifiable proceeds of any DIP Secondary Collateral);

(iv)     all Inventory;

(v)     all other cash and cash equivalents (other than identifiable proceeds of any DIP Secondary Collateral);

(vi)     to the extent evidencing or governing any of the items referred to in the preceding clauses (i) through (v), all General Intangibles, letters of credit (whether or not the respective letter of credit is evidenced by a writing), Letter-of-Credit Rights, Instruments and Documents; provided that to the extent any of the foregoing also relates to DIP Secondary Collateral, only that portion related to the items referred to in the preceding clauses (i) through (v) as being included in the DIP Primary Collateral shall be included in the DIP Primary Collateral;

---

[5] Capitalized terms used but not defined in Schedule I, Schedule II or the Interim Order shall have the meanings ascribed to them in the DIP Agreement.

(vii)     to the extent relating to any of the items referred to in the preceding clauses (i) through (vi), all insurance; provided that to the extent any of the foregoing also relates to DIP Secondary Collateral only that portion related to the items referred to in the preceding clauses (i) through (vi) as being included in the DIP Primary Collateral shall be included in the DIP Primary Collateral;

(viii)     to the extent relating to any of the items referred to in the preceding clauses (i) through (vii), all Supporting Obligations; provided that to the extent any of the foregoing also relates to DIP Secondary Collateral only that portion related to the items referred to in the preceding clauses (i) through (vii) as being included in the DIP Primary Collateral shall be included in the DIP Primary Collateral;

(ix)     to the extent relating to any of the items referred to in the preceding clauses (i) through (viii), all Commercial Tort Claims; provided that to the extent any of the foregoing also relates to DIP Secondary Collateral only that portion related to the items referred to in the preceding clauses (i) through (viii) as being included in the DIP Primary Collateral shall be included in the DIP Primary Collateral;

(x)     all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing;

(xi)     all proceeds of leased real property;

(xii)     all unencumbered assets,

(xiii)     all actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Primary Collateral,

(xiv)     subject to entry of a Final Order, the proceeds of any avoidance actions brought under Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions brought pursuant to section 549 of the Bankruptcy Code) (together, the "Avoidance Actions");

(xv)     subject to entry of a Final Order, the Debtors' rights under Section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof; and

(xvi)     all cash proceeds and all non-cash proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (including all insurance proceeds) and all collateral security, guarantees and other Collateral support given by any Person with respect to any of the foregoing.

**Schedule II**

**DIP Secondary Collateral**

"DIP Secondary Collateral" shall mean all interests of each Loan Party[6] in the following Collateral, in each case whether now owned or existing or hereafter acquired or arising and wherever located, including (1) all rights of each Loan Party to receive moneys due and to become due under or pursuant to the following, (2) all rights of each Loan Party to receive return of any premiums for or proceeds of any insurance, indemnity, warranty or guaranty with respect to the following or to receive condemnation proceeds with respect to the following, (3) all claims of each Loan Party for damages arising out of or for breach of or default under any of the following, and (4) all rights of each Loan Party to terminate, amend, supplement, modify or waive performance under any of the following, to perform thereunder and to compel performance and otherwise exercise all remedies thereunder:

      (i)     any deposit account holding only identifiable proceeds of any DIP Secondary Collateral and all cash, money, securities, and other investments deposited therein;

      (ii)     all Equipment;

      (iii)     all Fixtures;

      (iv)     all General Intangibles, including Contracts, together with all Contract Rights arising thereunder (in each case, other than General Intangibles constituting, evidencing, governing or otherwise relating to DIP Primary Collateral);

      (v)     all letters of credit (whether or not the respective letter of credit is evidenced by a writing), Letter-of-Credit Rights (to the extent perfected by the filing of a UCC financing statement as a Supporting Obligation), Instruments and Documents (except to the extent constituting, evidencing or governing or attached or related to DIP Primary Collateral);

      (vi)     without duplication, all Investment related property, all Securities, all Securities Entitlements and all Securities Accounts (in each case, other than any Collateral constituting DIP Primary Collateral and other than any Supporting Obligations supporting DIP Primary Collateral);

      (vii)     all Intellectual Property;

      (viii)     except to the extent constituting, or relating to, Revolving Credit Primary Collateral, all Commercial Tort Claims;

      (ix)     all real property (including, if any, leasehold interests) on which the Loan Parties were required to provide a lien to the Prepetition First Lien Secured Parties and any title

---

[6] Capitalized terms used but not defined in Schedule I, Schedule II or the Interim Order shall have the meanings ascribed to them in the DIP Agreement.

insurance with respect to such real property (other than title insurance actually obtained by the Administrative Agent in respect of such real property) and the proceeds thereof; and

(x)　　except to the extent constituting, governing, evidencing or relating to, the DIP Primary Collateral, all other personal property (whether tangible or intangible) of such Loan Party;

(xi) to the extent constituting, or relating to, any of the items referred to in the preceding clauses (i) through (x), all insurance; provided that to the extent any of the foregoing also relates to DIP Primary Collateral, only that portion related to the items referred to in the preceding clauses (i) through (x) as being included in the DIP Secondary Collateral shall be included in the DIP Secondary Collateral;

(xii)　　to the extent relating to any of the items referred to in the preceding clauses (i) through (xi), all Supporting Obligations; provided that to the extent any of the foregoing also relates to Revolving Credit Primary Collateral only that portion related to the items referred to in the preceding clauses (i) through (xi) as being included in the DIP Secondary Collateral shall be included in the DIP Secondary Collateral;

(xiii) all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto and any General Intangibles at any time evidencing or relating to any of the foregoing; provided that to the extent any of such material also relates to DIP Primary Collateral only that portion related to the items referred to in the preceding clauses (i) through (xii) as being included in the DIP Secondary Collateral shall be included in the DIP Secondary Collateral;

(xiv)　　all actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Secondary Collateral; and

(xv)　　all cash proceeds and, solely to the extent not constituting DIP Primary Collateral, non-cash proceeds, products, accessions, rents and profits of or in respect of any of the foregoing and all collateral security, guarantees and other Collateral support given by any Person with respect to any of the foregoing.

**Exhibit 1**

**Budget**

# DIP Budget
## True Religion - US

($ in thousands)

Week Beginning:

| Week of the Year | 2-Jul | 9-Jul | 16-Jul | 23-Jul | 30-Jul | 6-Aug | 13-Aug | 20-Aug | 27-Aug | 3-Sep | 10-Sep | 17-Sep | 24-Sep | 1-Oct | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Week 23 | Week 24 | Week 25 | Week 26 | Week 27 | Week 28 | Week 29 | Week 30 | Week 31 | Week 32 | Week 33 | Week 34 | Week 35 | Week 36 | Total Item EST |
| Cash on Hand (beginning of week) | 3,480 | 2,257 | 520 | 1,092 | 814 | 748 | 851 | 901 | 919 | 1,327 | 1,093 | 1,837 | 1,516 | 798 | 3,480 |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Operating Receipts | 5,498 | 4,714 | 5,211 | 5,414 | 5,987 | 5,268 | 5,169 | 5,109 | 5,684 | 6,142 | 4,528 | 4,539 | 6,003 | 4,734 | 74,001 |
| ABL Borrowing | - | - | - | - | - | - | - | - | - | - | - | - | 25,000 | 4,000 | 29,000 |
| DIP Borrowing | 12,000 | 2,000 | 1,000 | 2,000 | 1,000 | 2,000 | - | 2,000 | - | - | - | - | - | - | 22,000 |
| TOTAL CASH RECEIPTS | 17,498 | 6,714 | 6,211 | 7,414 | 6,987 | 7,268 | 5,169 | 7,109 | 5,684 | 6,142 | 4,528 | 4,539 | 31,003 | 8,734 | 125,001 |
| Total Cash Available (before cash out) | 20,978 | 8,971 | 6,731 | 8,506 | 7,802 | 8,016 | 6,020 | 8,010 | 6,603 | 7,469 | 5,621 | 6,376 | 32,519 | 9,532 | 128,481 |
| **CASH PAID OUT** | | | | | | | | | | | | | | | |
| Operating Disbursements | 3,720 | 7,109 | 4,297 | 5,967 | 6,350 | 6,854 | 4,628 | 6,265 | 3,762 | 7,437 | 4,565 | 5,621 | 6,406 | 7,432 | 80,412 |
| ABL Interest | - | - | - | 62 | - | - | - | 86 | - | - | - | - | 91 | - | 239 |
| DIP Interest | - | - | - | 30 | - | - | - | 29 | - | - | - | - | 27 | - | 86 |
| Facility Fee / LoC Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 86 |
| ABL Paydown | 12,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 12,000 |
| DIP Paydown | - | - | - | - | - | - | - | - | 1,000 | - | - | - | 21,000 | - | 22,000 |
| Restructuring | 3,001 | 1,342 | 1,342 | 1,631 | 704 | 311 | 491 | 711 | 514 | (1,061) | (781) | (761) | 4,198 | 1,177 | 12,821 |
| TOTAL CASH PAID OUT | 18,721 | 8,451 | 5,640 | 7,692 | 7,054 | 7,165 | 5,119 | 7,091 | 5,276 | 6,376 | 3,783 | 4,860 | 31,722 | 8,609 | 127,559 |
| Cash Position - Operating (end of week) | 2,257 | 520 | 1,092 | 814 | 748 | 851 | 901 | 919 | 1,327 | 1,093 | 1,837 | 1,516 | 798 | 923 | 923 |
| Net Cash Flow | (1,223) | (1,737) | 572 | (278) | (67) | 103 | 50 | 18 | 409 | (234) | 744 | (321) | (719) | 125 | (2,558) |
| **ABL Balance** | - | - | - | - | - | - | - | - | - | - | - | - | 25,000 | 29,000 | 29,000 |
| DIP Balance | 12,000 | 14,000 | 15,000 | 17,000 | 18,000 | 20,000 | 20,000 | 22,000 | 21,000 | 21,000 | 21,000 | 21,000 | - | - | |
| Net Cash | (9,743) | (13,480) | (13,908) | (16,186) | (17,252) | (19,149) | (19,099) | (21,081) | (19,673) | (19,907) | (19,163) | (19,484) | (24,202) | (28,077) | (28,077) |
| LC Balance | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 | 5,052 |

Note: Projected end of week cash positions are shown pre-cash dominion.