THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE FOLLOWING CHAPTER 11 PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  A DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY THE COURT.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| True Religion Apparel, Inc.,[1] et al., | Case No. 17-11460 (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

Dated:  July 5,  2017

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
Richard M. Pachulski (CA Bar No. 90073)
Robert B. Orgel (CA Bar No. 101875)
David M. Bertenthal (CA Bar No. 167624)
James E. O'Neill (DE Bar No. 4042)
919 North Market Street, 17th Floor
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  302/652-4100
Facsimile:  302/652-4400
E-mail:     ljones@pszjlaw.com
            rpachulski@pszjlaw.com
            rorgel@pszjlaw.com
            dbertenthal@pszjlaw.com
            joneill@pszjlaw.com

Proposed Counsel for the Debtors and Debtors in Possession

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: True Religion Apparel, Inc. (2633), TRLG Intermediate Holdings, LLC (3150), Guru Denim Inc. (1785), True Religion Sales, LLC (3441), and TRLGGC Services, LLC (8453).  The location of the Debtors' headquarters and service address is: 1888 Rosecrans Avenue, Manhattan Beach, CA 90266.

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ..............................................2

    A.    Rules of Interpretation, Computation of Time and Governing Law ....................2

    B.    Restructuring Support Agreement; Consent Rights Required ...........................2

    C.    Defined Terms ...................................................................................................3

ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS ...............................................................20

    A.    Administrative Expense Claims .......................................................................20

    B.    Professional Fee Claims ...................................................................................21

    C.    DIP Facility Claims ..........................................................................................21

    D.    Priority Tax Claims ...........................................................................................22

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS .................................................................22

    A.    Summary ...........................................................................................................22

    B.    Elimination of Vacant Classes .........................................................................23

    C.    Classification and Treatment of Claims and Equity Interests ..........................24

    D.    Special Provision Governing Claims Related to Assumed Executory Contracts or Unexpired Leases and Unimpaired Claims ...................................28

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ...........................................29

    A.    Presumed Acceptance of Plan ..........................................................................29

    B.    Voting Classes ..................................................................................................29

    C.    Acceptance by Impaired Classes of Claims and Equity Interests .....................29

    D.    Cramdown; Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ..............................................................................................29

    E.    Continuing Susceptibility to Claim Objection; Solicitation in Good Faith ................................................................................................................29

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................30

    A.    General Settlement of Claims ...........................................................................30

DOCS_LA:305807.27 85199/001

B.     Corporate Existence ................................................................30

C.     Vesting of Assets in the Reorganized Debtors ....................................31

D.     New ABL Facility................................................................31

E.     Reorganized First Lien Term Loan Facility........................................32

F.     Authorized Financing............................................................32

G.     Management Incentive Plan........................................................32

H.     Issuance of Reorganized First Lien Term Loans, New Common Shares,
       New Warrants and Related Documentation...........................................32

I.     Substantive Consolidation for Plan Purposes .....................................34

J.     Release of Liens, Claims and Equity Interests....................................34

K.     Amended Organizational Documents.................................................34

L.     Directors and Officers of Reorganized Holdings..................................35

M.     Corporate Action.................................................................35

N.     Cancellation of Notes, Certificates and Instruments............................36

O.     Cancellation of Existing Instruments Governing Security Interests.............37

P.     Intercompany Claims; Intercompany Interests; Corporate
       Reorganization ..................................................................38

Q.     Restructuring Transactions ......................................................38

R.     Restructuring Expenses...........................................................38

S.     Agent Fee Claims.................................................................38

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
       LEASES ..........................................................................39

A.     Assumption and Rejection of Executory Contracts and Unexpired
       Leases...........................................................................39

B.     Assignment of Executory Contracts or Unexpired Leases ...........................39

C.     Rejection of Executory Contracts or Unexpired Leases ............................40

DOCS_LA:305807.27 85199/001

D.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.................................................................................................40

E.     Objections to Assumption, Assignment or Cure of Executory Contracts or Unexpired Leases .................................................................41

F.     Assumption of Existing Senior Leadership Employment Agreements/Incentive Compensation ..................................................41

G.     Director and Officer Insurance Policies...........................................41

H.     Indemnification Provisions ...............................................................41

I.     Compensation and Benefit Programs................................................42

J.     Workers' Compensation Benefits .....................................................42

K.     Insurance Policies .............................................................................42

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS............................................42

A.     Distributions for Claims Allowed as of the Effective Date ...............42

B.     Distributions on Account of Claims Allowed After the Effective Date ............43

1.     Payments and Distributions on Disputed Claims..............................43

2.     Special Rules for Distributions to Holders of Disputed Claims. ........43

3.     The Class 5 Reserve..........................................................................43

C.     Delivery and Distributions and Undeliverable or Unclaimed Distributions......................................................................................44

1.     Record Date for Distributions...........................................................44

2.     Delivery of Distributions in General................................................44

3.     Distributions by Distribution Agents ...............................................45

4.     Minimum Distributions.....................................................................45

5.     Undeliverable Distributions ..............................................................45

D.     Compliance with Tax Requirements/Allocations .............................46

E.     Timing and Calculation of Amounts to Be Distributed ....................47

F.     Setoffs ...............................................................................................47

DOCS_LA:305807.27 85199/001

G.  Surrender of Canceled Instruments or Securities.................................................48

H.  Lost, Stolen, Mutilated or Destroyed Securities .................................................48

ARTICLE VIII. PROCEDURES CONCERNING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS.........................................48

A.  Rights of Reorganized Debtors with Respect to Allowance of Claims
and Equity Interests.................................................................................48

B.  No Distributions to Holders of Disputed Claims or Equity Interests
Pending Resolution of the Dispute .......................................................48

C.  Resolving Disputed Claims and Equity Interests.................................................49

1.  Generally.................................................................................49

2.  Estimation .................................................................................49

D.  Distributions after Allowance of Disputed Claims or Equity Interests .............50

ARTICLE IX. CONDITIONS PRECEDENT TO  CONSUMMATION OF THE
PLAN.......................................................................................50

A.  Conditions Precedent to Consummation.................................................50

B.  Waiver of Conditions .................................................................................51

C.  Notice of Effective Date .................................................................................51

D.  Effect of Non-Occurrence of Conditions to Consummation ...........................51

ARTICLE X. EFFECT OF CONFIRMATION; AND RELEASE,  INJUNCTION
AND RELATED PROVISIONS.................................................52

A.  Compromise and Settlement .................................................................52

B.  Mutual Release by the Debtors and Released Parties.................................53

C.  Releases by Holders of Claims and Interests.................................................54

D.  Exculpation .................................................................................54

E.  Injunctions.................................................................................55

1.  Confirmation Date Injunction .................................................................55

2.  Effective Date Injunctions .................................................................55

DOCS_LA:305807.27 85199/001

| | | |
|---|---|---|
| a. | Injunction Against All Entities | 55 |
| b. | Injunction Against Holders of Released, Discharged or Exculpated Claims | 55 |
| F. | Protection against Discriminatory Treatment | 56 |
| G. | Reimbursement or Contribution | 56 |
| H. | Recoupment | 56 |
| I. | Preservation of Rights of Action | 56 |
| 1. | Maintenance of Causes of Action | 56 |
| 2. | Preservation of All Causes of Action Not Expressly Settled or Released | 57 |

**ARTICLE XI. BINDING NATURE OF PLAN** .......... 57

**ARTICLE XII. RETENTION OF JURISDICTION** .......... 57

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** .......... 59

| | | |
|---|---|---|
| A. | Dissolution of the Committee | 59 |
| B. | Payment of Statutory Fees | 59 |
| C. | Modification of Plan | 59 |
| D. | Revocation of Plan | 60 |
| E. | Entire Agreement | 60 |
| F. | Closing of Chapter 11 Cases | 60 |
| G. | Successors and Assigns | 60 |
| H. | Reservation of Rights | 60 |
| I. | Further Assurances | 61 |
| J. | Severability | 61 |
| K. | Service of Documents | 62 |
| L. | Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code | 62 |
| M. | Governing Law | 63 |

DOCS_LA:305807.27 85199/001

N.     Immediate Binding Effect ........................................................................ 63

O.     Tax Reporting and Compliance ............................................................... 63

P.     Plan Schedules ....................................................................................... 63

Q.     No Strict Construction ........................................................................... 63

R.     Controlling Document ............................................................................ 64

DOCS_LA:305807.27 85199/001

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

TRUE RELIGION APPAREL, INC. and its Affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), propose the following joint chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtors. The Plan reflects the agreement reached among the Debtors, Equity Parent, and the Consenting Creditors to reorganize the Debtors as a going-concern business and outlines a consensual deleveraging transaction that will leave the Debtors with a significantly improved capital structure. The Debtors, Equity Parent, and the Consenting Creditors believe that the financial restructurings, the operational restructuring (through, among other things, focused lease rejections) and the other transactions reflected in the Plan will position the Reorganized Debtors well to succeed post emergence from bankruptcy. With a sustainable capital structure aligned with the Debtors' revised business plan and adequate operating liquidity, the Reorganized Debtors will be positioned to compete more effectively in the evolving retail industry. The Debtors, Equity Parent, and the Consenting Creditors determined that it was a better option for the Debtors to file for chapter 11 with an agreement on a Plan that provides the possibility of recoveries to all of the Debtors' stakeholders and allows the Debtors to undertake the necessary financial and operational restructurings now, rather than delay the chapter 11 filing and risk further deterioration to the Debtors' business, which would result in less value for all of the Debtors' stakeholders.

Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in ARTICLE I.C of the Plan. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, historical financial information, accomplishments leading up to the commencement of the Chapter 11 Cases, projections and properties, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that will be Filed with the Bankruptcy Court that are referenced in this Plan, the Plan Supplement, or the Disclosure Statement as Exhibits and Plan Schedules. All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the terms set forth herein and in the Restructuring Support Agreement, and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its Consummation.

The Plan contemplates deemed substantive consolidation of the Debtors for voting and Plan Distribution purposes only with respect to the Claims. If the Plan cannot be confirmed as to some or all of the Debtors, then, without prejudice to the respective parties' rights under the Restructuring Support Agreement and subject to the terms set forth herein and therein, (a) the Plan may be revoked as to all of the Debtors, or (b) the Debtors may revoke the Plan as to any Debtor and confirm the Plan as to the remaining Debtors to the extent required. The Debtors reserve the right to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims as set forth in ARTICLE IV.D hereof.

Notwithstanding any rights of approval that may exist pursuant to the Restructuring Support Agreement or otherwise as to the form or substance of the Disclosure Statement, the Plan or any other document relating to the transactions contemplated hereunder or thereunder, neither the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Equity Parent, nor their respective representatives, members, financial or legal advisors, or agents, has independently verified the information contained herein or takes any responsibility therefor and

none of the foregoing entities or persons makes any representations or warranties whatsoever concerning the information contained herein.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A. Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America. The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. Wherever in this Plan there is a reference to the consent of the Required Consenting Creditors, or where it states that information will be delivered to the Required Consenting Creditors, such reference shall require that the Debtors communicate directly to the legal and financial advisors to the Consenting Creditors and such advisors shall communicate with the Consenting Creditors.

### B. Restructuring Support Agreement; Consent Rights Required

Notwithstanding anything herein to the contrary, so long as the Restructuring Support Agreement has not been terminated in accordance with its terms, any and all consents and approval rights of the respective parties as set forth in the Restructuring Support Agreement with respect to (i) the form and substance of this Plan, (ii) the documents to be Filed as part of the Plan Supplement, (iii) the other Plan Documents, (iv) any other orders or documents referenced herein or otherwise to be executed in connection with the transactions contemplated hereunder, and/or (v) any other Restructuring Documents (as defined in the Restructuring Support Agreement), including, in each case, any amendments, restatements, supplements, or other modifications thereto, and any consents, waivers, or other deviations under or from any such documents, shall be expressly incorporated herein by this reference (including to the applicable definitions in ARTICLE I.C hereof) and fully enforceable as if stated in full herein. To the extent that there is any inconsistency between the Restructuring Support Agreement, on the one hand, and the Plan, on the other hand, as to such consents and the approval rights and the Restructuring Support Agreement has not been terminated, then the consents and the approval rights required in the Restructuring Support Agreement shall govern.

## C.    Defined Terms

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein (and their plural or singular forms shall have correlative meanings):

1.      "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Expense Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred on or after the Petition Date and prior to and including the Effective Date.  For the avoidance of doubt, Accrued Professional Compensation shall not include the Restructuring Expenses.

2.      "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Cases that is Allowed pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) the Accrued Professional Compensation; (c) the Restructuring Expenses; (d) the DIP Facility Claims, including, without limitation, the reasonable and documented fees and expenses of the DIP Agent and the DIP Lenders, including their respective reasonable and documented professional and advisory fees and expenses; and (e) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

3.      "*Administrative Expense Claims Bar Date*" means the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

4.      "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

5.      "*Allowed*" (this term is used both separately and in conjunction with other defined terms in the Plan (*e.g.*, Allowed Priority Tax Claim)) means, except as otherwise provided herein, (a) a Claim or Equity Interest specifically allowed under the terms of the Plan, (b) a Claim or Equity Interest that has been allowed by a Final Order or in a stipulation of amount and nature of the Claim or Equity Interest executed by the Reorganized Debtors on, or after, the Effective Date, with the consent of the Required Consenting Creditors with respect to any stipulation providing for an (i) allowed Administrative Expense Claim greater than or equal to $100,000 or (ii) allowed General Unsecured Claim greater than or equal to $200,000 (which consent shall not be unreasonably withheld), (c) an Equity Interest or Claim as reflected by a Proof of Claim, in each case, timely Filed or deemed timely Filed, or (d) if the Proof of Claim has not been timely Filed or deemed timely Filed, the Claim as reflected in the Schedules if therein listed as undisputed, unliquidated and not contingent or the Equity Interest as reflected in the Schedules; <u>provided</u> that in the case of allowance under either subsections (c) or (d), any Claim's allowance is subject to any limitations imposed by section 502 of the Bankruptcy Code; and provided further that allowance under subsections (c) and (d) only is applicable if the Claim or Equity Interest is not timely Disputed;  and provided also that allowance under subsections (c) and (d) only apply once either (1) the Debtors, with the consent of the Required Consenting Creditors, or the Reorganized Debtors have determined not to object to the Claim, or (2) the last day to timely object to such Claim has passed.

6. "*Alternative Structures*" has the meaning ascribed thereto in ARTICLE V.B.

7. "*Amended Organizational Documents*" means the new limited liability company agreement or other applicable organizational documents of Reorganized Holdings, which shall be Filed as an Exhibit with the Plan Supplement and which shall be consistent in all respects with the Restructuring Support Agreement, and shall otherwise be in form and substance acceptable to the Required Consenting Creditors in their sole discretion.

8. "*Assets*" means all of the right, title, and interest of a Debtor in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

9. "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination or other claims, actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, claims, actions or remedies arising under sections 502, 510, 542-553 and 724(a) of the Bankruptcy Code.

10. "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

11. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over the Chapter 11 Cases.

12. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

13. "*Bar Date*" means the deadlines set by order of the Bankruptcy Court for Filing Proofs of Claim in the Chapter 11 Cases.

14. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

16. "*Cause of Action*" means any action, proceeding, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, reduced to judgment or not reduced to judgment, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law. For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code;

and (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims.

   17. *"Chapter 11 Cases"* means, with respect to a Debtor, such Debtor's voluntary case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code, and styled *In re True Religion Apparel, Inc., et al.*, Case No. 17-[_____ (____)].

   18. *"Claim"* means any "claim" against any Debtor as defined in section 101(5) of the Bankruptcy Code.

   19. *"Claims Register"* means the official register of Claims proposed by the Debtors to be maintained by Prime Clerk LLC.

   20. *"Class"* means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to sections 1122(a) and 1123(a) of the Bankruptcy Code.

   21. *"Class 5 Consensual Plan Consideration"* has the meaning ascribed in ARTICLE III.C.5.d.

   22. *"Class 5 Default Consideration"* has the meaning ascribed in ARTICLE III.C.5.c.

   23. *"Class 5 Electing Holder"* means any Holder of an Allowed General Unsecured Claim that elects the Class 5 Warrants for Debt Treatment. Pursuant to the terms of the Restructuring Support Agreement, and as part of the agreements set forth in the Plan, each Holder of an Allowed Prepetition First Lien Claim, that (a) is a Holder of an Allowed Prepetition Second Lien Claim and (b) is party to the Restructuring Support Agreement, has agreed to elect the Class 5 Warrants for Debt Treatment with respect to one hundred percent (100%) of its portion of the aggregate principal amount of the additional $2.0 million of Reorganized First Lien Term Loans that would otherwise be distributed to such Holder in respect of its Allowed General Unsecured Claim if Class 5 votes to accept the Plan.

   24. *"Class 5 Equity Cash Out Option"* means the option for Holders of Allowed General Unsecured Claims, if Class 5 votes to accept the Plan, to elect to receive, in lieu of receiving Exchange Common Shares, Cash for such Exchange Common Shares in an amount equal to such Holder's Pro Rata share of $1,050,000 (as measured, for the avoidance of doubt, based such Holder's Allowed General Unsecured Claim as a percentage of all Allowed General Unsecured Claims, and not as a percentage of all Allowed General Unsecured Claims of Holders who elect the Class 5 Equity Cash Out Option).

   25. *"Class 5 Reserve"* has the meaning ascribed in ARTICLE VII.B.3.

   26. *"Class 5 Swapped Debt"* means that portion of the aggregate principal amount of the additional $2.0 million of Reorganized First Lien Term Loans that would be distributed to a Holder of an Allowed Class 5 Claim that elects the Class 5 Warrants for Debt Treatment if Class 5 votes to accept the Plan and such Holder did not elect the Class 5 Warrants for Debt Treatment.

27. *"Class 5 Warrants for Debt Treatment"* means, in respect of the right of each Holder of an Allowed General Unsecured Claim to receive, as part of its Plan Distribution on account of its Allowed General Unsecured Claim if Class 5 votes to accept the Plan, its Pro Rata share of the additional $2.0 million of Reorganized First Lien Term Loans, (a) the waiver by such Holder of its right to receive one hundred percent (100%) (as it may elect on its Ballot) of the aggregate principal amount of such additional $2.0 million of Reorganized First Lien Term Loans that would otherwise be distributed to such Holder in respect of its Allowed General Unsecured Claim and (b) in exchange for such waiver, the right of such Holder to receive, instead, the Class D Warrants; provided, that, such Holder is not, by such waiver, waiving its right to any other distributions due to it in respect of its Allowed General Unsecured Claim, including such Holder's Pro Rata share of the $2.5 million of Reorganized First Lien Term Loans available to Holders of Allowed General Unsecured Claims regardless of whether Class 5 votes to accept or reject the Plan (or any other Claim it may hold). The Reorganized First Lien Term Loan Documents shall reflect the resulting reduction in the principal amount of the Reorganized First Lien Term Loan Facility.

28. *"Class A Warrants"* means warrants to purchase 2.5% of the fully-diluted New Common Shares at an initial exercise price per share struck at a $116.5 million equity valuation for Reorganized Holdings, with a term of five (5) years, and such other terms consistent with the Restructuring Support Agreement and as fully set forth in the applicable Warrant Agreement.

29. *"Class B Warrants"* means, to the extent issued pursuant to the Plan, warrants to purchase 7.5% of the fully-diluted New Common Shares at an initial exercise price per share struck at a $116.5 million equity valuation for Reorganized Holdings, with a term of five (5) years, and such other terms consistent with the Restructuring Support Agreement and as fully set forth in the applicable Warrant Agreement.

30. *"Class C Warrants"* means, to the extent issued pursuant to the Plan, warrants to purchase 10.0% of the fully-diluted New Common Shares at an initial exercise price per share struck at a $216.5 million equity valuation for Reorganized Holdings, with a term of five (5) years, and such other terms consistent with the Restructuring Support Agreement and as fully set forth in the applicable Warrant Agreement.

31. *"Class D Warrants"* means warrants to purchase 1.0% of the fully-diluted New Common Shares for each $200,000 of Class 5 Swapped Debt of the fully-diluted New Common Shares at an initial exercise price per share struck at a $330.0 million equity valuation for Reorganized Holdings, with a term of five (5) years, and such other terms consistent with the Restructuring Support Agreement and as fully set forth in the applicable Warrant Agreement.

32. *"Collateral"* means any property or interest in property of any Debtor's Estate that is subject to a valid and enforceable Lien to secure a Claim.

33. *"Committee"* means any committee of unsecured creditors in the Chapter 11 Cases appointed pursuant to section 1102 of the Bankruptcy Code.

34. *"Confirmation Date"* means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

35.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

36.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code that is in form and substance acceptable to the Debtors and the Required Consenting Creditors.

37.    "*Consenting Creditor*" means any of the Holders of Prepetition First Lien Claims and Prepetition Second Lien Claims that is party to the Restructuring Support Agreement, together with its successors and permitted assigns that subsequently become party to the Restructuring Support Agreement in accordance with the terms thereof.

38.    "*Consenting Creditors' Professionals*" means, collectively, (a) Akin Gump Strauss Hauer & Feld LLP, in its capacity as primary legal counsel to the Consenting Creditors; (b) Moelis and Company, LLP, as financial advisor to the Consenting Creditors; and (c) Ashby & Geddes, as Delaware counsel to the Consenting Creditors.

39.    "*Consummation*" means the occurrence of the Effective Date.

40.    "*Continuing Operations Claim*" means a Continuing Trade Claim or Customer Program Claim.

41.    "*Continuing Trade*" means the agreement(s) of a Critical Vendor (pursuant to a critical vendor agreement or other agreement or arrangement that the Debtors determine, in the exercise of their reasonable business judgment, is satisfactory, to continue to do business with the Debtors during the Chapter 11 Cases; provided, that to the extent any such agreement or arrangement would provide for trade terms that are less favorable to the Debtors or Reorganized Debtors as compared to those trade terms that existed as of the Petition Date, the Debtors shall obtain the prior consent of the Required Consenting Creditors.

42.    "*Continuing Trade Claim*" means a Claim against a Debtor that:

a.   is held by a Critical Vendor who agrees to provide Continuing Trade; and

b.   would be a General Unsecured Claim, as applicable, absent such Claim being held by a Critical Vendor who agrees to provide Continuing Trade, as described above.

43.    "*Critical Vendor*" means a Holder of a Claim identified by the Debtors, as a critical vendor, significant to the Debtors' ability to continue to operate its business in a cost-effective manner and in the ordinary course of business without undue disruption (which critical vendor identification by the Debtors is subject to the consent rights of the Required Consenting Creditors as described in the definition of "Continuing Trade," above).

44.    "*Customer Program Claim*" means a prepetition claim held by a customer of a Debtor that the Debtors determine relates to a "Customer Program" as defined or described in that certain *Debtors' Motion For Entry Of An Order Authorizing The Debtors To Honor Certain Prepetition Obligations To Customers And To Otherwise Continue Certain Customer Programs In The Ordinary Course Of Business*, as approved by the

Bankruptcy Court on or shortly after the Petition Date; with such Customer Programs including related credit card fees and generally relating to the Debtors' programs in which they offer their retail or wholesale customers gift cards, refunds, returns, exchanges, mark-down allowances, coupons, discounts, advertising reimbursements, freight offsets, and other promotional offers.

45.      "*Debtor(s)*" means, individually, True Religion Apparel, Inc., TRLG Intermediate Holdings, LLC, Guru Denim Inc., and True Religion Sales, LLC, and TRLGGC Services, LLC, in each case, in their capacities as debtors in the Chapter 11 Cases.

46.      "*DIP Agent*" means the administrative agent and collateral agent under the DIP Facility, and any successors thereto.

47.      "*DIP Facility*" means that certain senior secured superpriority post-petition credit facility made available to the Debtors pursuant to the DIP Facility Loan Documents and the DIP Orders.

48.      "*DIP Facility Claim*" means any Claim of the DIP Agent or any DIP Lender arising from, under or in connection with the DIP Facility.

49.      "*DIP Facility Loan Documents*" means the credit agreement governing the DIP Facility and the related notes, guarantees, security documents, and intercreditor agreement, as the case may be, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

50.      "*DIP Lenders*" means the lenders party to the DIP Facility Loan Documents and Holders of DIP Facility Claims.

51.      "*DIP Orders*" means, collectively, the Interim DIP Order and Final DIP Order, each of which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

52.      "*Disclosure Statement*" means that certain *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan, and which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

53.      "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement, as containing, among other things, "adequate information" as required by section 1125 of the Bankruptcy Code and solicitation procedures related thereto, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

54.      "*Disputed*" means, with respect to a Claim, Equity Interest or any portion thereof that is not specifically Allowed under the Plan, that such Claim, Equity Interest or portion thereof: (a) is the subject of an objection or request for estimation filed by any of the Debtors or any other party in interest in accordance with applicable law, which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (b) has not been otherwise Allowed and is scheduled by the Debtors as contingent,

unliquidated, or disputed; or (c) is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

55.     "*Distribution Agent*" means Reorganized Holdings or any party designated by the Debtors or Reorganized Holdings, as applicable, to serve as distribution agent under this Plan.

56.     "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Confirmation Date or such other date as designated by an order of the Bankruptcy Court.

57.     "*D&O Liability Insurance Policies*" means the Debtors or Reorganized Debtors insurance policies for directors' and officers' liability.

58.     "*Effective Date*" means the Business Day as determined by the Debtors with the consent of the Required Consenting Creditors that this Plan becomes effective as provided in ARTICLE IX hereof, which date shall be specified in a notice filed by the Reorganized Debtors with the Bankruptcy Court.

59.     "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

60.     "*Equity Interest*" means any Equity Security in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or limited company interests, together with (i) any options, warrants or contractual rights to purchase or acquire any such Equity Securities at any time with respect to such Debtor, and all rights arising with respect thereto and (ii) the rights of any Entity to purchase or demand the issuance of any of the foregoing and shall include: (1) conversion, exchange, voting, participation, and dividend rights; (2) liquidation preferences; (3) options, warrants, and put rights; and (4) stock-appreciation rights. The term "Equity Interest" also includes any Claim that is determined to be subordinated to the status of an Equity Security by Final Order of the Bankruptcy Court, whether under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

61.     "*Equity Interests in Holdings*" means all Equity Interests in TRLG Intermediate Holdings, LLC.

62.     "*Equity Parent*" means TRLG Holdings, LLC, which owns 100% of the Equity Interests in Holdings.

63.     "*Equity Parent's Professionals*" means Wachtell, Lipton, Rosen & Katz, as Equity Parent's legal counsel.

64.     "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

65.     "*Estates*" means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

66.     "*Exchange Common Shares*" means the New Common Shares to be issuable by Reorganized Holdings on the Effective Date and distributable to (a) Holders of Allowed Prepetition First Lien Claims, (b) Holders of Allowed General Unsecured Claims (prior to accounting for the Class 5 Equity Cash Out Option), and (c) Holders of Allowed Equity Interests in Holdings (if applicable), in each case, in accordance with the terms of the Plan and consistent with the Restructuring Support Agreement, and which, collectively, shall constitute one-hundred percent (100%) of the issuable New Common Shares as of the Effective Date, subject to dilution by any shares of New Common Shares issuable (x) upon exercise of the New Warrants and (y) on account of the Management Incentive Plan; *provided, however*, the aggregate number of Exchange Common Shares to be distributed to Holders of Allowed General Unsecured Claims is subject to reduction on account of participation in the Class 5 Equity Cash Out Option and such reduced aggregate number of Exchange Common Shares shall constitute one-hundred percent (100%) of the New Common Shares (prior to any New Common Shares issued upon exercise of the New Warrants or on account of the Management Incentive Plan).

67.     "*Excluded Party*" means, any Holder of Equity Interests in or Claims against any Debtor, or any other Person, that (i) seeks any relief materially adverse to the Restructuring, (ii) opts out of being a Releasing Party to any third-party releases sought in connection with the Plan, (iii) objects to the Plan or supports an objection to the Plan or (iv) breaches, or otherwise fails to perform its obligations under, the Restructuring Support Agreement, in each case as shall be determined by the Debtors and the Required Consenting Creditors (acting cooperatively). To the extent that a Person is deemed an Excluded Party, and such Person objects to such characterization, the Bankruptcy Court shall have final authority to determine whether such Person is an Excluded Party.

68.     "*Exculpated Party*" means, in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) any Committee and (d) each Related Person of any of (a) through (c) of the foregoing.

69.     "*Executory Contract*" means a contract to which any Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

70.     "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement or contained in the Plan Supplement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

71.     "*Existing Senior Leadership Employment Agreements*" means the 12 employment agreements existing as of the Petition Date for members of the Debtor's senior leadership team as were identified to the Required Consenting Creditors.

72.     "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

73.     "*Final DIP Order*" means the order approving the DIP Facility on a final basis, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

74.     "*Final Order*" means an order or judgment of the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no

appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined to be in effect by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order; provided, further, that the Debtors or the Reorganized Debtors, as applicable, reserve the right to waive any appeal period for an order or judgment to become a Final Order.

75.     "*General Unsecured Claim*" means any prepetition Claim against any Debtor that is not a: (a) DIP Facility Claim; (b) Administrative Expense Claim; (c) Priority Tax Claim; (d) Non-Tax Priority Claim; (e) Miscellaneous Secured Claim; (f) Prepetition First Lien Claim; (g) Continuing Operations Claim; (h) Claim under the Prepetition Revolver; or (i) Equity Interest.

76.     "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

77.     "*Guru*" means Guru Denim Inc., a Debtor in the Chapter 11 Cases.

78.     "*Holder*" means an Entity holding a Claim against, or Equity Interest in, any Debtor.

79.     "*Holdings*" means TRLG Intermediate Holdings, LLC, a Debtor in the Chapter 11 Cases.

80.     "*Impaired*" means not Unimpaired.

81.     "*Initial Distribution Date*" means the Effective Date, or a date as soon as reasonably practicable after the Effective Date with respect to any particular distribution, for effectuating the applicable distribution under this Plan to the relevant Holder(s) of an Allowed Claim(s) or Equity Interest(s).

82.     "*Intercompany Claims*" means any Claim or Cause of Action of a Debtor or Affiliate of a Debtor against any other Debtor or Affiliate of a Debtor, whether or not a Proof of Claim is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code in any of the Chapter 11 Cases.

83.     "*Intercompany Interest*" means an Equity Interest held by a Debtor in a Debtor or non-Debtor Affiliate.

84.     "*Interim DIP Order*" means the order entered by the Bankruptcy Court approving the DIP Facility on an interim basis, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

85.     "*Investor Director*" means a director, manager or managing member of any of the Debtors, Reorganized Debtors or their successors that is employed,

whether as (a) an employee or (b) as a consultant, outside professional or on another similar basis and that derives a majority of their total employment income on account of such employment), by a holder of New Common Shares or such holder's Affiliates; provided that an employer for purposes of this definition shall not include any of (i) Holdings, (ii) Reorganized Holdings, (iii) their direct or indirect subsidiaries or downstream Affiliates, (iv) any portfolio companies of such holder or such holder's Affiliates or (v) the successors of any Person or Entity identified in clauses (i) through (iv) hereof.

86. "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

87. "*Litigation Claims*" means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Entity, including, without limitation, the Causes of Action of the Debtors.

88. "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

89. "*Management Incentive Plan*" means a post-Effective Date management incentive plan, pursuant to which ten percent (10%) of the equity of Reorganized Holdings shall be reserved for the New Board to grant New Common Shares, or other interests in Reorganized Holdings to directors, officers and employees of the Reorganized Debtors other than Investor Directors, and which will have such other terms and conditions as determined by the New Board.

90. "*MIP Pool*" has the meaning ascribed to it in ARTICLE V.G.

91. "*Miscellaneous Secured Claim*" means any Secured Claim other than a DIP Facility Claim or Prepetition First Lien Claim.

92. "*New ABL Facility*" means a new asset based revolving credit facility to be provided to the Reorganized Debtors upon the Effective Date by the New ABL Lenders pursuant to the New ABL Facility Documents.

93. "*New ABL Facility Documents*" means the credit agreement governing the New ABL Facility and the related notes, guarantees, security documents, and intercreditor agreement, as the case may be, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time, which shall be Filed as an Exhibit with the Plan Supplement, and which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

94. "*New ABL Lenders*" means lenders party to the New ABL Facility Documents from time to time.

95. "*New Board*" means the initial and any successor board of directors of Reorganized Holdings as described in ARTICLE V.L hereto.

96.    "*New Common Shares*" means the newly issued common equity interests of Reorganized Holdings to be issued (i) on the Effective Date, (ii) upon implementation of the Management Incentive Plan, (iii) upon exercise of the New Warrants or (iv) as otherwise permitted pursuant to the Amended Organizational Documents of Reorganized Holdings.

97.    "*Non-Tax Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

98.    "*New Warrants*" means the Class A Warrants, Class B Warrants (if issued pursuant to the Plan), Class C Warrants (if issued pursuant to the Plan), and Class D Warrants (if issued pursuant to the Plan).

99.    "*Ordinary Course Professionals Order*" means any Final Order approving the motion to employ ordinary course professionals to be Filed on or after the Petition Date in the Chapter 11 Cases.

100.    "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

101.    "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

102.    "*Plan*" means this *Debtors' Joint Chapter 11 Plan of Reorganization*, including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time in accordance with the terms herein and the Restructuring Support Agreement, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

103.    "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Equity Interests under this Plan.

104.    "*Plan Documents*" means any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including, without limitation, the New ABL Facility Documents, the Reorganized First Lien Term Loan Documents, the solicitation materials in respect of the Plan, the Disclosure Statement, the Disclosure Statement Order, the motion seeking approval of the Disclosure Statement, and any other documents to be included in the Plan Supplement, each as may be amended, restated, amended and restated, waived, supplemented or otherwise modified consistent with the Restructuring Support Agreement, each of which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

105.    "*Plan Schedule*" means a schedule annexed to or made a part of either Plan Supplement or the Disclosure Statement (as amended, modified or otherwise supplemented from time to time).

106.     "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, (a) the Amended Organizational Documents, (b) the New Warrants and the Warrant Agreement, (c) the Reorganized First Lien Term Loan Documents, (d) the Schedule of Assumed Compensation and Benefit Programs, (e) the New ABL Facility Documents, (f) the Rejected Executory Contract / Unexpired Lease List, (g) a description of the Restructuring Transactions/Alternative Structures (if necessary) and (h) the identity of the members of the New Board and the nature of any compensation for any member of the New Board who is an "insider" under the Bankruptcy Code, which are incorporated by reference into, and are an integral part of, this Plan, as each of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be Filed with the Bankruptcy Court on or before five (5) Business Days prior to the Confirmation Hearing (unless otherwise ordered by the Bankruptcy Court without further notice). The documents that comprise the Plan Supplement shall be subject to any consent or approval rights provided hereunder, thereunder, or in the Restructuring Support Agreement, including as provided in the definitions of the relevant documents.

107.     "*Postpetition*" means the time period beginning immediately upon the filing of the Chapter 11 Cases and ending on the Effective Date.

108.     "*Prepetition First Lien Agent*" means Delaware Trust, in its capacity as successor administrative agent under the Prepetition First Lien Loan Agreement and as successor collateral agent under the "Credit Documents" as defined in the Prepetition First Lien Loan Agreement, and its successors and assigns.

109.     "*Prepetition First Lien Claim*" means any Claim arising under the Prepetition First Lien Loan Agreement and the documents ancillary thereto, which Claims shall be Allowed Claims under the Plan in the aggregate principal amount of $386,000,000, plus accrued and unpaid interest, fees, expenses and other obligations arising under the Prepetition First Lien Loan Agreement and the documents ancillary thereto.

110.     "*Prepetition First Lien Creditor*" means the Prepetition First Lien Agent and Prepetition First Lien Lenders.

111.     "*Prepetition First Lien Lender*" means a lender party to the Prepetition First Lien Loan Agreement.

112.     "*Prepetition First Lien Loan Agreement*" means the First Lien Credit Agreement dated July 30, 2013 by and among the Debtors, the Prepetition First Lien Agent, and the other lenders from time to time party thereto (as amended, restated, amended and restated, waived, supplemented, or as otherwise modified from time to time), together with the "Credit Documents" as defined therein.

113.     "*Prepetition First Lien Term Loans*" means the term loans issued pursuant to the Prepetition First Lien Loan Agreement.

114.     "*Prepetition Revolver*" means that certain ABL Credit Agreement, dated as of July 30, 2013, as amended, restated, amended and restated, waived, supplemented, or as otherwise modified heretofore and, together with its related agreements, to have been paid in full through the DIP Facility.

115.    *"Prepetition Revolver Agent"* means Deutsche Bank AG New York Branch as administrative agent and collateral agent under the Prepetition Revolver.

116.    *"Prepetition Revolver Lender"* means a lender party to the ABL Credit Agreement.

117.    *"Prepetition Second Lien Agent"* means Wilmington Trust, in its capacity as successor administrative agent under the Prepetition Second Lien Loan Agreement and as successor collateral agent under the "Credit Documents" as defined in the Prepetition Second Lien Loan Agreement, and its successors and assigns.

118.    *"Prepetition Second Lien Claim"* means any Claim arising under or relating to Prepetition Second Lien Loan Agreement and all agreements and instruments relating to the foregoing, which Claims shall be Allowed Claims under the Plan in the aggregate principal amount of $85,000,000, plus accrued and unpaid interest, fees, expenses and other obligations arising under the Prepetition Second Lien Loan Agreement and the documents ancillary thereto.

119.    *"Prepetition Second Lien Creditor"* means the Prepetition Second Lien Agent and Prepetition Second Lien Lenders.

120.    *"Prepetition Second Lien Lender"* means a lender party to the Prepetition Second Lien Loan Agreement from time to time.

121.    *"Prepetition Second Lien Loan Agreement"* means the Second Lien Credit Agreement dated July 30, 2013, by and among the Debtors, the Prepetition Second Lien Agent, and the other lenders from time to time party thereto (as amended, restated, amended and restated, waived, supplemented, or as otherwise modified from time to time), together with the "Credit Documents" as defined therein.

122.    *"Prepetition Second Lien Term Loans"* means the term loans issued pursuant to the Prepetition Second Lien Loan Agreement.

123.    *"Priority Tax Claim"* means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

124.    *"Pro Rata"* means, proportionately, so that the ratio of (i) (1) the amount of property to be waived, distributed or otherwise on account of such Claim to (2) the amount of such Claim, is the same as the ratio of (ii) (1) the amount of property to be waived, distributed or otherwise on account of all Claims of the Class, Classes or group sharing in such waiver, distribution or otherwise to (2) the amount of all Claims in such Class, Classes or group.

125.    *"Professional"* means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code; provided, however, that the term "Professional" shall not include any Entity retained pursuant to the Ordinary Course Professionals order or any of the Consenting Creditors' Professionals.

126.    *"Professional Fee Claim"* means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional

Compensation. For the avoidance of doubt, the Restructuring Expenses do not constitute Professional Fee Claims.

127. *"Proof of Claim"* means a proof of Claim or Equity Interest Filed against any Debtor in the Chapter 11 Cases.

128. *"Reinstated" and "Reinstatement"* mean, with respect to any Claim, (a) in accordance with section 1124 (1) of the Bankruptcy Code, leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or (b) in accordance with section 1124 (2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, "going dark" provisions, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be cured or reinstated in order to accomplish Reinstatement.

129. *"Rejected Executory Contract/Unexpired Lease List"* means the list, if any (as may be amended), as determined by the Debtors, with the consent of the Required Consenting Creditors (which consent shall not be unreasonably withheld), identifying Executory Contracts and/or Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, and which shall be Filed with the Plan Supplement.

130. *"Rejection Claim Bar Date"* has the meaning set forth in ARTICLE VI.C herein.

131. *"Related Persons"* means, with respect to any Person, such Person's predecessors, successors, assigns, managed accounts or funds, and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, shareholders, members (including *ex officio* members), partners, agents, managers, managing members, advisory board members, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, management companies, fund advisors, and other professionals, and any Person claiming by or through any of them, in each case acting in such capacity as such relates to the Debtors or the Reorganized Debtors and not as it relates to any other matter.

132.     *"Released Party"* means, in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) the Prepetition First Lien Creditors; (d) the Prepetition Second Lien Creditors; (e) Equity Parent; (f) TowerBrook, (g) the Prepetition Revolver Agent; (h) each Prepetition Revolver Lender; (i) each other party to the Restructuring Support Agreement in all capacities; (j) the DIP Agent; (k) each DIP Lender; and (l) each Related Person of any of (a) through (k) of the foregoing; provided that, notwithstanding the foregoing, a person is not a *"Released Party"* if such Person is an Excluded Party.

133.     *"Releasing Party"* means, in its capacity as such: (a) each Holder of a Claim that votes to accept this Plan; (b) each Holder of a Claim that is Unimpaired under this Plan; (c) each Holder of a Claim that is solicited to vote to accept or reject this Plan but that does not vote either to accept or reject the Plan; (d) each Holder of a Claim that votes to reject this Plan and does not elect on their ballot to opt out of granting the releases set forth in Article X.C ; (e) the Prepetition First Lien Creditors; (f) the Prepetition Second Lien Creditors; (g) Equity Parent; (h) TowerBrook; (i) the Prepetition Revolver Agent; (j) each Prepetition Revolver Lender; (k) the DIP Agent; (l) each DIP Lender; and (m) each Related Person of each of (a) through (l) of the foregoing.

134.     *"Reorganized Debtors"* means (i) Reorganized Holdings and (ii) each other Debtor, as reorganized pursuant to this Plan on or after the Effective Date, and/or each Entity created under the Alternative Structures as a successor to a Debtor.

135.     *"Reorganized First Lien Term Loans"* means new, collateralized term loans to be issued by Reorganized Holdings upon the Effective Date under the Reorganized First Lien Term Loan Facility.

136.     *"Reorganized First Lien Term Loan Facility"* means that certain new, collateralized term loan facility in the aggregate initial principal amount of up to $114.5 million (less the amount of any Class 5 Swapped Debt) to be entered into by True Religion as borrower and Reorganized Holdings, Guru, TR Sales, and TRLGGC as guarantors, as provided in the Reorganized First Lien Term Loan Documents.

137.     *"Reorganized First Lien Term Loan Documents"* means the credit agreement governing the Reorganized First Lien Term Loan Facility and the related notes, guarantees, security documents, and intercreditor agreement, as the case may be, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time, which shall be Filed as an Exhibit with the Plan Supplement, and which shall be consistent with the term sheet attached hereto as **Exhibit 1** and consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

138.     *"Reorganized Holdings"* means TRLG Intermediate Holdings, LLC, as reorganized pursuant to this Plan on or after the Effective Date.

139.     *"Required Consenting Creditors"* means Consenting Creditors that, collectively, at the time an applicable action, consent, approval or waiver is solicited, legally and beneficially hold, or serve as investment advisors or managers, with investment and voting discretion with respect to at least 50.1% of the aggregate principal amount of the Prepetition First Lien Claims beneficially held by Consenting Creditors.

140.     *"Restructuring"* means the financial restructuring of the Debtors, the principal terms of which are set forth in this Plan, the Disclosure Statement, the Plan Supplement, and the Restructuring Support Agreement.

141.    "*Restructuring Expenses*" means the documented and reasonable fees and expenses incurred by the Consenting Creditors and Equity Parent in connection with the Restructuring, including, without limitation, the reasonable fees and expenses of the Equity Parent's Professionals and of the Consenting Creditors' Professionals, which shall be paid in full in Cash without any further need or requirement to file any Proof of Claim or application seeking approval and payment of such fees and expenses, provided that such amount for the Equity Parent and Equity Parent's Professionals incurred after the Petition Date shall not exceed $100,000.

142.    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of July 4, 2017, by and among the Debtors, the Consenting Creditors and Equity Parent (including, without limitation, any and all schedules, annexes, or exhibits thereto, as amended, restated, amended and restated, modified, waived, or supplemented from time to time in accordance with its terms, attached to the Disclosure Statement as Exhibit B.

143.    "*Restructuring Transactions*" means one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including (a) the consummation of the transactions provided for under or contemplated by the Restructuring Support Agreement; (b) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of this Plan and the Restructuring Support Agreement and that satisfy the requirements of applicable law; (c) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan , the Plan Documents and the Restructuring Support Agreement; and (d) all other actions that the Debtors, with the consent of the Required Consenting Creditors, or Reorganized Debtors, as applicable, determine are necessary or appropriate and consistent with the Plan, the Plan Documents and the Restructuring Support Agreement.

144.    "*Schedule of Assumed Compensation and Benefit Programs*" means the schedule of all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its employees, retirees, and non-employee directors and the employees and retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans to be assumed by the Debtors, which schedule shall be in form and substance acceptable to the Required Consenting Creditors.

145.    "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto, including any global notes, statement of limitations, methodology and disclaimers incorporated by reference therein, Filed by the Debtors with the Bankruptcy Court (as may be amended, modified or supplemented from time to time) to the extent such Filing is not waived pursuant to an order of the Bankruptcy Court.

146.    "*SEC*" means the Securities and Exchange Commission, or any successor agency.

147.    "*Secured Claim*" means a Claim that is secured by a Lien on property in which any Debtor's Estate has an interest or that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim

Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

148. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

149. "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., as now in effect or hereafter amended, and the rules and regulations promulgated thereunder, and any similar federal, state or local law.

150. "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

151. "*Stamp or Similar Tax*" means any stamp tax, document recording tax, personal property tax, conveyance fee, intangibles or similar tax, mortgage tax, mortgage recording tax, real estate transfer tax, sales tax, use tax, Uniform Commercial Code filing or recording fee, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), regulatory filing or recording fee, and other similar taxes or other assessments imposed or assessed by any Governmental Unit.

152. "*Subsidiaries*" mean the Debtors other than TRLG Intermediate Holdings, LLC.

153. "*Subsidiary Structure Maintenance*" has the meaning as defined in ARTICLE V.P.

154. "*TI Holdings*" means TI III TRLG Holdings, LLC, a beneficial indirect owner of the Debtors.

155. "*TowerBrook*" means TowerBrook Investors III, L.P., TowerBrook Investors III (Parallel), L.P., TowerBrook Investors III Executive Fund, L.P., and TI Holdings, each of which is a beneficial owner of the Debtors, directly or indirectly.

156. "*Transfer*" means, with respect to any security or the right to receive a security or to participate in any offering of any security (and other than when used in an otherwise defined term), (i) the sale, transfer, pledge, hypothecation, encumbrance, assignment, constructive sale, participation in, or other disposition of such security or right or the beneficial ownership thereof, (ii) the offer to make such a sale, transfer, constructive sale, or other disposition, and (iii) each option, agreement, arrangement, or understanding, whether or not in writing and whether or not directly or indirectly, to effect any of the foregoing. The term "constructive sale" for purposes of this definition means (i) a short sale with respect to such security or right, (ii) entering into or acquiring an offsetting derivative contract with respect to such security or right, (iii) entering into or acquiring a futures or forward contract to deliver such security or right, or (iv) entering into any transaction that has substantially the same effect as any of the foregoing. The term "beneficially owned" or "beneficial ownership" as used in this definition shall include, with respect to any security or right, the beneficial ownership of such security or right by a Person and by any direct or indirect subsidiary of such Person.

157. *"True Religion"* means True Religion Apparel, Inc., a Debtor in the Chapter 11 Cases.

158. *"TRLGGC"* means TRLGGC Services, LLC, a Debtor in the Chapter 11 Cases.

159. *"TR Sales"* means True Religion Sales, LLC, a Debtor in the Chapter 11 Cases.

160. *"Unexpired Lease"* means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

161. *"Unimpaired"* means, when used with reference to a Claim, subclass or Class, the circumstance where such Claim, subclass or Class is treated in a manner comporting with the requirements of Bankruptcy Code section 1124, providing, with certain exceptions, that the treatment has left unaltered the legal, equitable, and contractual rights to which a particular Claim (or all of the Claims in a Class) entitles the Holder of such Claim(s). In accordance with, by example, Bankruptcy Code sections 365 or 1123(a)(5)(G), unless expressly specified otherwise, such treatment includes the waiver or curing of defaults and the reinstatement of maturity of such Claim, without payment of penalties or other default-related amounts.

162. *"Voting Classes"* means Class 3, Class 5 and Class 6 under this Plan.

163. *"Warrant Agreement"* means one or more agreements setting forth the terms and conditions of the New Warrants, in each case, to be Filed as an Exhibit with the Plan Supplement, each of which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE CLAIMS,
## DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS

A. **Administrative Expense Claims**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim, subject to the following ARTICLE II.B and ARTICLE II.C, will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; provided, however, that Administrative Expense Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtors or Reorganized Debtors in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court; provided, further, however, that other than Holders of (i) DIP Facility Claims, (ii) Professional Fee Claims, (iii) Administrative Expense Claims Allowed by an order of the Bankruptcy Court on or before the Effective Date, or (iv) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid or are to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Expense Claim, the Holder of any Administrative Expense Claim shall have filed a Proof of Claim by no later than the

Administrative Claims Bar Date. After the Effective Date, the Reorganized Debtors may settle an Administrative Expense Claim without further Bankruptcy Court approval. In the event that the Reorganized Debtors object to an Administrative Expense Claim and there is no settlement, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim. All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

**B.     Professional Fee Claims**

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within sixty (60) days after the Effective Date, and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim; provided that the Reorganized Debtors will pay Professionals in the ordinary course of business, for any work performed after the Effective Date, including those reasonable and documented fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash; provided, further, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party by the later of (a) ninety (90) days after the Effective Date and (b) thirty (30) days after the Filing of the applicable request for payment of the Professional Fee Claim. Each Holder of an Allowed Professional Fee Claim will be paid by the Reorganized Debtors in Cash within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim.

Upon the Confirmation Date, except as otherwise set forth herein with respect to Professional Fee Claims, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors shall employ and pay Professionals (including the reasonable and documented fees and expenses incurred by Professionals in preparing, reviewing and prosecuting or addressing any issues with respect to final fee applications) in the ordinary course of business. Professionals retained by the Committee may only be paid for services rendered after the Confirmation Date if such services are permitted pursuant to ARTICLE XIII.A of this Plan.

For the avoidance of doubt, the Restructuring Expenses incurred, or estimated to be incurred, through the Effective Date shall be paid in full in Cash without the requirement to file retention or fee applications and without any requirement for notice to or action, order or approval of the Bankruptcy Court.

**C.     DIP Facility Claims**

Unless otherwise agreed to by the DIP Lenders, on the Effective Date, in full satisfaction, settlement, discharge and release of, and in exchange for, such DIP Facility Claims, all DIP Facility Claims will be indefeasibly paid and satisfied in full in Cash with proceeds from the New ABL Facility or deemed outstanding under the New ABL Facility to the extent a DIP Lender is also a New ABL Facility Lender. Except as otherwise expressly provided in the DIP Facility, upon indefeasible payment and satisfaction in full of all DIP Facility Claims, the DIP

Facility Loan Documents and all related loan documents, and all Liens and security interests granted to secure the DIP Facility Claims, will be immediately terminated, extinguished and released, and the DIP Agent will promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors to effectuate the foregoing. Notwithstanding the foregoing, the DIP Facility Loan Documents shall continue in effect solely for the purpose of preserving the DIP Agent's and the DIP Lenders' right to any contingent or indemnification obligations of the Debtors pursuant and subject to the terms of the DIP Facility Loan Documents or DIP Orders.

### D.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement release and discharge of each Allowed Priority Tax Claim, on the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors, with the consent of the Required Consenting Creditors, or Reorganized Debtors:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by such Holder and the Debtors or Reorganized Debtors, as applicable, with the consent of the Required Consenting Creditors; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtors, with the consent of the Required Consenting Creditors, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; provided, however, that the Debtors, with the consent of the Required Consenting Creditors, or Reorganized Debtors, as applicable, may prepay any or all such Claims at any time, without premium or penalty.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

### A.    Summary

All Claims and Equity Interests, except Administrative Expense Claims (including DIP Facility Claims and Professional Fee Claims) and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.  Additionally, for

voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Miscellaneous Secured Claim shall be deemed to be in its own subclass.

### Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Non-Tax Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Miscellaneous Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition First Lien Claims | Impaired | Entitled to Vote |
| 4 | Continuing Operations Claims | Unimpaired | Deemed to Accept |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Equity Interests in Holdings | Impaired | Entitled to Vote |
| 7 | Intercompany Interests | Unimpaired | Deemed to Accept |

**B.** **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed, or Claims or Equity Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018(a), in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

## C.    Classification and Treatment of Claims and Equity Interests

### 1.    Class 1 – Non-Tax Priority Claims

**a.**  Classification: Class 1 consists of the Non-Tax Priority Claims.

**b.**  Treatment: Each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 1 Claim:

    **(1)**  Cash equal to the amount of such Allowed Class 1 Claim on the later of, or, in each case, as soon as reasonably practicable thereafter, (x) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date, (y) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim or (z) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 1 Claim; or

    **(2)**  At the election of the Debtors, in consultation with the Required Consenting Creditors, such other less favorable treatment as to which the Holder of such Allowed Class 1 Claim and the Debtors or Reorganized Debtors, as applicable, agree in writing.

**c.**  Impairment and Voting: Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan and may not receive Ballots.

### 2.    Class 2 – Miscellaneous Secured Claims

**a.**  Classification: Class 2 consists of the Miscellaneous Secured Claims.

**b.**  Treatment: Each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 2 Claim:

    **(1)**  Cash equal to the amount of such Allowed Class 2 Claim on the later of, or, in each case, as soon as reasonably practicable thereafter, (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim on the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim; or

    **(2)**  At the election of the Debtors, with the consent of the Required Consenting Creditors or Reorganized Debtors, as applicable, , either: (x) Reinstatement (with the Holder, as applicable, retaining the Liens securing its Allowed Miscellaneous Secured Claim as of the Effective Date until

full and final payment thereof); (y) return of the Collateral securing such Allowed Class 2 Claim by the Initial Distribution Date; or (z) such other less favorable treatment as to which the Holder of such Allowed Class 2 Claim and the Debtors or Reorganized Debtors, as applicable, will have agreed upon in writing.

c.   Impairment and Voting:  Class 2 is Unimpaired, and the Holders of such Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan and may not receive Ballots.

3.   **Class 3 – Prepetition First Lien Claims**

a.   Classification:  Class 3 consists of the Prepetition First Lien Claims.

b.   Allowance:  Notwithstanding any provisions of the Plan to the contrary the Prepetition First Lien Claims will be deemed Allowed Claims in the aggregate amount of $386,000,000, plus accrued and unpaid interest, fees and expenses.

c.   Treatment:  On the Effective Date each Holder of an Allowed Prepetition First Lien Claim will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Prepetition First Lien Claim, its Pro Rata share of:

(1)   Reorganized First Lien Term Loans in the aggregate principal amount of $110 million under the Reorganized First Lien Term Loan Facility; and

(2)   (i) if each of Class 3, Class 5 and Class 6 vote to accept the Plan, the number of Exchange Common Shares equal to 90.0% of the maximum number of Exchange Common Shares distributable under the Plan (prior to taking into account any exercise of the Class 5 Equity Cash Out Option, if applicable).  To the extent any Holder of an Allowed General Unsecured Claim exercises the Class 5 Equity Cash Out Option, the percentage of New Common Shares received by Holders of Allowed Class 3 and Class 6 Claims will automatically adjust on a Pro Rata basis to reflect such exercise without the need to issue any additional New Common Shares; or (ii) if either of Class 5 or Class 6 votes to reject the Plan, the number of Exchange Common Shares equal to 94.5% of the Exchange Common Shares.

d.   Impairment and Voting:  Class 3 is Impaired, and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan and will receive Ballots.

4.   **Class 4 – Continuing Operations Claims**

a.    <u>Classification</u>: Class 4 consists of the Continuing Operations Claims.

b.    <u>Treatment</u>: Each Holder of Allowed Continuing Operations Claims will receive in full satisfaction, settlement, discharge and release of, and partially in exchange for, its Allowed Continuing Operations Claim:

     **(1)**    Cash or such other consideration due under the applicable Allowed Class 4 Claim equal to the amount of such Allowed Class 4 Claim payable on the later of, or, in each case, as soon as reasonably practicable thereafter, (x) the Initial Distribution Date if such Class 4 Claim is an Allowed Class 4 Claim on the Effective Date, (y) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, or (z) the date such treatment is due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 4 Claim;

     **(2)**    Reinstatement or such other treatment rendering such Claim Unimpaired; or

     **(3)**    Such other less favorable treatment as to which the Debtors, with the consent of the Required Consenting Creditors (which consent may be obtained by the Debtors by providing reasonable negative notice of their determinations or the principles they will apply in making them), or Reorganized Debtors and the Holder of such Allowed Class 4 Claim will have agreed upon in writing.

c.    <u>Impairment and Voting</u>: Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Thus, Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan and will not receive Ballots.

## 5.    Class 5 – General Unsecured Claims

a.    <u>Classification</u>: Class 5 consists of the General Unsecured Claims.

b.    <u>Allowance of Prepetition Second Lien Claims</u>. Notwithstanding any provisions of the Plan to the contrary the Prepetition Second Lien Claims will be deemed Allowed General Unsecured Claims in the aggregate amount $85,000,000, plus accrued and unpaid interest, fees and expenses.

**c.**   Treatment:  By the later of (x) fourteen (14) days after the Rejection Claim Bar Date and (y) the date from or after the Effective Date on which such General Unsecured Claim first is an Allowed General Unsecured Claim, or, in each case, as soon as reasonably practicable thereafter, each Holder of an Allowed General Unsecured Claim will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed General Unsecured Claim its Pro Rata share of the Class 5 Default Consideration, consisting of:

**(1)**   Reorganized First Lien Term Loans in the aggregate principal amount of $2.5 million under the Reorganized First Lien Term Loan Facility;

**(2)**   the number of Exchange Common Shares equal to 5.5% of the maximum number of Exchange Common Shares distributable under the Plan; and

**(3)**   Class A Warrants.

**d.**   *Only if Class 5 votes to accept the Plan,* by the later of (x) fourteen (14) days after the Rejection Claim Bar Date and (y) the date from or after the Effective Date on which such General Unsecured Claim first is an Allowed General Unsecured Claim, or, in each case, as soon as reasonably practicable thereafter, *each Holder* of an Allowed General Unsecured Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed General Unsecured Claims, *also will receive the Class 5 Consensual Plan Consideration*, consisting of:

**(1)**   its Pro Rata share of $1,000,000 in Cash;

**(2)**   its Pro Rata share of additional Reorganized First Lien Term Loans in the aggregate principal amount of $2.0 million under the Reorganized First Lien Term Loan Facility; *provided, however*, if any Holder of an Allowed General Unsecured Claim is a Class 5 Electing Holder, such Holder will receive the Class 5 Warrants for Debt Treatment with respect to its Class 5 Swapped Debt; and

**(3)**   the Class 5 Equity Cash Out Option.

**e.**   Impairment and Voting:  Class 5 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan and will receive Ballots.

**6.**   **Class 6 – Equity Interests in Holdings**

**a.**   Classification:  Class 6 consists of the Equity Interests in Holdings.

**b.**   Treatment: On the Effective Date, and solely to the extent that each of Class 3, Class 5 and Class 6 vote to accept the Plan, each Holder of an Equity Interest in Holdings will receive, in full satisfaction,

settlement, discharge and release of, and in exchange for, such Equity Interest in Holdings, its Pro Rata share of:

    **(1)**    The number of Exchange Common Shares equal to 4.5% of the maximum number of Exchange Common Shares distributable under the Plan (prior to taking into account any exercise of the Class 5 Equity Cash Out Option, if applicable). To the extent any Holder of an Allowed General Unsecured Claim exercises the Class 5 Equity Cash Out Option, the percentage of New Common Shares received by Holders of Allowed Class 3 and Class 6 Claims will automatically adjust on a Pro Rata basis to reflect such exercise without the need to issue any additional New Common Shares;

    **(2)**    Class B Warrants; and

    **(3)**    Class C Warrants.

If any of Class 3, Class 5 or Class 6 votes to reject the Plan, Holders of Equity Interests in Holdings shall receive no recovery, and (x) the above-referenced 4.5% of the Exchange Common Shares shall be distributed Pro Rata to the Holders of Class 3 Prepetition First Lien Claims, as set forth in ARTICLE III.C.3 hereof and (y) the Class B Warrants and Class C Warrants shall not be issued.

    **c.**    <u>Impairment and Voting</u>: Class 6 is Impaired, and Holders of Equity Interests in Holdings are entitled to vote to accept or reject the Plan and will receive Ballots.

    **7.**    **Class 7 – Intercompany Interests**

    **a.**    <u>Classification</u>: Class 7 consists of the Intercompany Interests.

    **b.**    <u>Treatment</u>: Each Allowed Intercompany Interest shall be Reinstated for purposes of the Subsidiary Structure Maintenance.

    **c.**    <u>Impairment and Voting</u>: Class 7 is Unimpaired, and Holders of Intercompany Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Thus, the Holders of the Intercompany Interests are not entitled to vote to accept or reject the Plan and will not receive Ballots.

**D.**    <u>**Special Provision Governing Claims Related to Assumed Executory Contracts or Unexpired Leases and Unimpaired Claims**</u>

Obligations with respect to assumed Executory Contracts and Unexpired Leases are separately addressed in ARTICLE VI. Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtors' rights in respect of any Unimpaired Claims, cure obligations as to any arrears or defaults that may exist with respect to contracts to be assumed under the Plan, or the performance of assumed obligations under such Executory Contracts or Unexpired Leases,

including, without limitation, all rights in respect of legal and equitable defenses thereto, or setoffs or recoupments there against.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

**A.     Presumed Acceptance of Plan**

Class 1, Class 2, Class 4 and Class 7 are Unimpaired under the Plan, and, therefore, are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Claims in Class 1, Class 2, Class 4, and Class 7 are not entitled to vote to accept or reject the Plan and will not receive Ballots.

**B.     Voting Classes**

Each Holder of an Allowed Claim or Allowed Equity Interest in Holdings as of the applicable voting record date in the Voting Classes (Class 3, Class 5 and Class 6) will be entitled to vote to accept or reject the Plan and will receive ballots containing detailed voting instructions.

**C.     Acceptance by Impaired Classes of Claims and Equity Interests**

Except as otherwise provided in section 1126(e) of the Bankruptcy Code, (i) pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if (x) the Holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (y) the Holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) pursuant to section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests has accepted the Plan if Holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

**D.     Cramdown; Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

If any Class of Claims or Equity Interests is deemed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Debtors may, subject to any consent that may be required herein or under the Restructuring Support Agreement, (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan, or any Exhibit, Plan Schedule or Plan Document, in accordance with the terms hereof and the Bankruptcy Code, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary. If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**E.     Continuing Susceptibility to Claim Objection; Solicitation in Good Faith**

The Debtors have, and upon the Effective Date the Reorganized Debtors shall be deemed to have, solicited votes on the Plan from the Voting Classes in good faith and in compliance with the applicable provisions of the Bankruptcy Code. Accordingly, the Debtors and the Reorganized Debtors and each of their respective Related Persons shall be entitled to, and upon the Confirmation Date are hereby granted, the protections of section 1125(e) of the Bankruptcy Code.

Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date, no Claim or Equity Interest will become an Allowed Claim or Allowed Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order in the Chapter 11 Cases allowing such Claim or Equity Interest. Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim, except with respect to any Claim Allowed by order of the Bankruptcy Court.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    General Settlement of Claims

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith and integrated compromise and global settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

### B.    Corporate Existence

The Debtors all will continue to exist after the Effective Date as separate legal entities, with all of the powers of corporations, limited liability companies, memberships and partnerships pursuant to the applicable law in their states of incorporation or organization subject to the terms of, and except as otherwise provided in or by, the Plan and the Alternative Structures. The respective limited liability company agreements, articles or certificate of incorporation and by-laws (or other applicable formation documents) in effect prior to the Effective Date for each Debtor shall continue to be in effect after the Effective Date, except (i) with respect to Reorganized Holdings, as to which there shall be amended and restated limited liability company agreement or other applicable organizational documents as set forth in the Amended Organization Documents Filed as an Exhibit with the Plan Supplement without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date and (ii) as any other Debtor's limited liability company agreements, articles or certificate of incorporation or by-laws (or other formation documents) may be amended or amended and restated pursuant to this Plan without any further notice to or action, order, or approval of the Bankruptcy Court or any other court of competent jurisdiction (other than the requisite filings required under applicable state, provincial, or federal law).

On or after the Confirmation Date or as soon thereafter as is reasonably practicable, the Debtors or Reorganized Debtors, as applicable, may undertake the Restructuring Transactions and, to the extent determined necessary or appropriate by the Debtors, with the consent of the Required Consenting Creditors, or the Reorganized Debtors, as applicable or their successors, may take all other actions to effect any transaction described in, approved by, or necessary or appropriate to effectuate this Plan and that is consistent with the Restructuring Support Agreement, including, without limitation: (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, name change, Chapter 11 Case closing, plans of reorganization, transfer or extinguishment of Intercompany Interests among the Reorganized Debtors or other successors to, or Affiliates of, the Debtors, or liquidation, containing terms that are consistent with the terms of this Plan and the Plan Documents and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree (the "*Alternative Structures*"); (ii) the

execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of formation or incorporation and amendments thereto, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law; (iv) the Restructuring Transactions; and (v) all other actions that the applicable entities determine to be necessary or appropriate, including, without limitation, making filings or recordings that may be required by applicable law in connection with such transactions.

## C.    <u>Vesting of Assets in the Reorganized Debtors</u>

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date, all property and Assets of the Estates (including, without limitation, Causes of Action, Litigation Claims, and, unless otherwise waived or released pursuant to an order of the Bankruptcy Court or the Plan, Avoidance Actions) and any property and Assets acquired by the Debtors pursuant to the Plan will vest in the Reorganized Debtors or their successor, including under the Alternative Structures, free and clear of all Liens, Claims, charges or other encumbrances.  Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors or their successors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors will pay the charges that they incur after the Effective Date for reasonable and documented Professionals' fees, disbursements, expenses or related support services (including reasonable and documented fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

## D.    <u>New ABL Facility</u>

The Debtors shall enter into the New ABL Facility on or before the Effective Date.  The DIP Facility Loan Documents may be amended, amended and restated, replaced or otherwise modified to become the New ABL Facility consistent with, and subject to the approvals and consents as to form and substance set forth in the Restructuring Support Agreement.  The Confirmation Order shall be deemed approval of the New ABL Facility and the New ABL Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all reasonable and documented fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the New ABL Facility Documents and such other documents as may be required to effectuate the treatment afforded by the New ABL Facility.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the New ABL Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New ABL Facility Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New ABL Facility Documents and the Reorganized First Lien Term Loan Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

The New ABL Facility shall provide, as of the Effective Date, sufficient funding or deemed funding, together with the Debtors' Cash on hand, to satisfy any DIP Facility Claims and obligations to pay Cash on the Effective Date of the Plan in full.

## E.    Reorganized First Lien Term Loan Facility

As provided in the Plan's treatment of certain Allowed Claims, on the Effective Date, Reorganized Holdings shall issue to certain Holders of Allowed Claims in partial exchange for their Allowed Claims, the Reorganized First Lien Term Loans under the Reorganized First Lien Term Loan Facility. The Reorganized First Lien Term Loan Facility shall be governed by the Reorganized First Lien Term Loan Documents, which shall be consistent with, and subject to the approvals and consents as to form and substance set forth in the Restructuring Support Agreement. The obligations of the Reorganized Debtors under the Reorganized First Lien Term Loan Facility shall be secured by substantially all of their assets, whether now existing or hereinafter acquired, subject to certain exceptions. Such security interests and Liens shall be perfected and have a first priority, other than as to certain of the collateral for the New ABL Facility, as to which the security interests and Liens shall have a second priority.

## F.    Authorized Financing

On the Effective Date, the applicable Reorganized Debtors shall be and are authorized to execute and deliver the New ABL Facility Documents, the Reorganized First Lien Term Loan Documents and any related loan documents, and shall be and are authorized to execute, deliver, file, record and issue any other notes, guarantees, deeds of trust, security agreements, documents (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity, subject to any lien limitations set forth herein.

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be obtained from the New ABL Facility and the Reorganized Debtors' Cash balances, including Cash from operations. Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors.

## G.    Management Incentive Plan

On the Effective Date, 10% of the New Common Shares on a fully diluted basis shall be reserved for issuance as grants of stock, warrants, options, or other Equity Securities in connection with the Reorganized Debtors' Management Incentive Plan (such reserve, the "MIP Pool"), and issuances of the New Common Shares in respect thereof will dilute the Exchange Common Shares issued on the Effective Date. The remaining terms of the Management Incentive Plan shall be determined by the New Board.

## H.    Issuance of Reorganized First Lien Term Loans, New Common Shares, New Warrants and Related Documentation

From and after the Effective Date, Reorganized Holdings will be authorized to and will issue the Reorganized First Lien Term Loans, New Common Shares and New Warrants to the Holders of Claims and Equity Interests, as applicable, as set forth in this Plan without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. On the Effective Date one-hundred percent (100%) of the Exchange Common Shares are to be distributed (or issuable under

the Amended Organizational Documents), as provided in the Plan, to Holders of Allowed Prepetition First Lien Claims and, if applicable, to Holders of Allowed General Unsecured Claims, to Holders of Allowed Equity Interests in Holdings, and on account of the Class 5 Reserve. The issuance of New Common Shares by Reorganized Holdings is authorized without the need for any further corporate action or without any further action by the Debtors or the Reorganized Debtors, as applicable. All of the shares of New Common Shares issued pursuant to the Plan shall be duly authorized and validly issued.

On the Effective Date, Reorganized Holdings and all the Holders of the Exchange Common Shares and New Warrants shall be deemed to be parties to the Amended Organizational Documents, substantially in the form contained in the Plan Supplement, without the need for execution by any such Holder. The Amended Organizational Documents shall be binding on Reorganized Holdings and all parties receiving, and all holders of, New Common Shares and New Warrants; provided, that regardless of whether such parties execute the Amended Organizational Documents, such parties will be deemed to have signed the Amended Organizational Documents which shall be binding on such parties as if they had actually signed it.

As of the Petition Date, no class of Equity Securities of Holdings was registered under the Securities Exchange Act, and Holdings was not subject to any of the periodic reporting obligations of such Act. Except as otherwise provided under the Amended Organizational Documents, in each case consistent with the Restructuring Support Agreement, or unless otherwise determined by the New Board in accordance with applicable non-bankruptcy law, it is not intended that, from or after the Effective Date, Reorganized Holdings will have any class of its Equity Securities registered under or become subject to any of the periodic reporting obligations of such Act.

To the extent that any such instruments constitute "securities" under applicable securities laws, the offer and sale of Reorganized First Lien Term Loans, Exchange Common Shares, and New Warrants pursuant to the Plan, including any shares of New Common Shares issuable after the Effective Date thereof upon exercise of the New Warrants, shall be effected without registration under Section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon the exemption from such registration requirements afforded by section 1145 of the Bankruptcy Code.

The offer and sale of Equity Securities to officers and other key employees of the Reorganized Debtors pursuant to the Management Incentive Plan shall be effected without registration under Section 5 of the Securities Act, and without registration under any applicable state securities or "blue sky" law, in reliance upon available exemptions from such registration requirements afforded by section 4(a)(2) of the Securities Act and Rule 506 of Regulation D and/or Rule 701 promulgated thereunder.

The New Common Shares of Reorganized Holdings shall constitute a single class of Equity Security in Reorganized Holdings and, other than as contemplated through the New Warrants or under the Management Incentive Plan, there shall exist no other Equity Securities, warrants, options, or other agreements to acquire any equity interest in Reorganized Holdings. From and after the Effective Date, after giving effect to the transactions contemplated hereby, the authorized capital stock or other equity securities of Reorganized Holdings will be that number of shares of New Common Shares as may be designated in the Amended Organizational Documents.

I. **Substantive Consolidation for Plan Purposes**

The Plan serves as a motion by the Debtors seeking entry, pursuant to section 105 of the Bankruptcy Code, of an order authorizing, on the Effective Date, the substantive consolidation of the Estates of all of the Debtors for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes only. Substantive consolidation will not (i) alter the state of incorporation of any Debtor for purposes of determining applicable law of any of the Causes of Action, Litigation Claim or Avoidance Action (ii) alter or impair the legal and equitable rights of the Debtors to enforce any of the Causes of Action, Litigation Claims or Avoidance Actions or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action, Litigation Claims or Avoidance Actions, or issues raised as a part of any thereof.

If substantive consolidation is ordered, then on and after the Effective Date, all Assets and liabilities of the Debtors shall be treated as though they were merged into a single estate solely for purposes of treatment of and distributions on Claims. All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date.

J. **Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

K. **Amended Organizational Documents**

The Amended Organizational Documents shall amend, amend and restate or succeed the limited liability company agreements, certificates or articles of incorporation, by-laws and other organizational documents of Holdings to satisfy the provisions of the Plan and the Bankruptcy Code, and will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of New Common Shares in an amount not less than the amount necessary to permit the distributions thereof required or contemplated by the Plan; (iii) to the extent necessary or appropriate as determined by the Required Consenting Creditors, include restrictions on the Transfer of New Common Shares; (iv) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein; and (v) be in form and substance acceptable to the Required Consenting Creditors in their sole discretion. After the Effective Date, the Reorganized Debtors may amend and restate their

limited liability company agreements, certificates or articles of incorporation and by-laws, and other applicable organizational documents, as permitted by applicable law and their respective charters, by-laws and other organizational documents.

**L.**     **Directors and Officers of Reorganized Holdings**

The New Board will be comprised initially of seven directors, who will consist of: (i) the Chief Executive Officer of Reorganized Holdings, (ii) a director selected by TI Holdings (with an initial term of one year, after which the members of the New Board will be appointed as provided in the Amended Organizational Documents), and (iii) five directors selected by the Consenting Creditors, in consultation with the Chief Executive Officer. Any directors designated pursuant to this section will be subject to approval of the Bankruptcy Court pursuant to section 1129(a)(5) of the Bankruptcy Code.

In addition, TI Holdings, and each Person or Entity that holds more than 5% of the New Common Shares on a fully diluted basis as of the time of a meeting of the New Board as of the time of distribution of materials to the New Board in connection with such a meeting, as applicable, shall have the right to be represented by one non-voting observer at each such meeting of the New Board and receive all materials distributed to the New Board, subject to customary exceptions; <u>provided</u> that for this purpose, New Board meetings shall not include committee meetings.

As of the Effective Date, the initial officers of the Reorganized Debtors will be the officers of the Debtors existing immediately prior to the Effective Date. Except as set forth in the Plan, any other directors or officers of the Debtors shall be deemed removed as of the Effective Date.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, in a Plan Supplement or on the record at the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the initial board of directors or as an officer of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a director or officer, the nature of any compensation for such Person. Each such director and each officer will serve from and after the Effective Date pursuant to applicable law and the terms of the Amended Organizational Documents and the other constituent and organizational documents of the Reorganized Debtors. The existing board of directors of Holdings will be deemed to have resigned on and as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

**M.**     **Corporate Action**

Each of the Debtors and the Reorganized Debtors, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan or to effectuate the Alternative Structures, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors, and, in each case, except as expressly required pursuant to the Plan or the Restructuring Support Agreement, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the Reorganized Debtors, as applicable, or by any other Person.

Other actions necessary to effect the Alternative Structures may include: (i) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Debtors or Reorganized Debtors may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance or dissolution pursuant to applicable state or provincial law; and (iv) all other actions that the applicable Debtors or Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Alternative Structures. If and to the extent necessary, any controlling organization or formation documents or agreements for the Reorganized Debtors shall be deemed amended to authorize the foregoing.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, managers or members of any Debtor (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, managers or members of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person (except as expressly required pursuant to the Restructuring Support Agreement).

All matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtor, as applicable, and any legal or corporate action required by any Debtor or any Reorganized Debtor as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of any Debtor or any Reorganized Debtor, as applicable, or by any other Person (except as expressly required pursuant to the Restructuring Support Agreement). On the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtor, as applicable, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor and each Reorganized Debtor, as applicable, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person (except as expressly required pursuant to the Restructuring Support Agreement). The secretary and any assistant secretary or managing member of each Debtor and each Reorganized Debtor, as applicable, will be authorized to certify or attest to any of the foregoing actions.

## N.    Cancellation of Notes, Certificates and Instruments

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest in Holdings and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect, including any relating to the Equity Interests in Holdings. The holders of or parties to

such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. Notwithstanding such cancellation and discharge, each of the Prepetition First Lien Loan Agreement and the Prepetition Second Lien Loan Agreement shall continue in effect to the extent necessary to: (1) allow Holders of Claims and Equity Interests to receive Plan Distributions; (2) allow the Reorganized Debtors to make distributions pursuant to the Plan; (3) allow the Prepetition First Lien Agent and Prepetition Second Lien Agent to receive distributions under the Plan on account of the Prepetition First Lien Claims and Prepetition Second Lien Claims, respectively, for further distribution in accordance with the Prepetition First Lien Loan Agreement and Prepetition Second Lien Loan Agreement, respectively; (4) allow the Prepetition First Lien Agent and the Prepetition Second Lien Agent to seek compensation and/or reimbursement of fees and expenses in accordance with the Plan; and (5) preserve any rights of the Prepetition First Lien Agent and the Prepetition Second Lien Agent to payment of fees, expenses, and indemnification obligations as against any parties other than the Debtors or the Reorganized Debtors, and any money or property distributable to the beneficial holders under the relevant instrument, including any rights to priority of payment or to exercise charging liens. Except as provided pursuant to this Plan, each of the Prepetition First Lien Agent and the Prepetition Second Lien Agent, and their respective agents, successors, and assigns shall be discharged of all of their obligations associated with the Prepetition First Lien Loan Agreement and the Prepetition Second Lien Loan Agreement, respectively. The commitments and obligations (if any) of the Prepetition First Lien Lenders and Prepetition Second Lien Lenders to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries or any of their respective successors or assigns under the Prepetition First Lien Loan Agreement and Prepetition Second Lien Loan Agreement, respectively, shall fully terminate and be of no further force or effect on the Effective Date.

**O.**     **Cancellation of Existing Instruments Governing Security Interests**

        Upon the full payment or other satisfaction of an Allowed Miscellaneous Secured Claim, or promptly thereafter, the Holder of such Allowed Miscellaneous Secured Claim shall deliver to the Debtors or Reorganized Debtors, as applicable, any Collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Miscellaneous Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

        On the Effective Date, any Lien in Collateral of any Debtor or Reorganized Debtor, as applicable, held for the DIP Facility Claims, the Prepetition First Lien Claims and the Prepetition Second Lien Claims shall be cancelled and of no further force or effect. Notwithstanding any other provision hereof, as a condition of any distribution for the benefit of Holders of DIP Facility Claims, Prepetition First Lien Claims and Prepetition Second Lien Claims, the respective collateral agents therefore shall deliver to the Debtors or Reorganized Debtors, as applicable, any Collateral or other property of a Debtor or Reorganized Debtor, as applicable, held for DIP Facility Claims, Prepetition First Lien Claims and Prepetition Second Lien Claims, together with any termination statements, instruments of satisfaction, or releases of all Liens that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

**P.  Intercompany Claims; Intercompany Interests; Corporate Reorganization**

On the Effective Date, or as soon thereafter as is practicable, without the need for any further corporate action or approval of any board of directors, management, or shareholders of any Debtor or Reorganized Debtor, as applicable, and notwithstanding the provisions of the Plan in ARTICLE II and ARTICLE III (a) the certificates and all other documents representing the Intercompany Interests shall be deemed to be in full force and effect (and shall be retained by the Holders thereof prior to the Effective Date), and (b) all Intercompany Claims and Intercompany Interests will be reinstated in full or in part (collectively, the "*Subsidiary Structure Maintenance*") except, to the extent that the Debtors, Reorganized Debtors, their Affiliates or their successors, as applicable, as they determine necessary or appropriate with the consent of the Required Consenting Creditors, may effectuate Alternative Structures, which may include, without limitation, merger or dissolution of certain Debtors or Reorganized Debtors and the cancellation of certain Intercompany Interests, the transfer of Intercompany Interests among Reorganized Debtors, their successors or their Affiliates, or cancellation or discharge in full or in part of, or contribution, distribution or other transfer between and among the Debtors or their Affiliates in full or in part of Intercompany Claims.

**Q.  Restructuring Transactions**

On or after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, may undertake the Restructuring Transactions and take all other actions consistent with this Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with this Plan, including effectuation of the Alternative Structures.

In each case in which the surviving, resulting, or acquiring Entity in any such transaction is a successor to a Debtor, such surviving, resulting, or acquiring Entity shall perform the obligations of such Debtor pursuant to the Plan to satisfy the Allowed Claims against, or Allowed Interests in, such Debtor, except as provided in any contract, instrument, or other agreement or document effecting a disposition to such surviving, resulting, or acquiring Entity, which may provide that another Debtor shall perform such obligations.

**R.  Restructuring Expenses**

On the Effective Date, to the extent not previously paid pursuant to the DIP Orders, the Debtors or the Reorganized Debtors, as applicable, shall pay in full in Cash all outstanding Restructuring Expenses incurred, or estimated to be incurred, through the Effective Date, in accordance with the terms of the applicable orders (including the DIP Orders), engagement letters, or other applicable contractual arrangements, but without regard to any notice or objection period as may be contained in such applicable orders, engagement letters, or other applicable contractual arrangements, subject to adjustment, if necessary, for the actual Restructuring Expenses incurred.

**S.  Agent Fee Claims**

On the Effective Date, to the extent not paid pursuant to the DIP Orders, the Debtors or Reorganized Debtors, as the case may be, shall pay in Cash, without the need for the filing of any fee or retention applications in the Chapter 11 Cases, the reasonable and documented fees and expenses (including fees of counsel) of the Prepetition First Lien Agent and the Prepetition Second Lien Agent.

# ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.  Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed assumed by the applicable Reorganized Debtor in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts (including, without limitation, employment agreements) and Unexpired Leases that:

- have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

- have been rejected by order of the Bankruptcy Court;

- are the subject of a motion to reject pending on the Effective Date;

- are identified in the Rejected Executory Contract/Unexpired Lease List; or

- are rejected pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption or assumption and assignment of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract and Unexpired Lease assumed pursuant to this Article of the Plan will revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

### B.  Assignment of Executory Contracts or Unexpired Leases

In the event of an assignment of an Executory Contract or Unexpired Lease to an Entity other than a Debtor or its successor, at least ten (10) days prior to the Confirmation Hearing, the Debtors will serve upon counterparties to such Executory Contracts and Unexpired Leases a notice of the proposed assumption and assignment that will: (a) list the applicable monetary cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court. Additionally, the Debtors will file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed monetary cure amounts, which list (including any proposed cure amounts set forth therein) shall be in form and substance reasonably satisfactory to the Required Consenting Creditors. Any applicable cure will be satisfied as set forth in ARTICLE VI.D.

## C. Rejection of Executory Contracts or Unexpired Leases

All Executory Contracts and Unexpired Leases identified in the Rejected Executory Contract/Unexpired Lease List shall be deemed rejected as of the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections identified in the Rejected Executory Contract/Unexpired Lease List and this Article of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection or such other time as may be set by such order (the "*Rejection Claim Bar Date*"). The Debtors or Reorganized Debtors, as the case may be, will provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim. The deadline for filing a Proof of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to a prior order of the Bankruptcy Court shall be as set forth in such order; *provided, however* if such order does not set such a deadline, the deadline shall the Rejection Claim Bar Date. Each Claim arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as a General Unsecured Claim subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in ARTICLE X.E.2 of the Plan.

Notwithstanding anything to the contrary herein, all rights of the Debtors, the Reorganized Debtors, and any counterparty to any Executory Contract or Unexpired Lease are reserved in the event that the Debtors, with the consent of the Required Consenting Creditors (which consent shall not be unreasonably withheld), or the Reorganized Debtors, as applicable, amend their decision with respect to the rejection of any Executory Contract or Unexpired Lease.

## D. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors or Reorganized Debtors, as applicable, upon assumption thereof, by payment of the default amount in Cash on the later of the Initial Distribution Date, or the date as and when such amount is due in the ordinary course, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree, subject to ARTICLE VI.E. Following the Petition Date, the Debtors may serve a notice on parties to Executory Contracts and Unexpired Leases to be assumed reflecting the Debtors' intention to assume the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure (if any). If a counter party to any Executory Contract or Unexpired Lease, that the Debtors or Reorganized Debtors, as applicable, intend to assume, does not receive such a notice, the proposed cure for such Executory Contract or Unexpired Lease shall be deemed to be zero dollars ($0).

### E.  Objections to Assumption, Assignment or Cure of Executory Contracts or Unexpired Leases

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assignment or any related monetary cure amount must be Filed, served and actually received by the Debtors at least five (5) Business Days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption, assignment or cure amount will be deemed to have consented to such assumption or assumption and assignment, and to such cure, of its Executory Contract or Unexpired Lease. The Confirmation Order will constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. In the event of a dispute regarding assumption, assumption and assignment, or cure of any Executory Contract or Unexpired Lease, any applicable cure payments will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment, and cure. The Reorganized Debtors reserve the right to reject any Executory Contract or Unexpired Lease at any time in lieu of assuming or assuming and assigning it.

### F.  Assumption of Existing Senior Leadership Employment Agreements/Incentive Compensation

On the Effective Date, the Reorganized Debtors will assume all of the Existing Senior Leadership Employment Agreements pursuant to section 365(a) of the Bankruptcy Code, subject to the applicable employee agreeing to certain amendments as negotiated between the Debtors and the Required Consenting Creditors. Nothing herein shall prevent or prohibit the Debtors, with the consent of the Required Consenting Lenders, or the Reorganized Debtors from entering into new management employment agreements with their key management to be effective as of the Effective Date, covering, without limitation, base salary, incentives, and executive benefits.

### G.  Director and Officer Insurance Policies

Upon the Effective Date, the Reorganized Debtors will have similar insurance coverage to the D&O Liability Insurance Policies in effect upon the Petition Date. If, as of the Effective Date, the Debtors do not have a six (6) year discovery period (referred to as a "*Tail Policy*") in place under such D&O Liability Insurance Policies, the Reorganized Debtors shall acquire such six (6) year Tail Policy, which shall be in form and substance reasonably satisfactory to the Required Consenting Lenders, TI Holdings and the Debtors. If, as of the Effective Date, the Debtors have already acquired such a Tail Policy, such policy shall be deemed an assumed contract to the extent executory. For the avoidance of doubt, any new D&O Liability Insurance Policies that are to be purchased and effective as of the Effective Date shall be in form and substance reasonably satisfactory to the Required Consenting Creditors and the Debtors.

### H.  Indemnification Provisions

All indemnification provisions in place immediately prior to the Effective Date (whether in the by-laws, certificate of incorporation, board resolutions, contracts, or otherwise) for the current and former directors, officers and employees of the Debtors who served in such capacity with respect to the Debtors or Equity Parent, or based upon any act or omission taken or omitted in such capacities for or on behalf of the Debtors or Equity Parent, will be Reinstated (or assumed, as the case may be), and will survive effectiveness of the Plan. No such Reinstatement or assumption shall in any way extend the scope or term of any indemnification provision beyond that contemplated in the underlying contract or document as applicable; provided,

<u>further</u>, that the Reorganized Debtors shall have no indemnification obligations for any losses, liabilities, or expenses arising out of conduct determined by a Final Order to have constituted actual fraud, gross negligence, bad faith, or willful misconduct.

**I.**     **Compensation and Benefit Programs**

The Debtors shall file, as part of the Plan Supplement, the Schedule of Assumed Compensation and Benefit Programs. Except as otherwise provided in the Plan or in the Existing Senior Leadership Employment Agreements (as amended, if applicable), all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its employees, retirees, and non-employee directors and the employees and retirees of its subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, vacation and paid time off programs, severance benefit plans, incentive plans (other than equity incentive plans providing for the distribution of equity in the Reorganized Debtors, which will replaced by the Management Incentive Plan), life, and accidental death and dismemberment insurance plans, are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, in each case to the extent listed on the Schedule of Assumed Compensation and Benefit Programs. Any payment obligations under any assumed employment contracts and benefit plans that have been or purport to have been accelerated as a result of the commencement of the Chapter 11 Cases or the consummation of any transactions contemplated by the Plan will be Reinstated and such acceleration will be rescinded and deemed not to have occurred.

**J.**     **Workers' Compensation Benefits**

Except as otherwise provided in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors will continue to honor their obligations under: (i) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (ii) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, and any other policies, programs, and plans regarding or relating to workers' compensation and workers' compensation insurance. All such contracts and agreements are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under any such contracts, agreements, policies, programs or plans regarding or relating to workers' compensation or workers' compensation insurance.

**K.**     **Insurance Policies**

Other than the insurance policies otherwise discussed herein, all other insurance policies to which any Debtor is a party as of the Effective Date shall be deemed to be and treated as Executory Contracts and shall be assumed by the applicable Debtor or Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**     **Distributions for Claims Allowed as of the Effective Date**

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties and subject to the establishment of the Class 5 Reserve, the Distribution Agent shall make

initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Initial Distribution Date.

## B. Distributions on Account of Claims Allowed After the Effective Date

### 1. Payments and Distributions on Disputed Claims.

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties and subject to the establishment of the Class 5 Reserve, if a Disputed Claim becomes an Allowed Claim after the Effective Date, distributions that would be past due under the Plan on account of such Disputed Claim if it had previously been an Allowed Claim shall be made within thirty (30) days after the Disputed Claim becomes an Allowed Claim, or as soon as practicable thereafter, without any interest to be paid on account of such Claim unless it is a Secured Clam and such payment is required under applicable bankruptcy law.

### 2. Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, and such Claim has become an Allowed Claim. In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims pursuant to ARTICLE VII.B.3 hereof.

### 3. The Class 5 Reserve.

On the Effective Date, pending resolution of Disputed General Unsecured Claims, the Reorganized Debtors or applicable Reorganized Debtor shall withhold from distributions as a reserve the Class 5 Default Consideration and, if applicable, the Class 5 Consensual Plan Consideration, as set forth in this section of the Plan (the "Class 5 Reserve"). For the benefit of Holders of Allowed General Unsecured Claims, and to enable the distribution of the Class 5 Default Consideration and the Class 5 Consensual Plan Consideration: (A) the Amended Organizational Documents shall provide for the issuance of (1) a number of shares of Exchange Common Shares equal to 5.5% of the maximum number thereof issuable under the Plan, provided that such number of shares shall be reduced by any reduction resulting if the Class 5 Equity Cash Out Option is available and elected by any eligible Holders and (2) the Class A Warrants; (B) the Reorganized First Lien Term Loan Agreement shall provide for the issuance of (1) $2.5 million of Reorganized First Lien Term Loans and (2) if Class 5 votes to accept the Plan, an additional $2.0 million of Reorganized First Lien Term Loans (less any Class 5 Swapped Debt); and (C) if Class 5 votes to accept the Plan, the Reorganized Debtors shall be obligated to pay $1,000,000 in Cash plus up to an additional $1,050,000 in Cash if the Class 5 Equity Cash Out Option is available and elected by any eligible Holders of Allowed General Unsecured Claims. Subject to the foregoing limits, the amount of Exchange Common Shares, Class A Warrants, Reorganized First Lien Term Loans and Cash to be withheld as a part of the Class 5 Reserve for the benefit of a Holder of a Disputed Claim in Class 5 shall be equal to the lesser of the amount set forth in the following clause (a) and the amount set forth in the following clause (b): (a) (i) if no estimation is made by the Bankruptcy Court pursuant to ARTICLE VIII herein, the number of shares of Exchange Common Shares and the amount of Class A Warrants, Reorganized First Lien Term Loans and Cash necessary to satisfy the distributions required to be made pursuant to the Plan based on the asserted amount of the Disputed Claim or, if the Claim is denominated as contingent or unliquidated as of the Distribution Record Date, the amount that the Debtors, with the consent of the Required Consenting Creditors (which consent shall not be

unreasonably withheld) elect to withhold on account of such Claim in the Class 5 Reserve; or (ii) the number of shares of Exchange Common Shares and the amount of Class A Warrants, Reorganized First Lien Term Loans and Cash necessary to satisfy the distributions required to be made pursuant to the Plan for such Disputed Claim based on an amount as estimated by and set forth in an order of the Bankruptcy Court for purposes of allowance and distributions; and (b) the number of shares of Exchange Common Shares and the amount of Class A Warrants, Reorganized First Lien Term Loans and Cash necessary to satisfy the distributions required to be made pursuant to the Plan based on an amount as may be agreed upon by the Holder of such Disputed Claim and the Reorganized Debtors, with the consent of the Required Consenting Creditors, which consent may not be unreasonably withheld. As Disputed Claims are Allowed, the Distribution Agent shall distribute, in accordance with the terms of the Plan, Exchange Common Shares, Class A Warrants, Reorganized First Lien Term Loans and Cash to Holders of Allowed General Unsecured Claims, and the Class 5 Reserve shall be adjusted accordingly.

## C.     Delivery and Distributions and Undeliverable or Unclaimed Distributions

### 1.     Record Date for Distributions

At the close of business on the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded security is transferred 20 or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Equity Interests in Holdings shall be closed, and there shall be no further changes in the record holders of such Claims or Equity Interests.

The Reorganized Debtors, the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfers of Claims or Equity Interests not occurring timely in accordance herewith and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders on the Claims Register or transfer ledgers, as applicable, as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

### 2.     Delivery of Distributions in General

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that, permissively, Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

Except as otherwise provided herein, Plan Distributions to Holders of Allowed Claims shall be delivered to the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Debtors or the Reorganized Debtors, as applicable; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

All distributions to Holders of Prepetition First Lien Claims and Prepetition Second Lien Claims shall be deemed completed when made to such Holders. Notwithstanding any provisions herein to the contrary, Prepetition First Lien Loan Agreement and Prepetition Second Lien Loan Agreement shall continue in effect to the extent necessary to allow the Debtors or Reorganized Debtors, as applicable, either directly or through the Distribution Agent to make Plan Distributions pursuant to this Plan on account of the Prepetition First Lien Claims and Prepetition Second Lien Claims.

### 3. Distributions by Distribution Agents

Except as otherwise set forth in this ARTICLE VII.B, all Plan Distributions shall be made by the Reorganized Debtors as Distribution Agent, or by such other Entity designated by the Debtors as a Distribution Agent on the Effective Date or thereafter, unless the Plan specifically provides otherwise. The Reorganized Debtors, or such other Entity designated by the Debtors to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Plan Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

### 4. Minimum Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtors shall not be required to make distributions or payments of less than $50 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars, shares or warrants. Whenever any payment or distribution of a fraction of a dollar, fraction of a share of New Common Shares or fraction of a New Warrant under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, whole share of New Common Shares or whole New Warrant (up or down), with half dollars, half shares of New Common Shares and half New Warrants or less being rounded down.

### 5. Undeliverable Distributions

(a)     Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors (or their Distribution Agent) are notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder within thirty (30) days following such notification or as soon as practicable thereafter. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to the following subsection hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind.

(b)     Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within the latest of (i) one year after the Effective Date, (ii) 60 days after the attempted delivery of the undeliverable distribution and (iii) 180 days after the date such Claim becomes an Allowed Claim shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property. In such cases, (i) any Exchange Common Shares, New Warrants, Reorganized First Lien Term Loans or Cash held for distribution on account of Allowed Claims in Class 3 or Class 5, as applicable, shall be redistributed to Holders of Allowed Claims in the applicable Class entitled to such form of consideration, and as may be limited by the Plan, within seventy-five days thereafter and (ii) any Cash held for distribution to any other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtors, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

      (c)     Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 120 days after the issuance of such check. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtors, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

## D.    **Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, and related liens and encumbrances. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Government Unit, including income, withholding and other tax obligations, on account of such distribution. The Reorganized Debtors have the right, but not the obligation, not to make a distribution until such Holder has made arrangements satisfactory to the Reorganized Debtors for payment of any such tax obligations. The Reorganized Debtors may require, as a condition to the receipt of a distribution, that the Holder of an Allowed Claim complete the appropriate Form W-8 or Form W-9, as

applicable to each Holder. If such Holder fails to comply with such request within one year, such distribution shall be deemed an unclaimed distribution.

In connection with the distribution of New Common Shares to current or former employees of the Debtors, Reorganized Holdings will take whatever actions are necessary to comply with applicable U.S. federal, state, local and non-U.S. tax withholding obligations, including, when applicable, withholding from distributions a portion of the New Common Shares, selling such securities or requiring Holders of such securities to contribute the Cash necessary to satisfy tax withholding obligations including, without limitation, income, social security and Medicare taxes, and Reorganized Holdings shall pay such withheld taxes to the appropriate Governmental Unit.

To the extent that any Allowed Claim entitled to distribution under the Plan consists of indebtedness and accrued but unpaid interest thereon, such distributions shall, for all income tax purposes, be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

## E.     **Timing and Calculation of Amounts to Be Distributed**

On the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or at such other time as may be specified in the Plan, each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class, provided that, in the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in ARTICLE VII hereof. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

## F.     **Setoffs**

The Debtors and the Reorganized Debtors may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim, other than the Allowed Claim of a Consenting Creditor, an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim. In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, other than the Allowed Claim of a Consenting Creditor, are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim, other than the Allowed Claim of a Consenting Creditor, and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights and Causes of Action that the

Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

## G.    Surrender of Canceled Instruments or Securities

As a condition precedent to receiving any distribution on account of its Allowed Claim, each record Holder of a Prepetition First Lien Claim or Prepetition Second Lien Claim shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentations shall be deemed to be canceled pursuant to ARTICLE V.N and ARTICLE V.O hereto, except to the extent otherwise provided herein.

## H.    Lost, Stolen, Mutilated or Destroyed Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to Reorganized Holdings and other applicable Distribution Agent: (x) evidence reasonably satisfactory to Reorganized Holdings and other applicable Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by Reorganized Holdings and other applicable Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest. Upon compliance with this Article of the Plan as determined by the Debtors or Reorganized Debtors by a Holder of a Claim or Equity Interest evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to Reorganized Holdings and other applicable Distribution Agents.

## ARTICLE VIII.
## PROCEDURES CONCERNING CONTINGENT,
## UNLIQUIDATED AND DISPUTED CLAIMS

## A.    Rights of Reorganized Debtors with Respect to Allowance of Claims and Equity Interests

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed under the Plan (including the Prepetition First Lien Claims and Prepetition Second Lien Claims) or by orders of the Bankruptcy Court.

## B.    No Distributions to Holders of Disputed Claims or Equity Interests Pending Resolution of the Dispute

Under no circumstances will any distributions be made on account of any Claim or Equity Interest that is not an Allowed Claim or Equity Interest. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order and the DIP Orders), no Claim or Equity Interest will become an Allowed Claim unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Equity Interest. No payment or other distribution or treatment shall be made on

account of a Disputed Claim or Equity Interest, even if a portion of the Claim or Equity Interest is not disputed, unless and until such Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest and the amount of such Allowed Claim or Equity Interest is determined by a Final Order, provided, however, that the Reorganized Debtors and the subject Holder, may determine allowance of a Disputed Claim or Equity Interest after the Effective Date without further order of the Bankruptcy Court. Notwithstanding any other provision of the Plan, the Reorganized Debtors and any Distribution Agent shall have no obligation to make any distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

## C. **Resolving Disputed Claims and Equity Interests**

All of the following objection, estimation and resolution procedures are cumulative and not exclusive of one another.

### 1. **Generally**

The Debtors and Reorganized Debtors intend to attempt to resolve Disputed Claims and Equity Interests consensually or through judicial means outside the Bankruptcy Court. Nevertheless, from and after the Confirmation Date but before the Effective Date, the Debtors, and, after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to Claims and Equity Interests and resolve such objections pending as of the Confirmation Date and, may, in their discretion, file with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Equity Interest or any other appropriate motion or adversary proceeding with respect thereto and prosecute all such pending objections, motions or adversary proceedings; provided, however, (i) the Debtors shall consult with the Required Consenting Lenders prior to filing any such objection, motion or adversary proceeding and (ii) the consent of the Required Consenting Lenders (which consent shall not be unreasonably withheld) shall be required with respect to the resolution of any objection that results in (x) and Allowed Administrative Expense Claim greater than or equal to $100,000 or (y) an Allowed General Unsecured Claim greater than or equal to $200,000 . All such matters pending as of the Confirmation Date shall be litigated to Final Order, provided, however, that, except to the extent otherwise provided in the Confirmation Order, the Reorganized Debtors are authorized to settle, or withdraw any such matters with respect to any Disputed Claim or Equity Interest following the Effective Date without further notice or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of the Plan. The Reorganized Debtors will have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

### 2. **Estimation**

After the Confirmation Date but before the Effective Date, the Debtors, with the consent of the Required Consenting Creditors (which consent shall not be unreasonably withheld), and, after the Effective Date, the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Equity Interest pursuant to applicable law and (b) any contingent or unliquidated Claim or Equity Interest pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Equity Interest, contingent Claim or Equity Interest or unliquidated Claim or Equity Interest, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the

Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

**D.**     **Distributions after Allowance of Disputed Claims or Equity Interests**

Following the date on which a Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Reorganized Debtors shall pay directly to the Holder of such Allowed Claim or Equity Interest the amount or consideration provided for under the Plan, as applicable, and in accordance therewith.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO**
**CONSUMMATION OF THE PLAN**

The failure to satisfy or waive a condition to Consummation may be asserted, as applicable, by the Debtors and the Required Consenting Creditors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

**A.**     **Conditions Precedent to Consummation**

Consummation of the Plan shall occur on the Business Day as determined by the Debtors with the consent of the Required Consenting Creditors after they reasonably determine that the following conditions have been met or waived pursuant to the provisions of ARTICLE IX of the Plan:

    1.     The Bankruptcy Court has entered the Confirmation Order and it is a Final Order, and such order is in form and substance acceptable to the Debtors and the Required Consenting Creditors.

    2.     The Confirmation Order provides that, among other things, the Debtors or the Reorganized Debtors, as appropriate, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents or Alternative Structures created in connection with or described in the Plan.

    3.     All actions, documents, certificates and agreements necessary to implement this Plan have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

    4.     The Plan Documents are consistent with, and in form and substance as required by the approvals and consents set forth in, the Restructuring Support Agreement; provided, however, for the avoidance of doubt, any Plan Documents regarding organizational and governance matters of the Reorganized Debtors, including, without limitation, the Amended Organizational Documents, shall be acceptable to the Required Consenting Creditors in their sole discretion.

    5.     All documents and agreements necessary to implement the Plan, including, without limitation, the New ABL Facility Documents, the Reorganized First Lien Term Loan Documents, the Amended Organizational Documents and the New Warrants have (a) all conditions precedent to such documents and agreements satisfied or waived pursuant to the

terms of such documents or agreements, (b) been tendered for delivery and/or (c) been effected or executed, as applicable.

        6.      The Restructuring Support Agreement is in full force and effect.

        7.      All Restructuring Expenses and all Agent Fee Claims have been paid in accordance with ARTICLE V.R and ARTICLE V.S hereof, respectively.

        8.      The New Board and senior management shall have been selected as contemplated by this Plan.

        9.      All governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions provided for in this Plan have been obtained, are not subject to unfulfilled conditions, and are in full force and effect, and all applicable waiting periods have expired without any action having been taken by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

        10.      All statutory fees and obligations then due and payable to the Office of the United States Trustee shall have been paid and satisfied in full.

## B.      Waiver of Conditions

The conditions to Consummation of the Plan set forth in this Article, other than the condition that the Bankruptcy Court has entered a Confirmation Order in form and substance acceptable to the Debtors and the Required Consenting Creditors, may be waived, in whole or in part, by the Debtors with the consent of the Required Consenting Creditors, in each case without further notice, leave, hearing or order of the Bankruptcy Court or any formal action and, thereupon, Consummation may occur.

## C.      Notice of Effective Date

The Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in ARTICLE IX.A of this Plan have been satisfied or waived pursuant to ARTICLE IX.B of this Plan.

## D.      Effect of Non-Occurrence of Conditions to Consummation

If prior to Consummation of the Plan, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, or Causes of Action; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE X.
## EFFECT OF CONFIRMATION; AND RELEASE,
## INJUNCTION AND RELATED PROVISIONS

### A.    Compromise and Settlement

1.     Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and of all Equity Interests, or other rights of a holder of an Equity Interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and estates, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, or Equity Interests or other rights of a holder of an Equity Security or other ownership interest, and upon the Effective Date, the Debtors and the Reorganized Debtors shall (i) be deemed to have received a discharge under section 1141(d)(1)(A) of the Bankruptcy Code and release from any and all Claims and any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and any Equity Interests or other rights of a holder of an Equity Security or other ownership interest, of any nature whatsoever, including, without limitation, liabilities that arose before the Effective Date (including prior to the Petition Date), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan and (ii) terminate and cancel all rights of any Equity Security holder in any of the Debtors and all Equity Interests, subject to the Subsidiary Structure Maintenance or Alternative Structures.

2.     Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.

3.     The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (i) in the best interests of the Debtors, their estates and all Holders of Claims, (ii) fair, equitable and reasonable, (iii) made in good faith and (iv) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  In addition, the allowance, classification and treatment of Allowed Claims take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist:  (a) between the Debtors, Reorganized Debtors and Estates, on the one hand, and the Released Parties, on the other hand (to the extent set forth in the release contained in ARTICLE X.B); and (b) as between the Releasing Parties and the Released Parties (to the extent set forth in the release contained in ARTICLE X.C); and, as of the Effective Date, any and all such Causes of Action are settled, compromised and released pursuant hereto. The Confirmation Order shall approve the releases in

the Plan of all contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

        4.      Except as expressly provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against each of the Debtors, the Debtors' respective assets, property and Estates and the Reorganized Debtors any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities of any nature whatsoever, and all Equity Interests or other rights of a holder of an Equity Interest, relating to any of the Debtors or Reorganized Debtors or any of their respective assets, property and estates based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action or liabilities, and any Equity Interests or other rights of a holder of an Equity Interest and termination of all rights of any such holder in any of the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors or any of their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any holder of any Equity Interest in any of the Debtors or terminated Equity Interest.

## B.      **Mutual Release by the Debtors and Released Parties**

        Except as otherwise provided in this Plan, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Debtors, Reorganized Debtors, and Estates, on the one hand, and the Released Parties, on the other hand, to the fullest extent permissible under applicable law, the Debtors, Reorganized Debtors, and Estates, on the one hand, and the Released Parties, on the other hand, shall, and shall be deemed to, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, void, extinguish and discharge each other, their Related Persons, and their respective property from any and all Claims, Equity Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies, judgments, defenses, counterclaims, and liabilities of any nature whatsoever, including any derivative Claims asserted or which could be asserted on behalf of a Debtor and/or a Reorganized Debtor, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, on the one hand, and Released Parties, on the other hand, would have been legally entitled to assert against the other, their Related Persons or their property in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, any transactions contemplated by the Plan, the Chapter 11 Cases, the Prepetition First Lien Loan Agreement, the Prepetition Second Lien Loan Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, any payments, distributions, or dividends any Debtor or Affiliate paid to or received from any Released Party, fraudulent or preferential transfer or conveyance, tort, contract, breach of fiduciary duty, violation of state or federal laws, including securities laws, negligence, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents; provided, however, that the foregoing release shall not operate

to waive or release any Claims, obligations, debts, rights, suits, damages, remedies, Causes of Action, and liabilities in respect of any Debtor, Reorganized Debtor or Estate, on the one hand, or Released Party, on the other hand, solely to the extent: (1) arising out of or relating to any act or omission of such purportedly released Entity that constitutes fraud, gross negligence, bad faith, or willful misconduct as determined by Final Order of a court of competent jurisdiction; or (2) arising under the Plan or the Plan Documents.

## C.    **Releases by Holders of Claims and Interests**

Except as otherwise provided in this Plan, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Releasing Parties shall, and shall be deemed to, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, void, extinguish, and discharge each Released Party (and each such Released Party so discharged and released shall be deemed discharged and released by the Releasing Parties) and their respective property from any and all Claims, Equity Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies, judgments, defenses, counterclaims, and liabilities of any nature whatsoever, including any derivative Claims asserted or which could be asserted on behalf of a Debtor and/or a Reorganized Debtor, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, any transactions contemplated by the Plan, the Chapter 11 Cases, the Prepetition First Lien Loan Agreement, the Prepetition Second Lien Loan Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, any payments, distributions, or dividends any Debtor or Affiliate paid to or received from any Released Party, fraudulent or preferential transfer or conveyance, tort, contract, breach of fiduciary duty, violation of state or federal laws, including securities laws, negligence, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents; provided, however, that the foregoing release shall not operate to waive or release any Claims, obligations, debts, rights, suits, damages, remedies, Causes of Action, and liabilities in respect of any Released Party, solely to the extent: (1) arising out of or relating to any act or omission of such Released Party that constitutes fraud, gross negligence, bad faith or willful misconduct as determined by Final Order of a court of competent jurisdiction or (2) arising under the Plan or the Plan Documents.

## D.    **Exculpation**

Notwithstanding anything contained herein to the contrary, the Exculpated Parties shall neither have, nor incur any liability to any Entity for any act on or after the Petition Date and on or before the Effective Date taken or omitted to be taken in connection with, or related to, the Chapter 11 Cases, the formulation, negotiation, solicitation, preparation, dissemination, confirmation, or implementation of the Plan, or consummation of the Plan, the Restructuring Support Agreement, the Disclosure Statement, the Plan Supplement, the Amended Organizational Documents, or other new corporate governance documents, any transactions contemplated by the Plan, the Management Incentive Plan, the New ABL Facility, the Reorganized First Lien Term Loan Facility, the issuance, distribution, and/or sale of any shares of the New Common Shares, the New Warrants (the issuance of New Common Shares in

connection therewith), or any other Security offered, issued, or distributed in connection with the Plan, the Chapter 11 Cases, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or Alternative Structures or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; provided, however, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; provided, further, that the foregoing "Exculpation" shall have no effect on the liability of any Entity solely to the extent resulting from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence, bad faith or willful misconduct.

## E.   Injunctions

### 1.   Confirmation Date Injunction

ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

### 2.   Effective Date Injunctions

#### a.   Injunction Against All Entities

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.  BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST WILL BE DEEMED TO HAVE SPECIFICALLY CONFIRMED ITS CONSENT TO THIS INJUNCTION.

#### b.   Injunction Against Holders of Released, Discharged or Exculpated Claims

Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Equity Interests that have been released pursuant to ARTICLE X.B or ARTICLE X.C, discharged pursuant to ARTICLE X.A, or are subject to exculpation pursuant to ARTICLE X.D, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff (except for setoffs

asserted prior to the Petition Date), subrogation, or of any kind against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Equity Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated, or settled pursuant to the Plan.

**F.      Protection against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**G.      Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim, and a Final Order has been entered determining such Claim as no longer contingent.

**H.      Recoupment**

In no event shall any Holder of Claims or Equity Interests be entitled to recoup any Claim or Equity Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any proof of Claim or Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**I.      Preservation of Rights of Action**

**1.      Maintenance of Causes of Action**

Except as otherwise provided in ARTICLE X or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtors will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action and Litigation Claims, whether existing as of the Petition Date or thereafter arising, and Avoidance Actions, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases. The Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court. In accordance with the provisions of this Plan, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Litigation Claims.

## 2.  Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action, Litigation Claim or Avoidance Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such Cause of Action, Litigation Claim or Avoidance Action for later adjudication by the Debtors, with the consent of the Required Consenting Creditors with respect to any Cause of Action, Litigation Claim or Avoidance Action seeking in excess of $500,000 (which consent shall not be unreasonably withheld), or the Reorganized Debtors (including, without limitation, Causes of Action, Litigation Claims and Avoidance Actions not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action or Litigation Claims upon or after the confirmation of the Plan or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action, Litigation Claims or Avoidance Actions have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in ARTICLE X of the Plan) or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtors, with the consent of the Required Consenting Creditors (which consent shall not be unreasonably withheld), and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

## ARTICLE XI.
## BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM OR EQUITY INTEREST IN THE CHAPTER 11 CASES OR (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.  allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative

Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

2.   grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; provided, however, that, from and after the Effective Date, the Reorganized Debtors shall pay Professionals in the ordinary course of business for any work performed after the Effective Date and such payment shall not be subject to the approval of the Bankruptcy Court;

3.   resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is party or with respect to which any Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, (a) those matters related to any amendment to this Plan after the Effective Date, *e.g.*, to add or delete Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be rejected and not assumed; and (b) any dispute regarding whether a contract or lease is or was executory or expired;

4.   resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.   ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of this Plan;

6.   hear, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, provided that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.   enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8.   resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan; provided, however, that any dispute arising under or in connection with the New ABL Facility Documents, or the Reorganized First Lien Term Loan Documents shall be dealt with in accordance with the provisions of the applicable document;

9.   issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

10. enforce the terms and condition of this Plan and the Confirmation Order;

11. resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification and other provisions contained in ARTICLE X hereof

and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13. hear and determine the Litigation Claims by or on behalf of the Debtors or Reorganized Debtors;

13. enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; *provided, however,* that any dispute arising under or in connection with the New ABL Facility Documents, or the Reorganized First Lien Term Loan Documents shall be dealt with in accordance with the provisions of the applicable document; and

15. enter an order concluding or closing the Chapter 11 Cases.

All of the foregoing applies following the Effective Date; provided, that from the Confirmation Date through the Effective Date, in addition to the foregoing, the Bankruptcy Court shall retain jurisdiction with respect to all other matters of this Plan that were subject to its jurisdiction prior to the Confirmation Date; provided, further, that the Bankruptcy Court shall not have nor retain exclusive jurisdiction over any post-Effective Date agreement. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.   **Dissolution of the Committee**

On the Effective Date, the Committee (if any) and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof (solely in their capacities as such) shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Case; provided, however, that the Committee shall continue to exist and its Professionals shall continue to be retained and entitled to reasonable and documented compensation, without further order of the Court, with respect to: (1) the preparation and prosecution of any final fee applications of the Committee's Professionals and (2) all final fee applications filed with the Bankruptcy Court.

B.   **Payment of Statutory Fees**

All outstanding fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date. All such fees payable after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as practicable.

C.   **Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in this Plan and in the Restructuring Support Agreement: (a) the Debtors reserve the right, with the consent of the Required Consenting Creditors and in accordance with the Bankruptcy Code and

the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors, with the consent of the Required Consenting Creditors, or the Reorganized Debtors, as applicable, may, and after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. A Holder of a Claim or Equity Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of such Claim or Equity Interest of such Holder.

## D.  Revocation of Plan

Subject to the terms of the Restructuring Support Agreement, including the consent and approval rights contained therein, the Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

## E.  Entire Agreement

Except as otherwise described herein, and without limiting the effectiveness of the Restructuring Support Agreement and any related agreements thereto, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## F.  Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

## G.  Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, including, without limitation, the Reorganized Debtors. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

## H.  Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any

action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, will constitute an admission by the Debtors that any such contract or lease is or is not an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, Avoidance Actions, Litigation Claims or other rights of the Debtors or the Reorganized Debtors under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtors, with the consent of the Required Consenting Creditors (which consent shall not be unreasonably withheld), or Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**I.      Further Assurances**

The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order. On or before the Effective Date, the Debtors shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**J.      Severability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted, provided, however, that any such altered form must be consistent with, and subject to the approvals and consents as to form and substance set forth in, the Restructuring Support Agreement. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## K.    Service of Documents

All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)     *If to the Debtors or Reorganized Debtors:*

True Religion Apparel, Inc.
1888 Rosecrans Avenue
Manhattan Beach, CA 90266
Telephone: (323) 266-3072
Attention: Chief Financial Officer

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705 (Courier 19801)
Attn: Laura Davis Jones, Esq.

(b)     *If to the Consenting Creditors:*

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Attn: Arik Preis, Esq.
       Jason P. Rubin, Esq.
       Yochun Katie Lee, Esq.

**and**

Ashby & Geddes
500 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
Attn: Karen Skomorucha Owens

## L.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest (including the New Common Shares and New Warrants) in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or

sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan, including the New ABL Facility Documents; (ii) the issuance of the Reorganized First Lien Term Loans, the New Common Shares and the New Warrants; (iii) the maintenance or creation of security or any Lien as contemplated by the New ABL Facility Documents and the Reorganized First Lien Term Loans; and (iv) assignments executed in connection with any transaction occurring under the Plan.

## M.  Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction; provided that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, shall be governed by the laws of the state of organization of the applicable Debtor or Reorganized Debtor, as applicable.

## N.  Immediate Binding Effect

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, the Holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns.

## O.  Tax Reporting and Compliance

The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

## P.  Plan Schedules

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated and are a part of this Plan as if set forth in full herein.

## Q.  No Strict Construction

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the Consenting Creditors, Equity Parent, and their respective professionals. Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review

and provide comments on, this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the agreements and documents ancillary or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "contra proferentem" or other rules of strict construction shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the documents ancillary and related thereto.

**R.**     <u>**Controlling Document**</u>

       In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. In the event of an inconsistency between the Restructuring Support Agreement and the Plan as to consents and approval rights, and the Restructuring Support Agreement has not been terminated, then the consents and the approval rights required in the Restructuring Support Agreement shall govern. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

[Remainder of Page Intentionally Blank]

Dated: July _5_, 2017

Respectfully submitted,

TRUE RELIGION APPAREL, INC.

By: _____
    John Ermatinger
Its:  CEO and President

Respectfully submitted,

TRLG INTERMEDIATE HOLDINGS, LLC

By: _____
    John Ermatinger
Its:  CEO and President

Respectfully submitted,

GURU DENIM INC.

By: _____
    John Ermatinger
Its:  CEO and President

Respectfully submitted,

TRUE RELIGION SALES, LLC

By: _____
    John Ermatinger
Its:  CEO and President

Respectfully submitted,

TRLGGC SERVICES, LLC

By: _____
    John Ermatinger
Its:  President and CEO

**[Signature Page to Debtors' Joint Chapter 11 Plan of Reorganization]**

# EXHIBIT 1

## Term Sheet for Reorganized First Lien Term Loan Documents

# REORGANIZED FIRST LIEN TERM LOAN FACILITY[1]

| | |
|---|---|
| *Borrower* | Reorganized True Religion Apparel, Inc. (the "**Borrower**"). |
| *Guarantors* | Reorganized TRLG Intermediate Holdings, LLC and each of the Borrower's direct and indirect wholly-owned domestic subsidiaries (collectively, the "**Guarantors**"; the Borrower and the Guarantors, collectively, the "**Loan Parties**"). |
| *Lenders* | The current First Lien Lenders ($110 million) and the current unsecured creditors (including second lien lenders) ($2.5 million, subject to increase by an aggregate principal amount of $2.0 million if Class 5 votes to accept the Plan and subject to decrease by any Class 5 Swapped Debt).[2]. |
| *Collateral* | The obligations of the Loan Parties in respect of the Reorganized First Lien Term Loan Facility shall be secured by (1) a first priority, perfected security interest in substantially all assets of the Loan Parties whether now existing or hereinafter acquired (other than the New Revolving Credit Facility Priority Collateral) and (2) a second priority, perfected security interest in the New Revolving Credit Facility Priority Collateral, in each case subject to exceptions to the collateral package reasonably acceptable to the Lenders. |
| *Amount* | Up to $114.5 million first lien term loan ("**Reorganized First Lien Term Loans**"), less the amount of any Class 5 Swapped Debt.[3] |
| *Maturity* | Fifth anniversary of the Effective Date (the "**Term Loan Maturity Date**"). |
| *Interest* | 10.0% |
| *Voluntary Prepayments* | The Reorganized First Lien Term Loans may be prepaid at any time at the option of the Borrower, upon notice and in a minimum principal amount and in multiples to be agreed upon by the Debtors and the Required Consenting Creditors, without premium or penalty. |
| *Scheduled Amortization* | [25 basis points per quarter][4] |
| *Mandatory Prepayments* | TBD |
| *Conditions Precedent* | The Reorganized First Lien Term Loan Facility shall be subject to certain conditions precedent customary for financings of this type and reasonably determined by the Required Consenting Creditors. |
| *Representation and* | The Reorganized First Lien Term Loan Facility shall contain representations and |

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[2]  If any Holder of an Allowed General Unsecured Claim is a Class 5 Electing Holder, such Holder will receive the Class 5 Warrants for Debt Treatment with respect to its Class 5 Swapped Debt. The Reorganized First Lien Term Loan Documents shall reflect the resulting reduction in the principal amount of the Reorganized First Lien Term Loan Facility.

[3]  See previous footnote.

[4]  May be adjusted as reasonably determined by the Debtors and the Required Consenting Creditors.

| | |
|---|---|
| *Warranties* | warranties customary for financings of this type, in form and substance reasonably satisfactory to the Required Consenting Creditors. |
| *Affirmative Covenants* | The Reorganized First Lien Term Loan Facility shall contain affirmative covenants customary for financings of this type, in form and substance reasonably satisfactory to the Required Consenting Creditors. |
| *Negative Covenants* | The Reorganized First Lien Term Loan Facility shall contain negative covenants customary for financings of this type, in form and substance reasonably satisfactory to the Required Consenting Creditors. |
| *Financial Covenants* | Management and Required Consenting Creditors to discuss.[5] |
| *Closing Date* | The Effective Date. |
| *Events of Default* | The Reorganized First Lien Term Loan Credit Facility shall contain certain Events of Defaults (with grace periods and thresholds to be agreed) typical for facilities of this type, in form and substance reasonably satisfactory to the Required Consenting Creditors. |
| *Required Lenders* | "Required Lenders" shall be defined as First Lien Term Lenders holding more than 50% of the aggregate outstanding amount of Reorganized First Lien Term Loans |
| *Governing Law and Forum* | State of New York. |
| *Documentation* | The Required Consenting Creditors shall document the Reorganized First Lien Term Loan Facility with documentation consistent with this term sheet and otherwise in form and substance satisfactory to the Required Consenting Creditors. |

---

[5]  Financial covenants likely to be incurrence based covenants, not operational covenants.