IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRUE RELIGION APPAREL, INC., et al.,[1] | ) | Case No. 17-11460 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS TO (I) ASSUME EXIT FACILITY
COMMITMENT LETTER, (II) PAY AND REIMBURSE RELATED FEES
AND EXPENSES, AND (III) INDEMNIFY THE PARTIES THERETO**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of an order authorizing the Debtors to (i) assume the Exit Facility Commitment Letter dated July 4, 2017 (including the Exit Facility Term Sheet (as defined therein), as amended, modified, waived, or supplemented from time to time in accordance with its terms, the "Exit Facility Commitment Letter") with Citizens Bank, N.A. ("Citizens"), (ii) pay and reimburse related fees and expenses, and (iii) indemnify the parties thereto. The Exit Facility Commitment Letter (with any necessary redactions) is attached to the proposed order submitted herewith.

## Introduction

1. Concurrently herewith, the Debtors have filed the *Debtors' Joint Chapter 11 Plan of Reorganization* (the "Plan").

2. The Debtors believe that the Plan provides the best restructuring alternative available to these estates. The Plan contemplates implementing a new senior secured

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: TRLG Intermediate Holdings, LLC (3150); True Religion Apparel, Inc. (2633); Guru Denim Inc. (1785); True Religion Sales, LLC (3441); and TRLGGC Services, LLC (8453). The Debtors' headquarters is located at 1888 Rosecrans Avenue, Manhattan Beach, CA 90266.

exit financing facility in order to repay the proposed debtor-in-possession loan facility, also to be provided by Citizens (the "DIP Facility"), and to provide additional working capital liquidity to the reorganized Debtors on a post-emergence basis.[2] The proposed exit facility with Citizens satisfies this requirement.

3. Consistent with the Plan and following an extensive marketing effort, the Debtors negotiated the terms of the Exit Facility Commitment Letter with Citizens and agreed upon such commitment prior to the commencement of these bankruptcy cases. The Debtors believe that the financing contemplated under the Exit Facility Commitment Letter is advantageous to the Debtors given the low interest rate that will be charged and the amount of liquidity (up to $60 million) that will be made available to the reorganized Debtors, subject to the borrowing base and other conditions set forth in the Exit Facility Commitment Letter. By entering into the Exit Facility Commitment Letter, the Debtors are providing all stakeholders, customers, vendors, contract counterparties, and other interested parties with evidence that the Plan is not only feasible, but also will be consummated within the milestones set forth in the DIP Facility.

4. The Debtors now seek to assume the Exit Facility Commitment Letter in order to ensure that the funding contemplated thereunder will be available to the Debtors following confirmation of the Plan, and to allow the Debtors to proceed promptly to consummate the Plan in accordance with the milestones in the DIP Facility. By assuming the Exit Facility Commitment Letter, the Debtors will be agreeing to three basic obligations: (a) to reimburse

---

[2] Concurrently herewith, the Debtors are filing a separate motion to approve the DIP Facility.

Citizens for its reasonable fees and expenses in connection with its due diligence and preparation of definitive documents with respect to the contemplated exit facility, (b) to indemnify Citizens as to any damages or losses that Citizens or its affiliated persons may incur as a result of, or in connection with, the exit facility, and (c) to negotiate exclusively with Citizens as to the exit facility, but subject to a "fiduciary out" on the basis of reasonable advice of legal counsel for the the Debtors.

5. Notably, the Exit Facility Commitment Letter has the support of the vast majority of the Debtors' existing secured lenders.

### Jurisdiction and Venue

6. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 365(a), 503(b), and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"),

and Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

8. On the date hereof (the "Petition Date"), the Debtors each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. The factual background regarding the Debtors, including their historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Dalibor Snyder, Chief Financial Officer, in Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[3]

## Relevant Factual Background

10. Prior to the Petition Date, on July 4, 2017, the Debtors and Citizens agreed upon the Exit Facility Commitment Letter.

11. The Exit Facility Commitment Letter contemplates a $60 million senior secured, revolving credit facility for the Debtors (the "Exit Facility"), to be entered into upon the effective date of the Plan. Under the Exit Facility Commitment Letter, Citizens has agreed to act as Agent, Lead Arranger and Sole Book Runner of the Exit Facility. The Exit Facility Commitment Letter sets forth certain of the anticipated terms and conditions of the Exit Facility,

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

as summarized further below.[4] Consummation of the Exit Facility will be subject to the completion of definitive documentation, the satisfaction of certain conditions, including this Court's approval thereof, and the payment by the Debtors of required fees and expenses.

12. The proceeds of the Exit Facility, upon closing, would be used to (a) repay or refinance the DIP Facility, (b) pay fees and expenses related to this transaction, (c) satisfy ongoing capital expenditures, and (d) provide for the ongoing growth and working capital needs of the Debtors. It is a requirement of the Exit Facility Commitment Letter that the Debtors obtain an order approving this Motion by August 4, 2017.

13. Interest on the indebtedness under the Exit Facility is expected to accrue based on the applicable LIBOR-based rate, as set forth in the Exit Facility Commitment Letter. The obligations of the Debtors and their existing and future subsidiaries are, subject to certain conditions, to be secured by a first priority perfected security interest in certain primary collateral consisting of accounts receivable and inventory, among other assets.

14. Pursuant to the Exit Facility Commitment Letter, the Debtors are required to reimburse Citizens, upon presentation of a summary statement, for all reasonable and documented out-of-pocket expenses (including but not limited to out-of-pocket expenses of Citizens' due diligence investigation, field examinations and collateral appraisal expenses, travel expenses and reasonable fees, disbursements and other charges of one primary counsel to Citizens (and any local or special counsel to Citizens), in each case incurred in connection with

---

[4] The description of the Exit Facility Commitment Letter presented herein is a summary of the principal terms of such agreement, and is qualified in all respects by the actual terms and conditions of the Exit Facility Commitment Letter.

5

the Exit Facility and the preparation of the Commitment Letter and the documentation relating to the Exit Facility (the "Citizens Expenses").

15. Further, the Exit Facility Commitment Letter contains a standard indemnification provision in favor of Citizens, pursuant to which the Debtors agreed to indemnify and hold harmless Citizens and its affiliates and each of their directors, officers and employees (each, an "Indemnified Person"), from and against any and all losses, claims, damages, expenses and liabilities incurred by any Indemnified Person that arise out of or relate to any investigation or other proceeding (including any threatened investigation or litigation or other proceedings and whether or not such Indemnified Person is a party thereto) relating to the Exit Facility Commitment Letter, the Exit Facility Term Sheet or the transactions contemplated thereby, including, without limitation, the reasonable fees and disbursements of counsel (which fees and disbursements may include, but are not limited to, reasonable fees and disbursements of in-house counsel incurred in connection with any of the foregoing), but excluding any of the foregoing claimed by any Indemnified Person to the extent incurred by reason of the gross negligence or willful misconduct of such Indemnified Person as determined by a final nonappealable judgment of a court of competent jurisdiction.

16. The Exit Facility Commitment Letter also contains an exclusivity provision requiring the Debtors, until expiration of the commitment, not to, solicit, initiate, entertain or permit, or enter into any discussions in respect of, any offering, placement or arrangement of any competing senior credit facility or facilities for the Debtors with respect to the matters addressed in the Exit Facility Commitment Letter. However, nothing in the Exit

Facility Commitment Letter shall prevent the Debtors from taking or failing to take any action that they determine, based on the reasonable advice of their legal counsel, they are obligated to take in the performance of their statutory, contractual or fiduciary duties or as otherwise required by the Bankruptcy Code or applicable law; provided, however that it is agreed that Citizens may, at its option, terminate the Exit Facility Commitment Letter and the commitments and undertakings of Citizens thereunder as a result of any such actions (or inactions)

17. The Exit Facility Commitment Letter expires on December 1, 2017, if the initial borrowing under the Exit Facility has not occurred by then.

**Relief Requested**

18. The Debtors seek authority to (i) assume the Exit Facility Commitment Letter, (ii) pay and reimburse the Citizens Expenses in accordance with the terms of the Exit Facility Commitment Letter, and (iii) indemnify each Indemnified Person (including Citizens) in accordance with the terms of the Exit Facility Commitment Letter.

**Basis for Relief**

A. **The Debtors Should Be Authorized to Assume the Exit Facility Commitment Letter Under 11 U.S.C. §§ 105(a), 363(b), and 365(a)**

19. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the Court's approval, may . . . assume any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which is premised upon the debtor's business judgment that assumption would be beneficial to its estate. *In re Market Square Inn, Inc.*, 978 F.2d 116, 121

(3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (D. Del. 2003) ("A debtor's determination to reject an executory contract can only be overturned if the decision was the product of bad faith, whim or caprice."). Accordingly, debtors are given significant discretion when requesting authorization to assume or reject an executory contract. *See In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion."); *In re AbitibiBowater Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009) ("This is not a difficult standard to satisfy . . .").

20. To the extent that an assumption of an executory contract constitutes a use of property of the estate, section 363(b)(1) of the Bankruptcy Code provides that a debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court can authorize a debtor to use property of the estate pursuant to section 363(b)(1) when such use is an exercise of the debtor's sound business judgment and when such use is proposed in good faith. *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

21. Additionally, section 105(a) provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a). Pursuant to section 105(a), orders are appropriate where they are essential to the debtor's reorganization efforts and do not pose a burden on the debtor's creditors. *See U.S. Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999).

22. Here, the Debtors have determined, in the exercise of their business judgment, that it is critical to the execution of the Plan and the Debtors' operations post-emergence to assume the Exit Facility Commitment Letter. Pursuant to the Exit Facility Commitment Letter, subject to the satisfaction of the conditions to closing set forth therein, Citizens has agreed to commit up to $60 million under the Exit Facility. Such funding is necessary for the reorganized Debtors to satisfy their obligations under the Plan, and to have sufficient working capital in order to invest in the company's operations after emergence from bankruptcy. The Debtors believe that the financing contemplated under the Exit Facility Commitment Letter is advantageous to the Debtors given the low interest rate that will be charged and the amount of liquidity (up to $60 million, subject to a borrowing base and other conditions set forth therein) that would be made available to the reorganized Debtors, subject to the terms and conditions set forth therein and a closing of the Exit Facility.

23. By assuming the Exit Facility Commitment Letter, the Debtors will be agreeing to three basic obligations: (a) to reimburse Citizens for its reasonable fees and expenses in connection with its due diligence and preparation of definitive documents with respect to the contemplated exit facility, (b) to indemnify Citizens as to any damages or losses that Citizens or its affiliated persons may incur as a result of, or in connection with, the exit facility, and (c) to

negotiate exclusively with Citizens as to the exit facility, but subject to a "fiduciary out" on the basis of reasonable advice of legal counsel for the the Debtors.

24. Given the importance of the Exit Facility to a successful reorganization in these cases and that approval of the Exit Facility Commitment Letter by August 4, 2017 is a condition to Citizens' funding commitment, the Debtors have determined that obtaining Court approval to assume the Exit Facility Commitment Letter is in the best interests of their estates. The Debtors believe that, in light of all of the facts and circumstances of these cases, the terms of the Exit Facility Commitment Letter are fair, reasonable, and appropriate and are integral to assuring that the Debtors' estates can maximize their value for all stakeholders.

25. Courts in this district and other districts have approved similar relief. *See, e.g., In re Verso Corp.*, No. 16-10163 (KG) (Bankr. D. Del. May 25, 2016) (authorizing debtors to enter into and perform under engagement and fee letters relating to exit financing and to pay fees and expenses, and provide indemnification, thereunder); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. Aug. 24, 2015) (approving assumption of exit financing commitment letter and authorizing payment of fees and expenses, and indemnification, of the parties thereto); *see also In re Peabody Energy Corp.*, No. 16-42459 (Bankr. E.D. Mo. Jan. 27, 2017) (same); *In re SH 130 Concession Co.*, No. 16-10262 (Bankr. W.D. Tex. April 21, 2017) (same).

**B. Approval of the Citizens Expenses and Indemnification Under 11 U.S.C. §§ 503(b) and 507(a) is Fair and Reasonable Under the Circumstances**

26. Based on the foregoing authorities and under the circumstances of these cases, the Debtors submit that the provisions of the Exit Facility Commitment Letter providing

for the reimbursement of the Citizens Expenses and the indemnification of the Indemnified Persons (including Citizens) are fair and reasonable and should be awarded on an administrative expense basis under sections 503(b) and 507(a) of the Bankruptcy Code in accordance with the terms and conditions of the Exit Facility Commitment Letter.

27. The terms of the Exit Facility Commitment Letter are the product of extensive arm's length negotiations among the Debtors and Citizens, as well as their respective counsel and financial advisors. Under the Exit Facility Commitment Letter, the Debtors are committing to reimburse Citizens for its reasonable expenses (*i.e.*, the Citizens Expenses) incurred as part of its due diligence in connection with the Exit Facility and the preparation and negotiation of definitive documentation relating thereto. As is customary, Citizens would not undertake the significant investment of time and resources involved in originating the Exit Facility absent the Debtors' agreement to reimburse the Citizens Expenses.

28. Further, the indemnification provisions under the Exit Facility Commitment Letter offers standard protections by the Debtors to the Indemnified Persons (including Citizens) to ensure that such parties can turn to these estates for reimbursement in the event that they suffer losses through their financing efforts in support of these cases.

29. The Debtors believe that the terms and conditions set forth in the Exit Facility Commitment Letter are well within the range of "market" fees, protections and other terms typically received by parties entering into similar agreements and reflect an exercise of their sound business judgment. Accordingly, in the exercise of their business judgment, the Debtors have determined, and respectfully submit that, for all of the foregoing reasons, the

reimbursement provisions of the Exit Facility Commitment Letter and the indemnification provision therein should be approved on an administrative expense basis under sections 503(b) and 507(a) of the Bankruptcy Codes.

### Waiver of Bankruptcy Rule 6004(h) and 6006(d)

30. To implement the foregoing successfully, the Debtors respectfully request that the Court enter an order waiving the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

### Notice

31. No trustee, examiner or statutory committee has been appointed in the Debtors' cases. Pursuant to Bankruptcy Rule 4001, the Debtors shall provide notice of the hearing on this Motion by serving a copy of this Motion, by hand or overnight mail or courier service (or for those set up to receive electronic transmissions, by electronic transmission), upon the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Ad Hoc Group; (c) the Debtors' thirty largest unsecured creditors on a consolidated basis; (d) counsel to the Prepetition Agents; (e) counsel to the DIP Agent; and (f) any other known party that asserts a lien against the Debtors' assets. The Debtors respectfully request that such notice is sufficient and request that this Court find that no further notice of the hearing is required.

### No Prior Request

32. No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors request that the Court enter an order substantially in the form submitted herewith authorizing the Debtors to (i) assume the Exit Facility Commitment Letter, (ii) pay and reimburse the Citizens Expenses in accordance with the terms of the Exit Facility Commitment Letter, and (iii) indemnify each Indemnified Person (including Citizens) in accordance with the terms of the Exit Facility Commitment Letter.

Dated: July 5, 2017    PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
email:    ljones@pszjlaw.com
          dbertenthal@pszjlaw.com
          joneill@pszjlaw.com

[Proposed] Counsel to the Debtors and Debtor in Possession